1  Travis Wall (SBN 191662)
   Travis.Wall@kennedyslaw.com
2  KENNEDYS CMK LLP
   455 Market Street, Suite 1900
3  San Francisco, CA 94105
   Telephone:  415-323-4487
4  Facsimile:   415-323-4445

5  Attorneys for Plaintiff
   HISCOX INSURANCE COMPANY, INC.
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 HISCOX INSURANCE COMPANY,           Case No. 2:24-cv-1155
   INC., an Illinois Corporation,
12
              Plaintiff,
13                                     **COMPLAINT FOR**
       vs.                             **DECLARATORY RELIEF AND**
14                                     **REIMBURSEMENT**
   SEVEN SAFE SERVICES, INC., a
15 California Corporation; AMERICAN
   GUARD SERVICES, INC., a California
16 Corporation, LESTER FINNELL, an
   individual, and JONATHAN
17 ARMBRISTER, an individual,

18            Defendants.

As and for its complaint, Plaintiff Hiscox Insurance Company, Inc. ("Hiscox") alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Hiscox Insurance Company, Inc. is an Illinois corporation with its principal place of business in Illinois.

2. Defendant Seven Safe Services, Inc. ("Seven Safe") is a California corporation with its principal place of business in Los Angeles, California.

3. Defendant American Guard Services, Inc. ("Seven Safe") is a California corporation with its principal place of business in Gardena, California.

4. Defendant Lester Finnell is a citizen of California and resides in North Hills, California.

5. Defendant Jonathan Armbrister is citizen of California and resides in Long Beach, California.

**NATURE OF THE ACTION**

6. This is an action for declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57. Hiscox also seeks reimbursement of defense expenses paid on behalf of its insureds.

7. Hiscox issued to Seven Safe six insurance policies over two different policy periods (the "policies" or the "Hiscox policies"). Hiscox seeks a judgment declaring that the policies provide no coverage to Defendants for insurance claims made in connection with four actions pending before the Superior Court of California, captioned: (1) *Grant v. The Kroger Co.,* Case No. 21STCV46592 (Los Angeles County); (2) *Penn v. The Kroger Co.,* Case No. 37-2021-00029278-CU-PO-CTL (San Diego County); (3) *Vega v. The Kroger Co.,* Case No. CIVSB2029071 (San Bernardino County); (4) *Biggers v. Ralphs Grocery Co.,* Case No. 22STCV39533 (Los Angeles County); and (5) *Mendez v. American Guard Services, Inc.*, Case No. BCV-22-102075 (Kern County); and (together, the "Underlying Actions"). The Underlying Actions have not yet been resolved.

**JURISDICTION AND VENUE**

8.  Jurisdiction exists under 28 U.S.C. §1332 because there is diversity of citizenship between Hiscox and all Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The potentially implicated policies all have limits in excess of $75,000, and the amounts demanded in the underlying actions exceed $75,000. In addition, Hiscox has paid defense and indemnity costs in excess of $75,000 and seeks reimbursement of those funds.

9.  The Court has the authority to grant the relief requested pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Rule 57 of the Federal Rules of Civil Procedure, because this action seeks adjudication of an actual, ripe and justiciable controversy that has arisen between the parties. Hiscox seeks a declaratory judgement stating that it has no duty to defend or indemnify Defendants in connection with the Underlying Actions.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because most Defendants reside within this judicial district and most Underlying Actions were filed in this judicial district.

**FACTUAL BACKGROUND**

**The Underlying Actions**

11. Seven Safe provided off duty police officer security guard services pursuant to a subcontract with American Guard. In that contract, Seven Safe agreed to supply off duty police officers to provide security guard services at various grocery stores in Southern California. In that contract, Seven Safe also represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

12. Under the subcontract, Seven Safe agreed to list American Guard as an additional insured on Seven Safe's liability policies.

13. In the Underlying Actions, plaintiffs allege that security guards supplied by Seven Safe assaulted and battered plaintiffs resulting in bodily injury and, in one instance, death.

**The Hiscox Policies**

14. Hiscox issued six policies to Seven Safe as the named insured. The policies were issued over two separate policy periods:

| Policy Type | Policy No. | Policy Period | Limits |
|---|---|---|---|
| Professional Liability for IT Consulting Services | UDC-4265713-EO-19 | Sept. 5, 2019 to Sept. 5, 2020 | $1,000,000 |
| Commercial General Liability | UDC-4265713-CGL-19 | Sept. 5, 2019 to Sept. 5, 2020 | $3,000,000 |
| Professional Liability for IT Consulting Services | UDC-4265713-EO-20 | Sept. 5, 2020 to Sept. 5, 2021 | $1,000,000 |
| Commercial General Liability | UDC-4265713-CGL-20 | Sept. 5, 2020 to Sept. 5, 2021 | $3,000,000 |
| Professional Liability for IT Consulting Services | UDC-4265713-EO-21 | Sept. 5, 2021 to Sept. 5, 2022 | $1,000,000 |
| Commercial General Liability | UDC-4265713-CGL-21 | Sept. 5, 2021 to Sept. 5, 2022 | $3,000,000 |

15. The insuring agreements in the professional liability policies cover **Wrongful Acts** in the performance of **Professional Services**, which are defined as **Technology Services** or Information Technology (IT) consulting services.

16. The professional liability policies exclude coverage for liability based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**. Those policies define **Bodily Injury** to mean "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person."

17. The professional liability policies only potentially cover claims first made and reported to Hiscox during the policy period or extended reporting period, if applicable.

18. All five lawsuits were first reported to Hiscox during or after the 2021-22 policy period. As a result, the 2021-22 professional liability policy is the only professional liability policy potentially implicated by any lawsuit.

19. The commercial general liability policies contain two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>   **(1)** amount we will pay for damages is limited as described in Section III – Limits Of Insurance[.]
>
>   b. This insurance applies to "bodily injury" and "property damage" only if:
>
>   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

20. The insuring agreement for Coverage Part B states in relevant part:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

21. Both coverage parts potentially cover only "occurrences" or offenses that take place during the policy period.

22. The *Vega* and *Mendez* claims involved alleged incidents on May 7, 2020, and August 16, 2020, respectively. Both alleged incidents occurred during the policy period for the 2019-20 CGL policy.

23. The *Grant, Bigger,* and *Penn* claims involved alleged incidents on December 22, 2020, January 21, 2021, and February 21, 2021, respectively. All alleged incidents occurred during the policy period for the 2020-21 CGL policy.

24. Accordingly, no lawsuit potentially implicates the CGL policy for the 2021-22 policy period.

25. By endorsement, both commercial general liability policies contain a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

   **2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

26. The commercial general liability policies do not define "professional services." However, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

27. The commercial general liability policies define insureds in **SECTION II – WHO IS AN INSURED**. That section provides in relevant part that, if the named insured is a corporation, then the corporation and its "executive officers" and directors are insureds, "but only with respect to their duties as [the corporation's] officers and directors." Insureds include the corporation's "employees" but only "for acts within the scope of their employment by [the corporation] or while performing duties related to the conduct of [the corporation's] business."

28. The commercial general liability policies contain an additional insured endorsement, Additional Insured – Automatic Status, that provides:

**ADDITIONAL INSURED – AUTOMATIC STATUS**

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

    **A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

        **1.** In the performance of your ongoing operations; or

        **2.** In connection with your premises owned by or rented to you.

    A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

Additional Insured – Automatic Status, Form No. CGL E5421 CW (02/14).

    **The Insurance Claims**

    29.    Seven Safe is a defendant in each of the Underlying Actions and tendered the defense of those claims to Hiscox.

    30.    Mr. Finnell is a defendant in the *Grant, Penn* and *Vega* actions and tendered the defense of those claims to Hiscox. Under the CGL policies, he is an insured only with respect to his duties as Seven Safe's officer or director or as the company's shareholder. To the extent he was acting as an "employee" of Seven Safe, he would be an insured only for acts within the scope of his employment by Seven Safe or while performing duties related to the conduct of Seven Safe's security guard business.

    31.    American Guard is a defendant in each of the Underlying Actions and tendered the defense of those claims to Hiscox. American Guard contends that it is entitled to coverage under the CGL policy's additional insured endorsement. Under that endorsement, American Guard is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" "caused in whole or in part by [Seven Safe's] acts or omissions or the acts or omissions of those acting on [Seven Safe's] behalf: in the performance of [Seven Safe's] ongoing

operations." Therefore, American Guard is an insured under the CGL policies only with respect to liability for Seven Safe's operations in providing security guard services.

32. In reservation of rights letters, Hiscox agreed to defend Seven Safe, Mr. Finnell and American Guard in the Underlying Actions under a reservation of rights.

33. Mr. Armbrister is a defendant in the *Grant* action. On information and belief, Seven Safe treats its security guards as independent contractors.

34. "Employees" are insureds under the CGL policy but only for acts within the scope of their employment by Seven Safe or while performing duties related to the conduct of Seven Safe's business. Without conceding that Mr. Armbrister is an insured within the meaning of the CGL policy, Hiscox agreed to defend him in the *Grant* lawsuit under a reservation of rights.

35. The reservation of rights as to all Defendants included, without limitation, the right to deny coverage on the ground that CGL policies' Professional Services exclusion bars coverage for the claims in their entirety.

**The Insurance Dispute**

36. Hiscox contends that the professional liability policies do not apply to the Underlying Actions because, among other reasons, those actions do not involve alleged wrongdoing in the performance of **Professional Services**, which those policies define to mean "**Technology Services** or Information (IT) consulting services performed for others for compensation." None of the Underlying Actions involve wrongdoing in the performance of **Technology Services** or Information (IT) consulting services.

37. Hiscox also contends that coverage is barred in its entirety under the professional liability policies by the exclusion for claims based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

38. Hiscox reserves the right to deny coverage on other applicable grounds, including without limitation the requirement that a claim must be first made to Seven Safe and reported to Hiscox during the policy period or extended reporting period, if applicable.

39. Hiscox contends that the CGL policies do not apply to the Underlying Actions because, among other reasons, the Professional Services exclusion bars coverage in its entirety. All injuries alleged in the Underlying Acts were caused by the rendering or failure to render professional services – namely off duty police officer security guard services.

40. Seven Safe's security guard services are professional in nature and thus are excluded from coverage under the CGL policies. Security guards are required to be licensed. They must have permits to carry a baton or an exposed firearm. By law, they are required to complete initial and continuing training courses in various topics, including the power to arrest. Seven Safe provided off duty police officer security guard services pursuant to a subcontract with American Guard. In that contract, Seven Safe represented that its "possesses experience and knowledge in providing *professional services* of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services." (Emphasis added.) The services involved in Seven Safe's security guard business are professional in nature.

41. The Professional Services exclusion bars coverage for all claims alleged against Defendants. As set forth in the exclusion, the exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others" by Seven Safe, American Guard or any other insured. Thus, the exclusion encompasses the claims against the security guards themselves and all claims for negligent supervision or retention in connection with the security guards.

42. Hiscox reserves the right to deny or limit coverage on other applicable grounds.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief as to Coverage)**

43. Hiscox re-alleges as though set forth herein the allegations of Paragraphs 1 through 42 inclusive.

44. If for any reason Hiscox is not entitled to rescission, it seeks a judicial declaration about its obligations under the policies in connection with the Underlying Actions.

45. An actual controversy exists between Hiscox and Defendants as to the existence of coverage for Underlying Actions. Hiscox contends that the Hiscox policies do not cover the Underlying Actions, whereas Defendants maintain that there is a potential for coverage.

46. Hiscox requests a judicial determination as to the rights and duties of each party under the policies with respect to the Underlying Actions, and in particular a determination that there is not and never was a potential for coverage for claims alleged against Defendants in those lawsuits and Hiscox has no duty to defend Defendants in those lawsuits.

## SECOND CLAIM FOR RELIEF
### (Reimbursement)

47. Hiscox re-alleges as through set forth herein the allegations of Paragraphs 1 through 46 exclusive.

48. Hiscox agreed to defend Defendants in the Underlying Actions under a reservation of rights, including the right to seek reimbursement of defense and indemnity payments it made on Defendants' behalf.

49. Hiscox made defense and indemnity payments on Defendants' behalf in connection with the Underlying Actions.

50. Because there was no coverage or potential for coverage for the Underlying Actions, Hiscox is entitled to recover all defense and indemnity payments it made on Defendants' behalf.

## PRAYER

WHEREFORE, Hiscox prays for relief as follows:

1. That the Court declare and adjudge that there is no coverage or potential for coverage for the Underlying Actions under Hiscox's professional liability policies because among other reasons: (1) the lawsuits do not allege wrongdoing in the performance of **Professional Services** within the meaning of those policies and (2) the exclusion for **Bodily Injury** and **Property Damage** bars coverage in its entirety; and

2. That the Court declare and adjudge that there is no coverage or potential for coverage for the Underlying Actions under Hiscox's commercial general liability polices by operation of the Professional Services exclusion in those policies, among other reasons;

3. That the Court declare and adjudge that Hiscox has no duty under the polices to defend or indemnify Defendants in connection with the Underlying Actions.

4. For reimbursement of all defense and indemnity payments made by Hiscox to date, according to proof;

5. For prejudgment interest;

6. For costs of suit herein; and

That the Court grant such other and further relief as the Court deems just and proper.

DATED: February 9, 2024                    KENNEDYS CMK LLP

                                           By: */s/ Travis Wall*
                                           TRAVIS WALL
                                           Attorneys for Plaintiff
                                           HISCOX INSURANCE
                                           COMPANY, INC.