1  Travis Wall (SBN 191662)
   Travis.Wall@kennedyslaw.com
2  Zina Yu (SBN 291993)
   Zina.Yu@kennedyslaw.com
3  Camille Zuber (SBN 349650)
   Camille.Zuber@kennedyslaw.com
4  KENNEDYS CMK LLP
   455 Market Street, Suite 1900
5  San Francisco, CA 94105
   Telephone:   415-323-4487
6  Facsimile:   415-323-4445

7  Attorneys for Plaintiff
   HISCOX INSURANCE COMPANY, INC.
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | HISCOX INSURANCE COMPANY, INC., an Illinois Corporation, | Case No. 2:24-cv-01155 MCS (ASx) |

13                Plaintiff,          **PLAINTIFF HISCOX INSURANCE COMPANY, INC.'S NOTICE OF**
14          vs.                       **MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;**
15 SEVEN SAFE SERVICES, INC., a       **MEMORANDUM OF POINTS AND AUTHORITIES**
   California Corporation, AMERICAN
16 GUARD SERVICES, INC., a California
   Corporation, a California Corporation,  **Date:   Monday, November 18, 2024**
17 LESTER FINNELL, an individual, and  **Time:   9:00 a.m.**
   JONATHAN AMBRISTER, an            **Judge:  Hon. Mark C. Scarsi**
18 individual,                        **Ctrm:   7C, 7th Floor**
19                Defendants.         Complaint Filed:   February 9, 2024
                                      First Amended
20                                    Complaint Filed:   April 30, 2024
                                      Trial Date:        May 20, 2025
21

22

23 TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

24         PLEASE TAKE NOTICE that on November 18, 2024, at 9:00 a.m. or as soon

25 thereafter may be heard in Courtroom 7C of United State District Court, Central District

26 of California, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, CA

27 90012, Plaintiff Hiscox Insurance Company, Inc. ("Hiscox"), will and hereby does,

28

move this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

Hiscox issued commercial general liability policies ("CGL policies") and professional liability policies to Seven Safe Services ("Seven Safe") over two separate one-year policy periods. Hiscox moves for summary judgment as to is first claim for relief, which seeks a declaration that it has no duty under those policies to defend or indemnify Defendants Seven Safe, American Guard Services, Inc. ("American Guard"), Lester Finnell, or Jonathan Armbrister (collectively "Defendants") in connection with the following five actions: 1) *Grant v. The Kroger Co.*, Case No. 21STCV46592 ("*Grant* lawsuit"); (2) *Penn v. The Kroger Co.*, Case No. 37-2021-00029278-CU-PO-CTL ("*Penn* lawsuit"); (3) *Vega v. The Kroger Co.*, Case No. CIVSB2029071 ("*Vega* lawsuit"); (4) *Biggers v. Ralphs Grocery Co.*, Case No. 22STCV39533 ("*Biggers* lawsuit"); and (5) *Mendez v. American Guard Services, Inc.*, Case No. BCV-22-102075 ("*Mendez* lawsuit") (the "underlying actions").

With respect to the CGL policies, Hiscox moves for summary judgment on the ground that the policies' professional services exclusion bars coverage for the claims in the underlying actions and thus, there is no potential for coverage as a matter of law. Accordingly, Hiscox is entitled to a declaratory judgment that it has no duty under the CGL policies to defend or indemnify Defendants in connection with the underlying actions.

With respect to the professional liability policies, Hiscox moves for summary judgment on the grounds that the underlying actions do not implicate the insuring clause for two separate reasons. First, the actions do not involve claims first made and reported to Hiscox with the applicable **Policy Period** as required under the policies. Second, the claims do not involve **Wrongful Acts** in the performance of **Professional Services**, which are defined as **Technology Services** or Information Technology (IT) consulting services.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

For those independent reasons, Hiscox is entitled to a declaratory judgment that it has no duty under the professional liability policies to defend or indemnify Defendants in connection with the underlying actions.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the supporting declarations of Travis Wall, Michael Franklin and Tyler Peterson and the exhibits attached thereto, the Statement of Uncontroverted Facts and Conclusions of Law, the files and records of this Court, and such other matters as may be raised during oral argument at the time of the hearing of this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3. Joshua Zlotlow, Esq. counsel for American Guard and Travis Wall, counsel for Hiscox met and conferred by telephone in an attempt to narrow the scope of Hiscox's motion for summary judgment. John Fu, Esq., counsel for Seven Safe and Jonathan Armbrister, did not respond to requests to meet and confer about the motion.

DATED: October 7, 2024                          KENNEDYS CMK LLP

                                                By: _____
                                                    TRAVIS WALL
                                                    ZINA YU
                                                    CAMILLE ZUBER
                                                    Attorneys for Plaintiff
                                                    HISCOX INSURANCE COMPANY

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

## **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II.  FACTUAL BACKGROUND ........................................................................ 2

    A.  Seven Safe and American Guard's Services ................................ 2

    B.  The Underlying Actions ................................................................ 3

    C.  The Hiscox Policies ...................................................................... 5

        1.  Commercial General Liability Policies ............................ 5

        2.  The Professional Liability Policies ................................... 9

    D.  Tenders of the Underlying Actions and Hiscox's Responses ................. 10

    E.  The Hiscox Declaratory Relief Action ...................................... 10

III.  ARGUMENT ........................................................................................... 11

    A.  Legal Standards .......................................................................... 11

    B.  Hiscox Has No Duty to Defend Defendants under the CGL Policies Because All Alleged Damages Were Caused by the Rendering or Failure to Render Professional Services ...................................... 12

        1.  California Courts Broadly Construe "Professional Services" to Include Vocations Outside the Learned Professions ..................... 12

        2.  Seven Safe's Security Guard Services Require Specialized Knowledge and Licensing and Are Professional in Nature under California Law ................................................................ 16

        3.  The Injuries Alleged in the Underlying Actions Were Caused by The Rendering of or Failure to Render Professional Services ...... 18

    C.  Hiscox Has No Duty to Defend Defendants in the Underlying Actions under the Professional Liability Policies ................................ 19

        1.  Coverage Is Barred under the Professional Liability Policies Because the Claims Were Not First Made and Reported to Hiscox During the Applicable Policy Period ............................... 19

        2.  The Underlying Actions Do Not Involve Services of the Nature and Type Covered by the Insuring Agreements ............................ 20

    D.  Hiscox Has No Duty to Indemnify in Connection with the Underlying Actions ................................................................... 20

IV.  CONCLUSION ....................................................................................... 21

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES
2:24-cv-01155 MCS (ASx)

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Aerojet-General Corp. v. Transport Indem. Co.*,
　17 Cal. 4th 38 (1997) ...................................................................................... 11

*Amex Assurance Co. v. Allstate Ins. Co.*,
　112 Cal. App. 4th 1246 (2003) ................................................................. 13, 15

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
　100 Cal. App. 4th 1017 (2002) ...................................................................... 11

*Burlington Ins. Co. v. Bay One Sec., Inc.*,
　No. 17-CV-04734-YGR, 2018 WL 1730425 (N.D. Cal. Apr. 10, 2018)....... 1, 13, 14

*Burlington Ins. Co. v. German Motors Corp.*,
　788 F. App'x 486 (9th Cir. 2019) ................................................................... 15

*Burns v. Int'l Ins. Co.*,
　929 F.2d 1422 (9th Cir. 1991) ....................................................................... 19

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ......................................................................................... 11

*Certain Underwriters of Lloyd's v. Superior Court*,
　24 Cal. 4th 945 (2002) .................................................................................... 20

*Chase v. Nat'l Indem. Co.*,
　129 Cal. App. 2d 853 (1954) .......................................................................... 19

*Energy Insurance Mutual Limited v. Ace American Ins. Co.*,
　14 Cal. App. 5th 281 (2017) ..................................................................... 12, 13

*Erie Ins. Group v. Alliance Envtl., Inc.*,
　921 F. Supp. 537 (S.D. Ind. 1996).................................................................. 18

*Helfand v. Nat'l Union Fire Ins. Co.*,
　10 Cal. App. 4th 869 (1992) ........................................................................... 19

*Heritage Bank of Com. v. Zurich Am. Ins. Co.*,
　No. 23-15115, 2024 WL 810447 (9th Cir. Feb. 27, 2024)........................... 19

*Hollingsworth v. Commercial Union Ins. Co.*,
　208 Cal. App. 3d 800 (1989) ..................................................................... 13, 15

*HotChalk, Inc. v. Scottsdale Ins. Co.*,
　217 F. Supp. 3d 1058 (N.D. Cal. 2016) ......................................................... 18

*Legarra v. Federated Mut. Ins. Co.*,
　35 Cal. App. 4th 1472 (1995) ......................................................................... 12

*McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*,
   35 Cal. App. 5th 1042 (2019) ...................................................................13

*Pacific Emps. Ins. Co. v. Superior Court*,
   221 Cal. App. 3d 1348 (1990) ..................................................................19

*Root v. Am. Equity Specialty Ins. Co.*,
   130 Cal. App. 4th 926 (2005) ...................................................................19

*Scottsdale Ins. Co. v. MV Transp.*,
   36 Cal. 4th 643 .........................................................................................11

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*,
   97 Cal. App. 4th 704 (2002) .........................................................12, 13, 14

*Waller v. Truck Ins. Exch.*,
   11 Cal.4th 1 (1995) ............................................................................11, 20

**Statutes**

California Business & Professions Code
   § 7582.1(a) ...............................................................................................16
   § 7582.1(e) ...............................................................................................16
   § 7582.3(a) ...............................................................................................16
   § 7583.3(a) ...............................................................................................14
   § 7583.6(a) .........................................................................................14, 16
   § 7583.7 ....................................................................................................17

**Rules**

Federal Rules of Civil Procedure
   Rule 56(a).................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Hiscox is entitled to a declaratory judgment that it has no duty to defend or indemnify Defendants in connection with the underlying actions. There is no potential for coverage for those actions because the claims either fall outside the policies' insuring agreements or are excluded from coverage by virtue of the professional services exclusions.

Hiscox insured Seven Safe under commercial general liability policies ("CGL policies") and professional liability policies issued over two consecutive one-year policy periods. The underlying lawsuits all involve claims that off-duty police officer security guards provided by Seven Safe assaulted plaintiffs. The assaults allegedly occurred while those guards were patrolling grocery stores. Seven Safe allegedly supplied the guards pursuant to a subcontract with American Guard, which in turn contracted with the grocery stores to provide security guard services.

There is no coverage for the claims under the CGL policies as a matter of law. Those policies contain a professional services exclusion that bars coverage for damages caused by the rendering or failure to render any professional service.  Under California law, "professional services" exclusions are not limited to the learned professions but encompass any vocation, occupation, or employment involving "specialized knowledge, labor, or skill" that is predominantly mental or intellectual rather than physical or manual. That includes security guard services, which require specialized knowledge, skills and licensing. *See Burlington Ins. Co. v. Bay One Sec., Inc.*, No. 17-CV-04734-YGR, 2018 WL 1730425 (N.D. Cal. Apr. 10, 2018), *aff'd sub nom. Burlington Ins. Co. v. German Motors Corp.*, 788 F. App'x 486 (9th Cir. 2019) (holding that professional services exclusion applied to security guard services).

By its terms, Hiscox's professional services exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of security officers. Therefore, there is no coverage for the acts or

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

omissions of the security guards or for any alleged failure to properly retain, train or supervise the guards.

Nor is there coverage for the claims under the professional liability policies. Those policies do not apply for two independent reasons. ***First***, they are "claims made and reported policies" that only cover claims first made against the insured and reported to Hiscox during the relevant policy period. All five underlying actions were first reported to Hiscox after the professional liability policies had expired, and thus the reporting requirements were not met. ***Second***, in applying for the policies, Seven Safe represented that it provided "technology services" not security guard services. For that reason, the professional liability coverage is limited to information and technology services. No underlying actions allege wrongdoing in the performance of such services.

Because there is no potential for coverage for the underlying actions under any Hiscox policy, Hiscox is entitled to a judgment declaring that Hiscox has no duty to defend or indemnify Defendants in connection with those lawsuits.

## II.    FACTUAL BACKGROUND

### A.    Seven Safe and American Guard's Services

Seven Safe provided off-duty police officer security guard services pursuant to a subcontract with American Guard. In that subcontract, Seven Safe agreed to supply off-duty police officers to provide security guard services at various grocery stores in Southern California. (Separate Statement of Undisputed Material Facts in Support of Hiscox's Motion for Partial Summary Judgment, Undisputed Material Fact ("UMF") No. 1)

In that subcontract, Seven Safe represents that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it will provide "properly skilled and trained personnel as necessary to perform the Services." (UMF No. 2) The subcontract requires Seven Safe to obtain "all necessary permits or licenses required for the performance of the Services." (UMF No. 3) Seven Safe also agrees to "select Off-Duty

2

Police Officer Security Officers with due diligence standard in the security guard industry and perform a background check" for each security personnel, and to "comply with all laws, ordinances, codes, rules, and regulations relating to the performance of the Services." (UMF No. 4)

Separately, American Guard entered into a Master Services Agreement with the Kroger Co./Ralphs Grocery Company ("Ralphs" or "Kroger") under which American Guard agreed to "provide such number of uniformed guards as may . . . be required by Kroger." (UMF No. 5) In that agreement, American Guard represents and warrants that all services rendered "will be performed in a highly professional manner and will comply with the standards and service levels" as set forth in the contract. (UMF No. 6)

American Guard's Master Services Agreement with the grocery stores describes the duties expected of security officers. As specified in the contract, their "primary responsibility is to observe, detect, deter and report criminal activity." (UMF No. 7) They are required to "make occasional rounds through the store strictly as a deterrence to shoplifting and other types of criminal activity," using care to avoid predicable times or routes. (UMF No. 8) Security officers also were instructed to use "positive engagement and customer service to deter criminal activity." (UMF No. 9) Physical force could "only be used for self-defense or the defense of a third party that is in imminent danger." (UMF No. 9)

## B.    The Underlying Actions

American Guard and Seven Safe have been sued in the five underlying lawsuits, which are at issue in this action: (1) *Grant v. The Kroger Co*., Case No. 21STCV46592, pending in Los Angeles County ("*Grant* lawsuit"); (2) *Penn v. The Kroger Co*., Case No. 37-2021-00029278-CU-PO-CTL, pending in San Diego County ("*Penn* lawsuit"); (3) *Vega v. The Kroger Co*., Case No. CIVSB2029071, pending in San Bernardino County ("*Vega* lawsuit"); (4) *Biggers v. Ralphs Grocery Co*., Case No. 22STCV39533 ("*Biggers* lawsuit"); and (5) *Mendez v. American Guard Services, Inc.*, Case No. BCV-

22-102075 ("*Mendez* lawsuit"); and (together, the "underlying actions") (UMF Nos. 10, 14, 17, 21, 24)

In the *Grant* lawsuit, Miyoshi Grant alleges that on December 22, 2020, while shopping at Ralphs, she was assaulted by Defendant Jonathan Armbrister, who was working as a security guard at the store. Seven Safe allegedly scheduled him for the shift through the subcontract with American Guard. (UMF Nos. 11, 12) Plaintiff contends that, while patrolling the store, Mr. Armbrister punched and pepper sprayed her in the face, dragged her across the store and then threw her outside the store. (UMF No. 11)

In the *Penn* lawsuit, Gwendolyn D. Penn asserts wrongful death, negligence and assault and battery causes of action in connection with the shooting death of her son, Zhadius Penn. (UMF No. 14) The complaint alleges that, on February 12, 2021, while Mr. Penn was shopping at Ralphs, a security officer confronted him. Ralph's surveillance video shows an altercation between the guard and Mr. Penn, who appears to physically assault the guard. A chase ensued, and the security officer allegedly shot and killed Mr. Penn just outside the store. (UMF No. 15)

In the *Vega* lawsuit, the plaintiffs allege that, on May 17, 2020, Octavio Vega drove to a Ralphs grocery store with his girlfriend and their daughter. After shopping, a security officer at the store showed him a picture of a suspect who looked like Mr. Vega. However, Mr. Vega declared that he was not the man in the picture. The security guard allegedly instructed Mr. Vega to remain on the premises because he was under arrest. Mr. Vega contends that he noticed the guard had a gun and that he started to run away because he was afraid. Mr. Vega made it to his car. As he attempted to drive away, the security officer allegedly shot into the vehicle, severely injuring Mr. Vega. His girlfriend and daughter allegedly were grazed by bullets as well. (UMF No. 18)

In the *Biggers* lawsuit, Justin Biggers alleges that, on January 5, 2021, he was shopping at a Ralphs grocery store when he was approached by a security officer, who

questioned him regarding items in his possession. As Mr. Biggers provided a receipt for his purchases, the security officer allegedly attacked and assaulted him.  (UMF No. 22)

In the *Mendez* lawsuit, Manuel Mancilla Mendez alleges that on August 16, 2020, he was assaulted and battered while shopping at Superior Grocers. Without warning and sufficient provocation, a security officer allegedly twisted the left arm of Mr. Mendez causing injuries and fractures to his upper arm. (UMF No. 25)

In each of the underlying actions, the plaintiffs allege that, while shopping at grocery stores, they were confronted and assaulted by security officers patrolling the stores. (UMF Nos. 11, 15, 18, 22, 25) The plaintiffs also all contend that the grocery store owners and the security guard companies were liable for the injuries because they employed the security officers or because they were negligent in hiring, training, and supervising the guards. (UMF Nos. 10, 14, 17, 21, 24)

Either in the complaint itself, or by way of cross-claims by American Guard or the grocery store owner, there are allegations that Seven Safe supplied the individual guard involved.  (UMF Nos. 12, 16, 19, 20, 23)  In cross-complaints, the grocery stores have alleged claims for express or implied indemnity against Seven Safe and American Guard. (UMF Nos. 16, 20, 23)

## C.   The Hiscox Policies

### 1.   Commercial General Liability Policies

Hiscox issued two CGL policies to Lester Finnell doing business as Seven Safe over two consecutive one year periods from September 5, 2019, to September 5, 2020, and from September 5, 2020, to September 5, 2021, Policy Nos. UDC-4265713-CGL-19 and UDC-426517-CGL-20, respectively. (UMF No. 27)

The CGL policies contain two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABLTY**

1. **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

        **(2)** The "bodily injury" or "property damage' occurs during the policy period[.]

(UMF No. 28)

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to

6

defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the office was committed in the "coverage territory" during the policy period.

(UMF No. 29)

The CGL policies contain the following definitions:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment[.]

(UMF No. 30)

By endorsement, the CGL policies contain a professional services exclusion, which applies to both Coverage Part A and Coverage Part B (Form No. CGL E5407 CW (03/10). That exclusion states:

Paragraph **2. Exclusions** under **Section I –**

**COVERAGE A – BODILY INJURY AND**

**PROPERTY DAMAGE LIABILITY**, and

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

[This insurance does not apply to:]

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

(UMF No. 31)

In its subcontract with American Guard, Seven Safe agreed to name American Guard as an additional insured on Seven Safe's liability policies. (UMF No. 32) The CGL policies contain an additional insured endorsement, Additional Insured – Automatic Status. Under that endorsement, American Guard qualifies as an additional insured but only with respect to liability for damages caused by Seven Safe's acts or omissions in the performance of ongoing operations for American Guard:

**ADDITIONAL INSURED – AUTOMATIC STATUS**

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations . . . when you and such person(s) or organization(s) have

8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

> **1.** In the performance of your ongoing operations[.]

(UMF No. 33)

### 2.    The Professional Liability Policies

Hiscox issued two professional liability policies to Seven Safe over two successive one-year policy periods from September 5, 2019, to September 5, 2020, and from September 5, 2020, to September 5, 2021, Policy Nos. UDC-4265713-EO-19 and UDC-4265713-EO-20, respectively. (UMF No. 34) The declaration page for each policy specifies that "[t]his is a 'Claims Made and Reported' Policy in which claim Expenses are included within the Limit of Liability." (UMF No. 35)

The insuring agreements in the professional liability policies state:

### A. INSURING AGREEMENT

> **We** shall pay on **Your** behalf and **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

(UMF No. 36). The policies' Notice of Claims section specifies that "[a]s a condition precedent to any coverage under this Policy, **You** shall give written notice to **Us** of any **Claim** as soon as practicable, but in all events no later than . . . (a) the end of the **Policy Period** . . .; or (b) 60 days after the end of the Policy Period . . . so long as such claim is made within the last 60 days of such **Policy Period**." (UMF No. 37)

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." (UMF No. 38) **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." (UMF No. 39) **Technology Services** means data processing, network security design and consulting services, and other technology-related activities. (UMF No. 40).[1]

### D.    Tenders of the Underlying Actions and Hiscox's Responses

The five underlying actions were first reported to Hiscox on the following dates: *Vega* (November 15, 2021), *Penn* (November 15, 2021), *Grant* (August 4, 2022), *Mendez* (October 19, 2022), and *Biggers* (April 18, 2023). (UMF Nos. 41 – 45) The second professional liability policy expired on September 5, 2021. (UMF No. 34) Therefore no claims were first reported to Hiscox during the relevant policy period for either professional liability policy.

After initially acknowledging the tenders, Hiscox agreed to provide coverage for the underlying actions subject to a full reservation of rights. (UMF No. 46) Hiscox's position letters denied coverage under the professional liability policies as they do not apply to security guard services. (UMF No. 47) Hiscox also reserved all rights under the CGL policies' professional services exclusions. (UMF No. 47) The *Vega*, *Penn* and *Mendez* actions are still pending. The *Grant* action recently settled, and the court has dismissed the *Biggers* lawsuit for lack of prosecution. (UMF No. 48)

### E.    The Hiscox Declaratory Relief Action

Hiscox filed this action seeking a declaration that, under the CGL and professional liability policies, Hiscox has and had no duty to defend or indemnity Seven Safe, American Guard, their employees or any security officers in connection with the

---

[1] In applying for insurance, Seven Safe represented that it provided "technology services" and not security guard services. (UMF No. 53) For that reason, the **Technology Services** definition applies.

10

1  five underlying actions. Hiscox's complaint also seeks reimbursement of defense and

2  indemnity payments. Those reimbursement claims are not the subject of this motion.[2]

3  **III.   ARGUMENT**

4     **A.   Legal Standards**

5     A party is entitled to summary judgment when there is no genuine dispute as to

6  any material fact and the action can be resolved in favor of the moving party without

7  the necessity of a trial. Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

8  317, 325 (1986).

9     Liability insurance policies "provide that the insurer has a duty to indemnify the

10  insured for those sums that the insured becomes legally obligated to pay as damages for

11  a covered claim." *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 56

12  (1997) (citing *Buss v. Superior Court*, 16 Cal. 4th 35 (1997)). An insurer's duty to

13  indemnify "runs to claims that are actually covered, in light of the facts proved. It arises

14  only after liability is established and as a result thereof." *Aerojet-General*, 17 Cal. 4th

15  at 56 (citation omitted).

16     Liability insurance policies typically contain "a duty to defend the insured in any

17  action brought against the insured seeking damages for a covered claim." *Id.* at 57-58.

18  The scope of the duty to defend "rests on whether the *alleged facts* or *known extrinsic*

19  *facts* reveal a *possibility* that the claim may be covered by the policy." *Atlantic Mut.*

20  *Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) (emphasis in original).

21     The duty to defend, "although broad, is not unlimited; it is measured by the nature

22  and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19

23  (1995). "[I]f, as a matter of law, neither the complaint nor the known extrinsic facts

24  indicate any basis for potential coverage, the duty to defend does not arise in the first

25  instance." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). Moreover, if

26  the complaint in the underlying action alleges a liability entirely within a policy

27

28  _____
[2] Hiscox does not waive any coverage defenses available under the policies or at law, including those defenses not raised in this motion.

exclusion, the insurer has no duty to defend. *See*, *e.g.*, *Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472, 1479-82 (1995).

**B.**  **Hiscox Has No Duty to Defend Defendants under the CGL Policies Because All Alleged Damages Were Caused by the Rendering or Failure to Render Professional Services**

By endorsement, the CGL policies contain a professional services exclusion that applies to both Coverage A and Coverage B. (UMF No. 31) Under that exclusion, the CGL policies do not apply to "'bodily injury', 'property damage' or 'personal and advertising injury' caused by the rendering or failure to render any professional service." (UMF No. 31) That exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" that caused the "bodily injury" or "property damage" or the offence that caused the "personal and advertising injury" involved the rendering or failure to render any professional service. (UMF No. 31)

All damages alleged in the underlying actions were caused by the rendering or the failure to render professional services by Seven Safe or American Guard or guards retained by them. Therefore, the professional services exclusion bars coverage in its entirety.

**1.**  **California Courts Broadly Construe "Professional Services" to Include Vocations Outside the Learned Professions**

Commercial general liability policies are not designed to provide coverage for professional liability. As the court explained in *Energy Insurance Mutual Limited v. Ace American Insurance Co.*, 14 Cal. App. 5th 281 (2017), a "CGL policy is intended to cover *general* liability, not an insured's professional or business skill." *Id*. at 292 (emphasis in original) (citing *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1047 (1999)). "As a result, 'CGL policies often contain exclusions for loss resulting from the rendering of or failure to render professional services'." *Id.* (quoting *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 713 (2002)).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

The professional services exclusion in Hiscox's CGL policies does not define "professional services." Therefore, courts look to how the term has been construed under California law. California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Energy Ins.*, 14 Cal. App. 5th at 292 (internal quotation marks omitted).[3]

The term "professional services" is a "broader definition than 'profession,' and encompasses services performed for remuneration." *Tradewinds Escrow*, 97 Cal. App. 4th at 713 (2002). California courts have "applied the professional services exclusion broadly to bar coverage for damages resulting from a wide range of professional services that extend 'beyond those traditionally considered "professions," such as medicine, law, or engineering'." *Energy Ins.*, 14 Cal. App. 5th at 293 (quoting *Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal. App. 3d 800, 806 (1989)); *see also Hollingsworth*, 208 Cal. App. 3d at 806 (piercing a customer's ear is a professional service); *Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal. App. 4th 1246, 1252 (2003) (plumbing service is a professional service); *Tradewinds Escrow*, 97 Cal. App. 4th at 713 (rendering escrow service is a professional service).

Under that standard, security guards services are professional in nature. In fact, California courts have already concluded that regular security guards – those who are not off-duty "peace officers" – provide professional services. *See Burlington Ins. Co. v. Bay One Sec., Inc.*, No. 17-CV-04734-YGR, 2018 WL 1730425 (N.D. Cal. Apr. 10, 2018), *aff'd sub nom. Burlington Ins. Co. v. German Motors Corp.*, 788 F. App'x 486 (9th Cir. 2019).

---

[3] Because the term has been judicially construed, as a matter of law it is not ambiguous. *McMillin Homes Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 35 Cal. App. 5th 1042, 1052 (2019).

In *Burlington*, German Motors Corporation hired Bay One Security to provide security for its BMW dealership. Bay One purchased a commercial general liability policy from Burlington Insurance Company. While a Bay One security guard was on duty, a man broke into the dealership and damaged property. "Only after the thief crashed a vehicle through the front doors of the dealership ... [did] the Bay One Security guard recognize[ ] that a crime was being committed." *Burlington Ins.*, 2018 WL 1730425, at *2. The security guard then "contacted the San Francisco Police Department." *Id*.

German Motors sued Bay One for breach of contract and negligence. Burlington filed a declaratory relief action against Bay One seeking a declaration that it owed no duty to defend or indemnify Bay One under the CGL policy by operation of the professional services exclusion.

The trial court held that Burlington had no duty to defend or indemnify. The court explained that the services provided by Bay One were professional in nature because: (1) Bay One's security officers were statutorily required to complete initial and continuing training courses, citing California Business & Professions Code § 7583.3(a), 7583.6(a); and (2) the provision of security services requires "specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Burlington Ins. Co*., 2018 WL 1730425, at *4 (citing *Tradewinds Escrow*, 97 Cal. App. 4th at 713).

In holding that Bay One's services were professional, the court noted that the primary responsibility of the security guard "was to 'be diligently vigilant for any suspicious circumstances' and 'promptly make reports of such to the San Francisco Police Department.'" *Id*. The court reasoned that the guard was thus "required to exercise mental judgment with regard to identifying 'suspicious circumstances' and 'promptly' determining whether a situation warranted a police report." *Id*. Those activities were primarily mental and intellectual and required licensing and specialized training and skill. *Id*. The Ninth Circuit affirmed the trial court's ruling, holding that the

security guard services provided by Bay One were "professional services" as used in the exclusion. *See Burlington Ins. Co. v. German Motors Corp.*, 788 F. App'x 486, 487 (9th Cir. 2019).

That result is not surprising. In fact, courts have held that vocations and occupations requiring far less training or experience than security officers are professional in nature. In *Hollingsworth*, the court considered whether ear-piercing services provided by a cosmetics store were professional. *Hollingsworth*, 208 Cal. App. 4th at 807. Because ear piercing is not regulated by the state and does not require licensing, the policyholder argued that ear piercing "does not qualify as a 'professional' service under the foregoing definitions." *Id.* at 806. The court rejected that argument because the insured's employees "were given instruction in the use of the ear-piercing instrument by a manufacturer's representative and obviously were aware that it was to be used in a prescribed manner to achieve the desired results." *Id.* at 809.

In *Amex Assurance*, the court considered whether plumbing services were professional. The court agreed with *Hollingsworth* that the "ordinary meaning of the word 'professional' is no longer limited to the 'learned professions,' but has a broader scope that includes skilled services such as plumbing." *Amex Assurance*, 112 Cal. App. 4th at 1252. In reaching that conclusion, the court noted that "[c]ontrasted with the minimal education required for ear piercing, a plumber has the equivalent of a Ph.D." *Id.*

If plumbing and ear piercing are professional services under California law, Seven Safe's off-duty police officer security guard services certainly qualify. The argument that Seven Safe's services are professional in nature is even stronger in this case since the security services involved the appointment of off-duty police officers with higher levels of experience and training than normal security guards.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

### 2. Seven Safe's Security Guard Services Require Specialized Knowledge and Licensing and Are Professional in Nature under California Law

In California, the Bureau of Security and Investigative Services ("BSIS") licenses and regulates security guards, private patrol operators, proprietary private security officers, proprietary private security employers, private investigators and others. Under applicable statutes, a "private patrol operator" is a person who "[a]grees to furnish, or furnishes, a watchman, guard, patrolperson, or other person to protect persons or property or to prevent the theft, unlawful taking, loss ... of any goods, wares, merchandise, money ... or property of any kind; or performs the service of a watchman, guard, patrolperson, or other person, for any of these purposes." Cal. Bus. & Prof. Code § 7582.1(a).

A "security guard" or "security officer" is "an employee of a private patrol operator ... who performs the functions as described in subdivision (a) on or about the premises owned or controlled by the customer of the private patrol operator ...." *Id.* § 7582.1(e).

Therefore, Seven Safe and American Guard are "private patrol operators," and the off-duty police officers they hire are "security guards" or "security officers."

Private patrol operators like Seven Safe and American Guard must be licensed. California law provides that "no person shall engage in the business of private patrol operator ... unless that person has applied for and received a license to engage in that business pursuant to this chapter." *Id.* § 7582.3(a).

Security guards and security officers also must be licensed and take specialized training courses. Any person "entering the employ of a licensee to perform the functions of a security guard" is required to "complete a course in the exercise of the power to arrest and the appropriate use of force." *Id.* § 7583.6(a). A registrant is also required to complete not less than 32 hours of training in "security officer skills" within six months from registration. *Id.* § 7583.6(b).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

1    After the initial training, a security officer must take at least 8 hours of additional

2    training on an annual basis, addressing topics such as "responsibilities and ethics in

3    citizen arrest," "limitations on the security guard power to arrest," "restrictions on

4    searches and seizures," "criminal and civil liabilities," "the appropriate use of force,"

5    and "de-escalation and interpersonal communication training, including tactical

6    methods ... to avoid escalating situations that lead to violence." *Id.* § 7583.7.

7    Attesting to the professional nature of the occupation, the training and licensing

8    requirements for security guard services are substantial. Moreover, in the contracts at

9    issue, Seven Safe and American Guard acknowledged that their services were

10    professional. In the subcontract, Seven Safe represented that it "possesses experience

11    and knowledge in providing *professional* services of the same type and nature as the

12    Services required by its Agreement" and that it would provide "*properly skilled and*

13    *trained personnel* as necessary to perform the Services." (UMF No. 2 [emphasis added])

14    Likewise, in its master agreement with the grocery stores, American Guard warrants

15    that all services rendered "will be performed in a highly *professional* manner and will

16    comply with the standards and service levels" set forth in the contract. (UMF No. 6

17    [emphasis added])

18    At the ground level as well, the security officers engaged in activities that are

19    primarily mental or intellectual rather than physical in nature. Under the contracts, the

20    main duty of Seven Safe's security officers was to exercise their judgment "to observe,

21    detect, deter and report criminal activity." (UMF No. 7) As the *Burlington* court

22    recognized, using one's judgment to observe, detect, deter and report criminal activity

23    is primarily a mental task.

24    In conducting those activities, security officers were required to rely upon their

25    training about de-escalation techniques, legal requirements related to arrest powers, and

26    the appropriate use of force (which was to be limited as much as possible). Those

27    activities all involve mental and intellectual knowledge and skills, even in situations

28    where a security officer decides to use physical force.

### 3.    The Injuries Alleged in the Underlying Actions Were Caused by The Rendering of or Failure to Render Professional Services

All injuries alleged in the underlying actions – whether assault and battery or false imprisonment – were caused by Seven Safe security officers in the course of providing security guard services at grocery stores. (UMF Nos. 11, 15, 18, 22, 25) The professional services exclusion bars coverage for those claims as a matter of law. By its terms, the exclusion also applies to claims for negligent supervision or retention of personnel.

The fact that the underlying plaintiffs were not clients of Seven Safe is irrelevant to the application of the exclusion. In assessing the scope of a professional services exclusion, courts look to "the nature of the allegedly wrongful actions rather than [to] the identity of the claimant or the legal theories the claimant chooses to articulate*." Erie Ins. Group v. Alliance Envtl., Inc.*, 921 F. Supp. 537, 542 (S.D. Ind. 1996) (construing exclusion for liability "due to any service of a professional nature"). While "[a] professional services exclusion in a general business liability policy cannot be read so broadly as to exclude liability for any act at all taken in the course of providing professional services ... a professional services exclusion also should not be read so narrowly as to transform a general business liability policy into a professional errors and omissions policy." *Id.* at 542–43; *see also HotChalk, Inc. v. Scottsdale Ins. Co.*, 217 F. Supp. 3d 1058, 1066 (N.D. Cal. 2016), *aff'd*, 736 F. App'x 646 (9th Cir. 2018) (rejecting argument that professional services exclusion applies only to lawsuits brought by the parties that commissioned the insured's professional services).

Here, all injuries alleged in the underlying actions were caused by the rendering or failure to render security guard services. Therefore, the CGL policies do not cover the acts or omissions of the security officers or Seven Safe or American Guard's negligent failure to supervise or hire those guards. Because all claims alleged against Defendants in the underlying actions fall squarely within the exclusion, coverage under the CGL policies is barred in its entirety.

### C. Hiscox Has No Duty to Defend Defendants in the Underlying Actions under the Professional Liability Policies

#### 1. Coverage Is Barred under the Professional Liability Policies Because the Claims Were Not First Made and Reported to Hiscox During the Applicable Policy Period

The professional liability policies are "Claims Made and Reported" policies. As the name suggests, those policies only cover claims first made *and reported* to Hiscox during the relevant policy period. (UMF Nos. 35, 37). Seven Safe's second professional liability policy expired on September 5, 2021. (UMF No. 34) All five lawsuits were first reported to Hiscox after that date. (UMF Nos. 41– 45)

With claims made and reported policies, the "notice-prejudice" rule does not apply. Therefore, the insurer does not have to establish that the late notice prejudiced the insurer. *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1425 (9th Cir. 1991). Rather, to trigger coverage, an insured must strictly comply with the policies' notice requirements. *See Heritage Bank of Commerce v. Zurich Am. Ins. Co.*, No. 23-15115, 2024 WL 810447, at *1 (9th Cir. Feb. 27, 2024).

California requires strict compliance with any provisions in an insurance contract that import "an intention to do or not to do a thing which materially affects the risk." *Chase v. Nat'l Indem. Co.*, 129 Cal. App. 2d 853, 958 (1954). That includes notice requirements in claims made and reported policies. In multiple cases, California courts have explained that notice provisions in such policies bear directly on the insured risk because those provisions (1) reduce the insurer's risk by exterminating potential liability with the expiration of the policy, which is a principal purpose of such policies, and (2) operate as forfeiture clauses regardless of a showing of prejudice. *See Root v. American Equity Specialty Ins. Co.*, 130 Cal. App. 4th 926, 945-46 (2005); *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 888 (1992); *Pacific Emps. Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348, 1358-59 (1990).

No Defendant provided notice of any underlying lawsuits until months after the second professional liability policy had already expired. (UMF Nos. 41–45) Because

19

no claims were first made and reported during a relevant policy period, there is no potential for coverage for the underlying lawsuits under either professional liability policy.

### 2. The Underlying Actions Do Not Involve Services of the Nature and Type Covered by the Insuring Agreements

Hiscox has a second, independent basis for denying coverage under the professional liability policies. The policies do not cover the services involved.

Under the insuring agreement in those policies, Hiscox agrees to pay **Damages** and **Claim Expenses** resulting from any covered **Claim** for **Wrongful Acts**. (UMF No. 36) The term **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission or Personal Injury committed by the insured in the performance of **Your Professional Services**, which is defined to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation". (UMF Nos. 38, 39) **Technology Services** in turn is defined to include network security design, software programming and other technology-related services. (UMF No. 40)

The allegations in the underlying actions do not involve wrongdoing related to **Technology Services** or Information Technology. (UMF Nos. 11, 15, 18, 22, 25) Rather, they involve Seven Safe's alleged negligence in providing off-duty police officer security guard services. (UMF Nos. 11, 15, 18, 22, 25) Because the underlying actions do not allege any wrongdoing by Seven Safe in the performance of covered services, the lawsuits do not implicate the insuring agreements in the professional liability policies.

### D. <u>Hiscox Has No Duty to Indemnify in Connection with the Underlying Actions</u>

The duty to defend is broader than the duty to indemnify. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 19 (1995). Therefore, where there is no duty to defend, there can be no duty to indemnify. *Certain Underwriters of Lloyd's v. Superior Court,* 24 Cal.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)

4th 945, 958 (2002). Because Hiscox has no duty to defend Defendants under any policy, it has no duty to indemnify them either.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Hiscox is entitled to judgment as a matter of law on its first claim for relief and requests that the Court issue an order declaring that Hiscox has no duty to defend or indemnify Defendants in the underlying actions.


DATED:  October 7, 2024                    KENNEDYS CMK LLP


By: _____
TRAVIS WALL
ZINA YU
CAMILLE ZUBER
Attorneys for Plaintiff
HISCOX INSURANCE COMPANY

1

2

3

4

5

6

7

8

9

10

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff HISCOX INSURANCE COMPANY, certifies that this brief contains 6214 words, which

☒  complies with the word limit of L.R. 11-6.1.

☐  complies with the word limit set by court order dated

DATED:  October 7, 2024                    KENNEDYS CMK LLP

By: _____

TRAVIS WALL
ZINA YU
CAMILLE ZUBER
Attorneys for Plaintiff
HISCOX INSURANCE COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES // 2:24-CV-01155 MCS (ASX)