Travis Wall (SBN 191662)
Travis.Wall@kennedyslaw.com
Zina Yu (SBN 291993)
Zina.Yu@kennedyslaw.com
Camille Zuber (SBN 349650)
Camille.Zuber@kennedyslaw.com
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
Telephone:   415-323-4487
Facsimile:   415-323-4445

Attorneys for Plaintiff
HISCOX INSURANCE COMPANY, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HISCOX INSURANCE COMPANY, INC., an Illinois Corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>SEVEN SAFE SERVICES, INC., a California Corporation, AMERICAN GUARD SERVICES, INC., a California Corporation, a California Corporation, LESTER FINNELL, an individual, and JONATHAN AMBRISTER, an individual,<br><br>            Defendants. | Case No. 2:24-cv-01155 MCS (ASx)<br><br>**DECLARATION OF MICHAEL FRANKLIN IN SUPPORT OF PLAINTIFF HISCOX INSURANCE COMPANY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Date:   Monday, November 18, 2024**<br>**Time:   9:00 a.m.**<br>**Judge:  Hon. Mark C. Scarsi**<br>**Ctrm:   7C, 7th Floor**<br><br>Complaint Filed:   February 9, 2024<br>First Amended<br>Complaint Filed:   April 30, 2024<br>Trial Date:   May 20, 2025 |

I, Michael Franklin, hereby declare:

1.      I am Head of Claims - Technical for Hiscox Insurance Company, Inc. ("Hiscox") and am authorized to provide this declaration on Hiscox's behalf. I have personal knowledge of the matters set forth herein, and if called to testify, I could and would testify competently thereto. I also have personal knowledge of and understand Hiscox's record-keeping systems.

2.      All records attached to this declaration are true and correct copies of documents that I obtained from Hiscox's files. Based upon information and belief, the records attached to this declaration were made or transmitted by a person with knowledge at or near the time of the incident recorded and were kept in the course of Hiscox's regularly conducted business activity.

3.      Attached as **Exhibit 1**, **Exhibit 2** and **Exhibit 3** are true and correct copies of reservation of rights letters that Hiscox sent to American Guard, Seven Safe and Jonathan Armbrister in connection with the lawsuit entitled *Grant v. The Kroger Co.*, Case No. 21STCV46592.

4.      Attached as **Exhibit 4** and **Exhibit 5** are true and correct copies of reservation of rights letters that Hiscox sent to American Guard and Seven Safe in connection with the lawsuit entitled *Penn v. The Kroger Co.*, Case No. 37-2021-00029278-CU-PO-CTL.

5.      Attached as **Exhibit 6** and **Exhibit 7** are true and correct copies of reservation of rights letters that Hiscox sent to American Guard and Seven Safe in connection with the lawsuit entitled *Vega v. The Kroger Co.*, Case No. CIVSB2029071.

6.      Attached as **Exhibit 8** and **Exhibit 9** are true and correct copies of reservation of rights letters that Hiscox sent to American Guard and Seven Safe in connection with the lawsuit entitled *Biggers v. Ralphs Grocery Co.*, Case No. 22STCV39533.

7.      Attached as **Exhibit 10 and Exhibit 11** are a true and correct copies of the reservation of rights letters that Hiscox sent to American Guard and Seven Safe in

DECLARATION OF MICHAEL FRANKLIN IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
2:24-cv-01155 MCS (ASx)

connection with the lawsuit entitled *Mendez v. American Guard Services, Inc.*, Case No. BCV-22-102075.

8. The professional liability policies issued to Seven Safe are claims made and reported policies. An insured can provide notice of a claim by phone, by email or by regular mail. According to Hiscox's records, Hiscox received first notice of each claim on the following dates:

| Claim | Date of Loss | First Notice of Claim |
|---|---|---|
| Grant | December 22, 2020 | August 4, 2022 |
| Penn | February 12, 2021 | November 15, 2021 |
| Vega | May 17, 2020 | November 15, 2021 |
| Biggers | January 5, 2021 | April 18, 2023 |
| Mendez | August 16, 2020 | October 19, 2022 |

9. Attached as **Exhibit 12** is a true and correct copy of the first notice of claim Hiscox received in connection with *Grant v. The Kroger Co.*, Case No. 21STCV46592.

10. Attached as **Exhibit 13** is a true and correct copy of the first notice of claim Hiscox received in connection with *Vega v. The Kroger Co.*, Case No. CIVSB2029071 and *Penn v. The Kroger Co.*, Case No. 37-2021-00029278-CU-PO-CTL.

11. Attached as **Exhibit 14** is a true and correct copy of the first notice of claim Hiscox received in connection with *Biggers v. Ralphs Grocery Co.*, Case No. 22STCV39533.

12. Attached as **Exhibit 15** is a true and correct copy of the first notice of claim Hiscox received in connection with *Mendez v. American Guard Services, Inc.*, Case No. BCV-22-102075.

13. Attached as **Exhibit 16** is a true and correct copy of a January 2020 Subcontractor Services Agreement between American Guard and Seven Safe. This agreement was attached to tenders by American Guard to Seven Safe and/or Hiscox for defense and indemnity in the underlying actions.

14.    Attached as **Exhibit 17** is a true and correct copy of a 2016 Master Services Agreement, with amendments, between the Kroger Company and American Guard. The agreement was part of tenders of defense and indemnity made by Ralphs Grocery Company and Kroger Company connection with the *Penn* and *Grant* lawsuits. On information and belief, the same agreement forms the basis of Ralphs's indemnity claims in other lawsuits as well.

I certify under penalty of perjury under the laws of the United States that the statements in this declaration are true and correct to the best of my knowledge. Executed this __13th__ day of __September__, 2024.

/s/
Michael Franklin

DECLARATION OF MICHAEL FRANKLIN IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
2:24-cv-01155 MCS (ASx)

EXHIBIT 1



Rena Cherick, AIC
*Hiscox USA*
5 Concourse Parkway, Suite 2150
Atlanta, GA 30328

T +1 480-214-8969
F +1 678-272-3404
E rena.cherick@hiscox.com

September 14, 2023

**Via email only**

Neil C. Evans, Esq.
General Counsel
Worldwide Sourcing Group, Inc. and
Affiliated Entities
1125 W. 190th St.
Gardena, CA 90248
legal@wwsginc.com

Re:    ***Miyoshi Grant v. Kroger Company, et al.***
       Filed in Los Angeles Superior Court Case No. 21STCV4659

|  |  |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Claimant:** | **Miyoshi Grant** |
| **Policy Nos.:** | **UDC-4265713-EO-20 and UDC-4265713-CGL-20** |
| **Policy Period:** | **September 5, 2020 - September 5, 2021** |
| **Hiscox Claim No.:** | **184037621** |

**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**

Dear Mr. Evans:

We are writing concerning the defense of American Guard Services, Inc. ("American Guard") with respect to the lawsuit entitled *Miyoshi Grant v. Kroger Company*, filed in Los Angeles Superior Court Case No. 21STCV46592. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe Services, Inc. ("Seven Safe") as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim; and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend American Guard as an additional insured under the CGL policy subject to a full reservation of rights, including the right to deny coverage and withdraw from the defense and to seek reimbursement of any or all defense or indemnity payments made on American Guard's behalf.

- The CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against American Guard were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for American Guard altogether.

- Hiscox will share American Guard's defense expenses with its insurer, Lexington Insurance Company ("Lexington"), on a 50-50 basis, subject to all rights of reimbursement, contribution or reallocation. To the extent there is any potential for additional insured coverage under Hiscox's CGL policy, that insurance would cover American Guard only for its vicarious liability because of Seven Safe's acts or omissions.  Hiscox does not insure American Guard for allegations related to its independent wrongdoing. For that risk, American Guard's policy with Lexington is primary.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

## Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the third amended complaint (the "Complaint"), on December 22, 2021 (which appears to be the incorrect date) at approximately 10 PM, Plaintiff entered a Ralphs grocery store located at 645 West 9th, Los Angeles, CA 90015. Plaintiff walked to the back to use the restroom. Plaintiff claims she was standing looking at a bundt cake when a Ralphs employee looked at her with a hostile expression. Plaintiff further alleges that a comment was made by the employee and she responded "What are you talking about? " The employee followed her as she was attempting to leave.

At that time, a security guard, Jonathan Armbrister, approached her. Plaintiff believes he was armed with mace, a bullet proof vest, and a police belt with a baton or firearm. Plaintiff alleges she was shoved, punched, pepper sprayed and dragged across the store onto the pavement outside by Mr. Armbrister. Plaintiff asserts she was handcuffed, detained, and confined, falsely arrested and deprived of her liberty by law enforcement. Los Angeles PD booked Plaintiff, who was released the following morning around 4 AM. Plaintiff returned to the store to retrieve her phone and was allegedly met with inappropriate and unlawful threats by another security guard.

The Complaint alleges causes of action:(1) assault and battery, (2) negligence, (3) negligent hiring, retention and supervision, (4) Violations of the CA Ralph Act, (5) Violations of the CA Unruh Civil Rights Act, and (6) Violations of the CA Bane Act. Only the first two causes of action have been alleged against Mr. Armbrister. Other named defendants include American Guard, Ralphs, and Kroeger.

Our investigation revealed that at the time of the incident, Mr. Armbrister was performing security guard services at Ralphs on behalf of Seven Safe. Pursuant to a subcontractor agreement with American Guard, Seven Safe agreed to provide security guard services at various Ralphs locations in Southern California. In that contract, Seven Safe represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement" and that it would provide "properly skilled and trained

personnel as necessary to perform the Services." Seven Safe also agreed that it would select security officers "with due diligence standards in the security guard industry" and ensure that they meet all applicable state and federal licensing requirements.

American Guard tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021. By letter dated September 2, 2022, Hiscox agreed to defend American Guard in the lawsuit under a full reservation of rights.

### Policy Limits

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-20 . The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-20, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

### Professional Liability Policy Provisions and Coverage Analysis

The insuring agreement in the professional liability policy states in pertinent part:

A. INSURING AGREEMENT

> **We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

---

[1] Bolded terms have the same meanings as defined in the policies.

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed in late 2021, and the lawsuit was not reported to Hiscox until August 2022. For that separate reason, there is no coverage for the **Claim** under the 2020 to 2021 professional liability policy.

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

### III. Exclusions

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

### CGL Policy Provisions and Coverage Analysis

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

9

Coverage Part A of the CGL policy contains the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY  LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury'' to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

The CGL policy contains the following Supplementary Payments provisions:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

[¶¶]

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

10

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

**f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

* * *

The CGL policy contains the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information; [and]

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this

Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

12

5. "Employee" includes a "leased worker" and a "temporary worker".[3]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

    a.  False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

2. **Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

* * *

The CGL policy contains an additional insured endorsement, Additional Insured – Automatic Status, which provides:

### ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

   A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

Additional Insured – Automatic Status, Form No. CGL E5421 CW (02/14).

## CGL Coverage Analysis

### A. Additional Insured Status

The CGL policy covers "insureds". By endorsement, Section II – Who Is An Insured was modified to include as an additional insured any "organization(s) for whom [Seven Safe is] performing operations . . . when [Seven Safe] and such . . . organization(s) have agreed in writing in a contract or agreement that such . . . organization(s) be added as an additional insured." Additional Insured – Automatic Status Endorsement, Form No. CGL E5421 CW (02/14). There is a written contract between Seven Safe and American Guard requiring American Guard to be included as an additional insured on Seven Safe's CGL policy; and thus, the additional insured coverage potentially applies.

However, an organization is an additional insured under the CGL policy "only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by [Seven Safe's] acts or omissions or the acts or omissions of those acting on [its] behalf . . . [i]n the performance of [Seven Safe's] ongoing operations." Id. Thus, Hiscox's policy would insure American Guard only for its vicarious liability for damages caused by Seven Safe's acts or omissions. Hiscox's additional insured coverage does not cover American Guard's independent negligence. For that risk, American Guard's own insurance is primary, meaning its insurer, Lexington, has an independent duty to defend.

### B. Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Mr. Armbrister, Seven Safe, and American Guard are professional in nature. Mr. Armbrister is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. Mr. Armbrister's security guard services qualify as a professional service. Seven Safe supplied Mr. Armbrister as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe Services represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### C. Insuring Agreement Coverage Parts A and B

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The Complaint alleges potential "bodily injury". However, the Complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL policy;, and thus, there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the Complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

### D. Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

---

[4] In its prior reservations of rights, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

### E. Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or Mr. Armbrister.

### F. Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the wilful act of the insured as provided in Insurance Code section 533.

### <u>Mutual Obligations</u>

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend American Guard under a reservation of rights. But the policy imposes obligations on American Guard as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

American Guard has elected to appoint Marc Feldman, Esq., of the firm Koletsky, Mancini, Feldman & Morrow, LLP to defend it in the lawsuit. Hiscox consents to that appointment. The Koletsky firm must keep Hiscox informed about developments in the case, provide analyses of liability and settlement values, and comply with Hiscox's litigation guidelines.

As noted above, Lexington has an independent duty to defend American Guard. Accordingly, Hiscox will share defense expenses with Lexington on a 50-50 basis, subject to all rights to reimbursement of, contribution for, or the reallocation of those expenses. Accordingly, going forward, the Koletsky firm should invoice both Hiscox and Lexington for 50 percent of the fees and costs.

### <u>Excess Disclaimer</u>

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against American Guard and Seven Safe – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

### <u>General Reservation of Rights</u>

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend American Guard in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:    1-800-927-4357 (calling from within California) or
>           1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184037621** on all future correspondence.

The defense of American Guard is being handled under a separate claim, number **184040174.** Any correspondence with regard to defense of American Guard, should continue to go to Dayna Kufner at Dayna.Kufner@hiscox.com.

Sincerely,

Rena Cherick, AIC
Complex Claims Specialist
General Liability Claims
rena.cherick@hiscox.com

17

cc:     Apple Miranda, Worldwide Sourcing (amiranda@wwsginc.com)
        Mohamed Youssef, Worldwide Sourcing (mohamed@wwsginc.com)
        AJ Jolet, Worldwide Sourcing (ajolet@wwsginc.com)
        Marc Feldman, Esq. Koletsky (msf@kmfm.com)
        Brian Costa, Lexington (brian.costa@AIG.com) Claim# C130036171-0001-01
        Lester Finnell, Seven Safe (sevensafesv@aol.com)
        John Fu, Esq. (lawofficesofjohnfu@gmail.com)

EXHIBIT 2



*Rena Cherick, AIC*
*Hiscox USA*
*5 Concourse Parkway, Suite 2150*
*Atlanta, GA 30328*

*T +1 480-214-8969*
*F +1 678-272-3404*
*E rena.cherick@hiscox.com*

January 17, 2024

**Via email only**

Lester Finnell
Seven Safe Services, inc.
9547 Sophia Ave.
North Hills, CA 91343
sevensafesv@aol.com

Re:  *Miyoshi Grant v. Kroger Company, et al.*
     Filed in Los Angeles Superior Court Case No. 21STCV4659

|  |  |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Claimant:** | **Miyoshi Grant** |
| **Policy Nos.:** | **UDC-4265713-EO-20 and UDC-4265713-CGL-20** |
| **Policy Period:** | **September 5, 2020 - September 5, 2021** |
| **Hiscox Claim No.:** | **184037621** |

**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**

Dear Mr. Finnell:

We are writing concerning the defense of Seven Safe Services, Inc. ("Seven Safe") with respect to the lawsuit entitled *Miyoshi Grant v. Kroger Company*, filed in Los Angeles Superior Court Case No. 21STCV46592. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim, and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend Jonathan Armbrister and Seven Safe under the CGL policy under a full reservation of rights. The Complaint alleges potential "bodily injury" and "personal and advertising injury" under the insuring agreements in that policy. However, the CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against Seven Safe were

caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for Seven Safe altogether and to seek reimbursement of defense or indemnity payments made on its behalf.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the third amended complaint (the "Complaint"), on December 22, 2021 (which appears to be the incorrect date) at approximately 10 PM, Plaintiff entered a Ralphs grocery store located at 645 West 9th, Los Angeles, CA 90015. Plaintiff walked to the back to use the restroom. Plaintiff claims she was standing looking at a bundt cake when a Ralphs employee looked at her with a hostile expression. Plaintiff further alleges that a comment was made by the employee and she responded "What are you talking about? " The employee followed her as she was attempting to leave.

At that time, a security guard, Jonathan Armbrister, approached her. Plaintiff believes he was armed with mace, a bullet proof vest, and a police belt with a baton or firearm. Plaintiff alleges she was shoved, punched, pepper sprayed and dragged across the store onto the pavement outside by Mr. Armbrister. Plaintiff asserts she was handcuffed, detained, and confined, falsely arrested and deprived of her liberty by law enforcement. Los Angeles PD booked Plaintiff, who was released the following morning around 4 AM. Plaintiff returned to the store to retrieve her phone and was allegedly met with inappropriate and unlawful threats by another security guard.

The Complaint alleges causes of action:(1) assault and battery, (2) negligence, (3) negligent hiring, retention and supervision, (4) Violations of the CA Ralph Act, (5) Violations of the CA Unruh Civil Rights Act, and (6) Violations of the CA Bane Act. Only the first two causes of action have been alleged against Mr. Armbrister. Other named defendants include American Guard, Ralphs, and Kroeger.

Our investigation revealed that at the time of the incident, Mr. Armbrister was performing security guard services at Ralphs on behalf of Seven Safe. Pursuant to a subcontractor agreement with American Guard, Seven Safe agreed to provide security guard services at various Ralphs locations in Southern California. In that contract, Seven Safe represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services." Seven Safe also agreed that it would select security officers "with due diligence standards in the security guard industry" and ensure that they meet all applicable state and federal licensing requirements.

Seven Safe tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021. By letter dated September 2, 2022, Hiscox agreed to defend Seven Safe and Jonathan Armbrister in the lawsuit under a full reservation of rights.

**<u>Policy Limits</u>**

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-20. The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-20, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

**<u>Professional Liability Policy Provisions and Coverage Analysis</u>**

The insuring agreement in the professional liability policy states in pertinent part:

A.  INSURING AGREEMENT

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

---

[1] Bolded terms have the same meanings as defined in the policies.

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed in late 2021, and the lawsuit was not reported to Hiscox until August 2022. For that separate reason, there is no coverage for the **Claim** under the 2020 to 2021 professional liability policy.

### III. Exclusions

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

### CGL Policy Provisions and Coverage Analysis

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

\* \* \*

Coverage Part A of the CGL policy contains the following relevant exclusions:

23

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

The CGL policy contains the following Supplementary Payments provisions:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

[¶¶]

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

24

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

**f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

* * *

The CGL policy contains the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information; [and]

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this

Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\* \* \*

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

    **a.** False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

**CGL Coverage Analysis**

**A. Insuring Agreement Coverage Part A**

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The complaint alleges potential "bodily injury". However, the complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL Policy, and thus there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

### B. Insuring Agreement Coverage Part B

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

### C. Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Mr. Armbrister, Seven Safe, and American Guard are professional in nature. Mr. Armbrister is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. Mr. Armbrister's security guard services qualify as a professional service. Seven Safe supplied Mr. Armbrister as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### D. Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

---

[4] In its prior position letters, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

**E.  Supplementary Payments**

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or Mr. Armbrister.

**F.  Public Policy**

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the wilful act of the insured as provided in Insurance Code section 533.

## Mutual Obligations

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend Seven Safe under a reservation of rights. But the policy imposes obligations on Seven Safe as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

As you know, Hiscox has appointed Attorney Edward Seo, of the firm Lewis & Brisbois, telephone 213-358-6027, 633 W. 5th Street, Suite 4000, Los Angeles CA 90071 to defend Seven Safe in the lawsuit. Please cooperate with Attorney Seo in the defense of the case.

## Advice of Counsel

This letter addresses coverage limitations and exclusions in the Hiscox policies. In light of those issues, Seven Safe may want to consult with an attorney at its own expense to advise it about its rights under the Hiscox policies.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against Seven Safe involving dates of loss within the policy period – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

**<u>General Reservation of Rights</u>**

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend Seven Safe in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:    1-800-927-4357 (calling from within California) or
>           1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184037621** on all future correspondence.

Sincerely,

Rena Cherick, AIC
Complex Claims Specialist
General Liability Claims
rena.cherick@hiscox.com

cc:    Edward Seo, Esq. (Edward.Seo@lewisbrisbois.com)

EXHIBIT 3



*Rena Cherick, AIC*
*Hiscox USA*
*5 Concourse Parkway, Suite 2150*
*Atlanta, GA 30328*

*T +1 480-214-8969*
*F +1 678-272-3404*
*E rena.cherick@hiscox.com*

October 5, 2023

**Via email only: JArmbrister23@gmail.com**

Jonathan Armbrister
2285 Earl Ave Unit#4
Long Beach CA 90806

**Re:**  *Miyoshi Grant v. Kroger Company, et al.*
Filed in Los Angeles Superior Court Case No. 21STCV4659

|  |  |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Claimant:** | **Miyoshi Grant** |
| **Policy Nos.:** | **UDC-4265713-EO-20 and** |
|  | **UDC-4265713-CGL-20** |
| **Policy Period:** | **September 5, 2020 - September 5, 2021** |
| **Hiscox Claim No.:** | **184037621** |

**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**

Dear Mr. Armbrister:

We are writing concerning your defense with respect to the lawsuit entitled *Miyoshi Grant v. Kroger Company*, filed in Los Angeles Superior Court Case No. 21STCV46592. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe Services, Inc. as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim, and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend you under the CGL policy subject to a full reservation of rights. The Complaint alleges potential "bodily injury" and "personal and advertising injury" under the insuring agreements in that policy. However, the CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against you were caused by the rendering or failure to render a professional service – namely, security guard services.

- The CGL policy only covers "insureds". An "insured" is defined in relevant part to include "employees". Hiscox is informed that you were retained as a 1099 contractor and thus may not qualify as an insured under the CGL policy.

- Hiscox reserves all rights under the professional services exclusion and the insured requirment, including the right to deny coverage altogether and withdraw from the defense. Hiscox also reserves the right to seek reimbursement of defense or indemnity payments made on your behalf.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the third amended complaint (the "Complaint"), on December 22, 2021 (which appears to be the incorrect date) at approximately 10 PM, Plaintiff entered a Ralphs grocery store located at 645 West 9th, Los Angeles, CA 90015. Plaintiff walked to the back to use the restroom. Plaintiff claims she was standing looking at a bundt cake when a Ralphs employee looked at her with a hostile expression. Plaintiff further alleges that a comment was made by the employee and she responded "What are you talking about? " The employee followed her as she was attempting to leave.

At that time, a security guard (Jonathan Armbrister) approached her. Plaintiff believes your were armed with mace, a bullet proof vest, and a police belt with a baton or firearm. Plaintiff alleges she was shoved, punched, pepper sprayed and dragged across the store onto the pavement outside by you. Plaintiff asserts she was handcuffed, detained, and confined, falsely arrested and deprived of her liberty by law enforcement. Los Angeles PD booked Plaintiff, who was released the following morning around 4 AM. Plaintiff returned to the store to retrieve her phone and was allegedly met with inappropriate and unlawful threats by another security guard.

The Complaint alleges causes of action:(1) assault and battery, (2) negligence, (3) negligent hiring, retention and supervision, (4) Violations of the CA Ralph Act, (5) Violations of the CA Unruh Civil Rights Act, and (6) Violations of the CA Bane Act. Only the first two causes of action have been alleged against you. Other named defendants include American Guard, Ralphs, and Kroeger.

Our investigation revealed that at the time of the incident, you were performing security guard services at Ralphs on behalf of Seven Safe. Pursuant to a subcontractor agreement with American Guard, Seven Safe agreed to provide security guard services at various Ralphs locations in Southern California. In that contract, Seven Safe represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services." Seven Safe also agreed that it would select security officers "with due diligence standards in the security guard industry" and ensure that they meet all applicable state and federal licensing requirements.

Seven Safe tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021. By letter dated September 2, 2022, Hiscox agreed to defend Seven Safe and you in the lawsuit under a full reservation of rights.

**Policy Limits**

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-20. The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-20, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

**Professional Liability Policy Provisions and Coverage Analysis**

The insuring agreement in the professional liability policy states in pertinent part:

A. INSURING AGREEMENT

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

---

[1] Bolded terms have the same meanings as defined in the policies.

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed in late 2021, and the lawsuit was not reported to Hiscox until August 2022. For that separate reason, there is no coverage for the **Claim** under the 2020 to 2021 professional liability policy.

**III. Exclusions**

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

**<ins>CGL Policy Provisions and Coverage Analysis</ins>**

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

Coverage Part A of the CGL policy contains the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY  LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

The CGL policy contains the following Supplementary Payments provisions:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

[¶¶]

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

36

    **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

    **f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    **g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

* * *

Only "insureds" are entitled to coverage under the CGL Policy. Section II describes who qualifies as an insured:

### SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **d.** An organization other than a partnership, joint venture of limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors, but only with respect to their liability as stockholders.

[¶¶]

**2.** Each of the following is also an insured:

    **a.** Your "volunteer workers" only while performing the conduct of your business, or your "employees", other than either your "executive officers" . . . but only for acts within the course and scope of their employment by you or while performing duties related to the conduct of your business.

* * *

The CGL policy contains the following conditions:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information; [and]

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

38

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.**  "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

**14.**  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

**a.**  False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2.  Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

**CGL Coverage Analysis**

**A. "Insured" Requirement**

The CGL policy only covers "insureds". To qualify, you must be an "employee" of Seven Safe within the meaning of the CGL policy. Hiscox is informed that Seven Safe retained you as a 1099 contractor. For that reason, you may not be entitled to coverage under the policy. Hiscox reserves all rights under the "insured" requirement, including the right to deny coverage in whole or in part.

**B. Insuring Agreement Coverage Part A**

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The complaint alleges potential "bodily injury". However, the complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL Policy, and thus there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

**C. Insuring Agreement Coverage Part B**

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

**D. Professional Services Exclusion**

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or

skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by you are professional in nature. You are a licensed guard, with a permit to carry a baton and an exposed firearm. By law, you are required to complete initial and continuing training courses in various topics, including the power to arrest. Seven Safe supplied you as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Your security guard services qualify as a professional service. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### E. Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

### F. Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or you.

### G. Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the wilful act of the insured as provided in Insurance Code section 533.

## Mutual Obligations

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend you under a reservation of rights. But the CGL policy imposes obligations on you as well. The policy requires that you cooperate fully with Hiscox in the

---

[4] In its prior position letters, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, you also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

<u>**Right to Independent Counsel**</u>

Typically, an insurer has the right to choose and appoint defense counsel. But, in certain situations, a person may entitled to independent counsel selected by him or her instead of the insurance company. The right to independent counsel can arise if there is a conflict of interest between the insurer and the insured. Hiscox's reservation of rights in this matter may give rise to a right to independent counsel. We refer you to Code of Civil Procedure section 2860 for a review of its full provisions and requirements, but highlight the following issues.

Even if independent counsel is used, Hiscox retains the right to control settlement of the action. You also would have a continuing duty to seek Hiscox's consent before admitted liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

Further, independent counsel has a continuing duty to Hiscox to timely inform and consult with it on all matters relating to the lawsuit, and to disclose all information concerning the lawsuit except privileged materials relating to coverage disputes.  Hiscox has the right to require that independent counsel have five years of civil litigation experience, including substantial defense experience in the subject at issue in the litigation.

Hiscox's duty to pay for independent counsel is also limited by statute, such that the rates to be paid are limited to the rates that are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. If independent counsel charges higher rates than that, you would be responsible for paying the difference.

Finally, you may waive the right to independent counsel and authorize Hiscox to select defense counsel to represent you in the lawsuit. To do that, California law requires that you sign the following statement:

> I have been advised and informed of my right to select independent counsel to represent me in this lawsuit. I have considered this matter fully and freely waive my right to select independent counsel at this time. I authorize my insurer to select a defense attorney to represent me in this lawsuit.

If you elect to use counsel appointed by Hiscox instead of choosing independent counsel, please sign the statement at the end of this letter and return the signed statement to me. If we do not hear from you within 30 days, we will assume counsel retained is appropriate and you consent to such counsel.

## Advice of Counsel

This letter addresses coverage limitations and exclusions in the Hiscox policies, as well as rights to independent counsel. In light of those issues, you may want to consult with an attorney at its own expense to advise you about your rights under the Hiscox policies.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against Seven Safe involving dates of loss within the policy period – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

## General Reservation of Rights

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend you in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage.

In the event you believe that any part of the insurance claim has been wrongfully denied, you may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

>Insurance Commissioner
>California Department of Insurance
>Customer Services Division
>300 South Spring Street, South Tower
>Los Angeles, CA 90013
>Tel:     1-800-927-4357 (calling from within California) or
>            1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184037621** on all future correspondence.

Your defense is being handled under a separate claim, number **184040876.** Any correspondence with regard to your defense, should continue to go to Katy Partridge at **Katy.Partridge@hiscox.com**.

Sincerely,

Rena Cherick, AIC
Complex Claims Specialist
General Liability Claims
rena.cherick@hiscox.com

**<u>Waiver of Right to Appoint Independent Counsel</u>**

I have been advised and informed of my right to select independent counsel to represent me in this lawsuit. I have considered this matter fully and freely waive my right to select independent counsel at this time. I authorize my insurer to select a defense attorney to represent me in this lawsuit.

Date:_____

_____
Jonathan Armbrister

cc:    Edward Seo (Edward.Seo@lewisbrisbois.com)

EXHIBIT 4



Rena Cherick, AIC
*Hiscox USA*
5 Concourse Parkway, Suite 2150
Atlanta, GA 30328

T +1 480-214-8969
F +1 678-272-3404
E rena.cherick@hiscox.com

September 22, 2023

**Via email only**

Thomas Olsen, Esq.
tolsen@lorberlaw.com

Re:    *Penn, etal v. Kroger Company, et al.*
San Diego Superior Court Case No.37-2021-00029278-CU-PO-CTL

|  |  |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Tendering Party:** | **American Guard Services Inc.** |
| **Policy Nos.:** | **UDC-4265713-EO-20 and** |
|  | **UDC-4265713-CGL-20** |
| **Policy Period:** | **September 5, 2020 - September 5, 2021** |
| **Hiscox Claim No.:** | **184033073** |
| **Loss Date:** | **February 12, 2021** |

<u>**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**</u>

Dear Mr. Olsen:

We are writing concerning the defense of American Guard Services, Inc. ("American Guard") with respect to the lawsuit entitled *Gwendolyn D. Penn, individually and as Successor-In-Interest to Gwendolyn D. Penn, individually and as Successor-In-Interest to Zhadius Penn, Deceased v. Kroger Company dba Ralphs, American Guard Services Inc., Adam T. Burkett, Prolific Protection Group Inc., Lester Finnell dba Seven Safe Services, etal*, filed in San Diego Superior Court Case No. 37-2021-00029278-CU-PO-CTL. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe Services, Inc. ("Seven Safe") as the named insureed: a professional liabilty policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injur**y liabilty. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim; and thus, Hiscox denies coverage under that policy.

- Hiscox agrees to defend American Guard as an additional insured under the CGL policy subject to a full reservation of rights, including the right to deny coverage and withdraw from the defense and to seek reimbursement of any or all defense or indemnity payments made on American Guard's behalf.

- The CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against American Guard were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for American Guard altogether.

- Hiscox will share American Guard's defense expenses with its insurer, Lexington Insurance Company ("Lexington"), on a 50-50 basis, subject to all rights of reimbursement, contribution or reallocation. To the extent there is any potential for additional insured coverage under Hiscox's CGL policy, that insurance would cover American Guard only for its vicarious liability because of Seven Safe's acts or omissions.  Hiscox does not insure American Guard for allegations related to its independent wrongdoing. For that risk, American Guard's policy with Lexington is primary.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

## Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the second amended complaint (the "Complaint"), on February 12, 2021, Plaintiff's son was shot and killed by a security guard at a Ralphs grocery store located at 101 G Street, San Diego, CA 92101.

The Complaint alleges causes of action of premises liability and general negligence.  Plaintiff alleges that Zhadius was a business invitee of the Store and that the defendants were negligent in the management of the premises and the oversight of the security guard who allegedly lacked the training, temperament, and experience required to be entrusted with firearms.   Other named defendants include American Guard, Prolific Protection, Adam T. Burkett and Lester Finnell dba Seven Safe Services..

Based upon secondary evidence regarding the incident, Ralph's surveillance video shows an altercation between Zhadius Penn and a uniformed on-duty security guard, purportedly Adam Burkett, employed by Prolific Protection, on February 12, 2021 at about 9:26 p.m. at Ralph's number 123 in downtown San Diego. Mr. Penn appears to have physically assaulted the guard before fleeing the premises. Thereafter, the guard chased Mr. Penn, drew his handgun, and while standing in the threshold of the exit door, appears to have shot Mr. Penn and caused him to fall onto the sidewalk outside the store. Witnesses gathered and the San Diego police and fire departments were quickly summoned.

Our investigation revealed that at the time of the incident, Mr. Burkett was performing security guard services at Ralphs on behalf of Prolific Protection, according to a subcontract agreement with Seven Safe. Pursuant to a subcontractor agreement with American Guard, Seven Safe

agreed to provide security guard services at various Ralphs locations in Southern California. In that contract, Seven Safe represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services." Seven Safe also agreed that it would select security officers "with due diligence standards in the security guard industry" and ensure that they meet all applicable state and federal licensing requirements.

American Guard tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021. By letter dated June 21, 2022, Hiscox agreed to defend American Guard in the lawsuit under a full reservation of rights.

<u>**Policy Limits**</u>

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-20 . The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-20, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

<u>**Professional Liability Policy Provisions and Coverage Analysis**</u>

The insuring agreement in the professional liability policy states in pertinent part:

    A.  INSURING AGREEMENT

> **We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Techonology Services** or Information Technology (IT) consutling services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liabilty policy on that basis.[2]

---

[1] Bolded terms have the same meanings as defined in the policies.

Coverage for the claims is also excluded. Exlusion K in the professional liability policy provides:

### III. Exclusions

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physcial injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

### CGL Policy Provisions and Coverage Analysis

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

---

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed July 8, 2021, and the lawsuit was not reported to Hiscox until November 2021. For that separate reason, there is no coverage for the **Claim** under the September 5, 2020 to September 5, 2021 professional liability policy.

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

Coverage Part A of the CGL policy contains the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY  LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

The CGL policy contains the following Supplementary Payments provisions:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

[¶¶]

50

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

**f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

\* \* \*

The CGL policy contains the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information; [and]

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

51

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

    **a.** False arrest, detention or imprisonment[.]

\* \* \*

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

\* \* \*

The CGL policy contains an additional insured endorsement, Additional Insured – Automatic Status, which provides:

**ADDITIONAL INSURED – AUTOMATIC STATUS**

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

Additional Insured – Automatic Status, Form No. CGL E5421 CW (02/14).

## CGL Coverage Analysis

### A.  Additional Insured Status

The CGL policy covers "insureds". By endorsement, Section II – Who Is An Insured was modified to include as an additional insured any "organization(s) for whom [Seven Safe is] performing operations . . . when [Seven Safe] and such . . . organization(s) have agreed in writing in a contract or agreement that such . . . organization(s) be added as an additional insured." Additional Insured – Automatic Status Endorsement, Form No. CGL E5421 CW (02/14). There is a written contract between Seven Safe and American Guard requiring American Guard to be included as an additional insured on Seven Safe's CGL policy; and thus, the additional insured coverage potentially applies.

However, an organization is an additional insured under the CGL policy "only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by [Seven Safe's] acts or omissions or the acts or omissions of those acting on [its] behalf . . . [i]n the performance of [Seven Safe's] ongoing operations." Id. Thus, Hiscox's policy would insure American Guard only for its vicarious liability for damages caused by Seven Safe's acts or omissions. Hiscox's additional insured coverage does not cover American Guard's independent negligence. For that risk, American Guard's own insurance is primary, meaning its insurer, Lexington, has an independent duty to defend.

### B.  Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion

applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Mr. Burkett, Seven Safe, and American Guard are professional in nature. Mr. Burkett is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. Mr. Burkett's security guard services qualify as a professional service. Seven Safe, through Prolific, supplied Mr. Burkett as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe Services represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### C.  Insuring Agreement Coverage Parts A and B

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The Complaint alleges potential "bodily injury". However, the Complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL policy;, and thus, there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the Complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

### D.  Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

**E. Supplementary Payments**

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or Mr. Armbrister.

**F. Public Policy**

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the wilful act of the insured as provided in Insurance Code section 533.

## Mutual Obligations

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend American Guard under a reservation of rights. But the policy imposes obligations on American Guard as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". See **Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

American Guard elected to appoint the Lorber firm to defend it in the lawsuit. Hiscox consents to that appointment. The Lorber firm must keep Hiscox informed about developments in the case, provide analyses of liability and settlement values, and comply with Hiscox's litigation guidelines.

As noted above, Lexington has an independent duty to defend American Guard. Accordingly, Hiscox will share defense expenses with Lexington on a 50-50 basis, subject to all rights to reimbursement of, contribution for, or the reallocation of those expenses. Accordingly, going forward, the Lorber firm should invoice both Hiscox and Lexington for 50 percent of the fees and costs.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against American Guard and Seven Safe – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

## General Reservation of Rights

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend American Guard in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:     1-800-927-4357 (calling from within California) or
>          1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184033073** on all future correspondence.

The defense of American Guard is being handled under a separate claim, number **184037660.** Any correspondence with regard to defense of American Guard, should continue to go to Velicia Rogers at Velicia.Rogers@hiscox.com.

Sincerely,

Rena Cherick, AIC
Complex Claims Specialist
General Liability Claims
rena.cherick@hiscox.com

cc:    Apple Miranda, Worldwide Sourcing (amiranda@wwsginc.com)
       Mohamed Youssef, Worldwide Sourcing (mohamed@wwsginc.com)
       Lorene Walsh (LWalsh@lorberlaw.com)
       Lester Finnell, Seven Safe (sevensafesv@aol.com)
       Stepfon Smith, Lexington (Stepfon.Smith@AIG.com) Claim 9429028346US

EXHIBIT 5



*Rena Cherick, AIC*
*Hiscox USA*
*5 Concourse Parkway, Suite 2150*
*Atlanta, GA 30328*

*T +1 480-214-8969*
*F +1 678-272-3404*
*E rena.cherick@hiscox.com*

January 17, 2024

**Via email only**

Lester Finnell
Seven Safe Services, inc.
9547 Sophia Ave.
North Hills, CA 91343
sevensafesv@aol.com

Re:    Re:    *Penn, etal v. Kroger Company, et al.*
       San Diego Superior Court Case No.37-2021-00029278-CU-PO-CTL

|  |  |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Claimant:** | **Gwendolyn Penn** |
| **Policy Nos.:** | **UDC-4265713-EO-20 and** |
|  | **UDC-4265713-CGL-20** |
| **Policy Period:** | **September 5, 2020 - September 5, 2021** |
| **Hiscox Claim No.:** | **184033073** |
| **Loss Date:** | **February 12, 2021** |

**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**

Dear Mr. Finnell:

We are writing concerning the defense of Seven Safe Services, Inc. ("Seven Safe") with respect to the lawsuit entitled *Gwendolyn D. Penn, individually and as Successor-In-Interest to Gwendolyn D. Penn, individually and as Successor-In-Interest to Zhadius Penn, Deceased v. Kroger Company dba Ralphs, American Guard Services Inc., Adam T. Burkett, Prolific Protection Group Inc., Lester Finnell dba Seven Safe Services, etal,* filed in San Diego Superior Court Case No. 37-2021-00029278-CU-PO-CTL. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim, and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend Seven Safe under the CGL policy under a full reservation of rights. The Complaint alleges potential "bodily injury" and "personal and advertising

injury" under the insuring agreements in that policy. However, the CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against Seven Safe were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for Seven Safe altogether and to seek reimbursement of defense or indemnity payments made on its behalf.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the second amended complaint (the "Complaint"), on February 12, 2021, Plaintiff's son was shot and killed by a security guard at a Ralphs grocery store located at 101 G Street, San Diego, CA 92101.

The Complaint alleges causes of action of premises liability and general negligence.  Plaintiff alleges that Zhadius was a business invitee of the Store and that the defendants were negligent in the management of the premises and the oversight of the security guard who allegedly lacked the training, temperament, and experience required to be entrusted with firearms.    Other named defendants include American Guard, Prolific Protection, Adam T. Burkett and Lester Finnell dba Seven Safe Services..

Based upon secondary evidence regarding the incident, Ralph's surveillance video shows an altercation between Zhadius Penn and a uniformed on-duty security guard, purportedly Adam Burkett, employed by Prolific Protection, on February 12, 2021 at about 9:26 p.m. at Ralph's number 123 in downtown San Diego. Mr. Penn appears to have physically assaulted the guard before fleeing the premises. Thereafter, the guard chased Mr. Penn, drew his handgun, and while standing in the threshold of the exit door, appears to have shot Mr. Penn and caused him to fall onto the sidewalk outside the store. Witnesses gathered and the San Diego police and fire departments were quickly summoned.

Our investigation revealed that at the time of the incident, Mr. Burkett was performing security guard services at Ralphs on behalf of Prolific Protection, according to a subcontract agreement with Seven Safe. Pursuant to a subcontractor agreement with American Guard, Seven Safe agreed to provide security guard services at various Ralphs locations in Southern California. In that contract, Seven Safe represented that it "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services." Seven Safe also agreed that it would select security officers "with due diligence standards in the security guard industry" and ensure that they meet all applicable state and federal licensing requirements.

Seven Safe tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021.

## Policy Limits

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-20 . The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-20, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

## Professional Liability Policy Provisions and Coverage Analysis

The insuring agreement in the professional liability policy states in pertinent part:

A. INSURING AGREEMENT

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

III. **Exclusions**

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

---

[1] Bolded terms have the same meanings as defined in the policies.

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed in July 2021, and the lawsuit was not reported to Hiscox until November 2022. For that separate reason, there is no coverage for the **Claim** under the 2020 to 2021 professional liability policy.

K. Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physcial injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

### CGL Policy Provisions and Coverage Analysis

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

Coverage Part A of the CGL policy contains the following relevant exclusions:

2. **Exclusions**

   This insurance does not apply to:

   o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

The insuring agreement for Coverage Part B provides in relevant part:

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for ''personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

The CGL policy contains the following Supplementary Payments provisions:

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    **a.** All expenses we incur.

    [¶¶]

    **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

    **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

    **f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable

64

limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

\* \* \*

The CGL policy contains the following conditions:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information; [and]

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

65

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\* \* \*

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

**a.** False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

## CGL Coverage Analysis

### A. Insuring Agreement Coverage Part A

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The complaint alleges potential "bodily injury". However, the complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL Policy, and thus there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

### B. Insuring Agreement Coverage Part B

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

### C.  Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Mr. Armbrister, Seven Safe, and American Guard are professional in nature. Mr. Armbrister is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. Mr. Armbrister's security guard services qualify as a professional service. Seven Safe supplied Mr. Armbrister as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### D.  Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

### E.  Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or Mr. Armbrister.

### F.  Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the wilful act of the insured as provided in Insurance Code section 533.

## Mutual Obligations

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend Seven Safe under a reservation of rights. But the policy imposes obligations on Seven Safe as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

Attorney Ashley Morris, of the firm Litchfield Cavo LLP,  telephone 626-683-5080, 2 North Lake Avenue, Suite 400 Pasadena CA 91101 has recently taken over the defense of Seven Safe in the lawsuit. Please cooperate with Attorney Morris in the defense of the case.

## Advice of Counsel

This letter addresses coverage limitations and exclusions in the Hiscox policies. In light of those issues, Seven Safe may want to consult with an attorney at its own expense to advise it about its rights under the Hiscox policies.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against Seven Safe involving dates of loss within the policy period – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

## General Reservation of Rights

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend Seven Safe in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no

potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:    1-800-927-4357 (calling from within California) or
>          1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184033073.** on all future correspondence.

Sincerely,

Rena Cherick, AIC
Complex Claims Specialist
General Liability Claims
rena.cherick@hiscox.com

cc:    Ashley Morris Esq. (morris@litchfieldcavo.com)

EXHIBIT 6



January 19, 2024

**Via email only**

Neil C. Evans, Esq.
General Counsel
Worldwide Sourcing Group, Inc. and
Affiliated Entities
1125 W. 190th St.
Gardena, CA 90248
legal@wwsginc.com

Re:     ***Vega, et al. v. Kroger Company, et al.***
        Filed in San Bernardino Superior Court Case No. CIVSB2029071

| | |
|---|---|
| **Named Insured:** | **Seven Safe Services, Inc.** |
| **Claimant:** | **Octavio Vega Jr., Talina Salinas, and Aubrey Crystal Vega (a minor)** |
| **Policy Nos.:** | **UDC-4265713-EO-19 and UDC-4265713-CGL-19** |
| **Policy Period:** | **September 5, 2019 - September 5, 2020** |
| **Date of loss:** | **May 17, 2020** |
| **Hiscox Claim No.:** | **184033072** |

<u>**This is a Partial Disclaimer and Reservation of Rights – Please Carefully Review**</u>

Dear Mr. Evans:

We are writing concerning the defense of American Guard Services, Inc. ("American Guard") with respect to the lawsuit entitled *Octavio Vega Jr. et al. v. The Kroger Company et. al.,* filed in San Bernardino Superior Court Case No. CIVSB2029071. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe Services, Inc. ("Seven Safe") as the named insureed: a professional liabilty policy, Policy No. UDC 4265713-EO-19, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-19.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injur**y liabilty. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim; and thus, Hiscox denies coverage under that policy.

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
**jeannine.magid@hiscox.com**
**www.hiscox.com**

72

- Hiscox agrees to defend American Guard as an additional insured under the CGL policy subject to a full reservation of rights, including the right to deny coverage and withdraw from the defense and to seek reimbursement of any or all defense or indemnity payments made on American Guard's behalf.

- The CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against American Guard were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for American Guard altogether.

- Hiscox will share American Guard's defense expenses with its insurer, Lexington Insurance Company ("Lexington"), on a 50-50 basis, subject to all rights of reimbursement, contribution or reallocation. To the extent there is any potential for additional insured coverage under Hiscox's CGL policy, that insurance would cover American Guard only for its vicarious liability because of Seven Safe's acts or omissions.  Hiscox does not insure American Guard for allegations related to its independent wrongdoing. For that risk, American Guard's policy with Lexington is primary.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the second amended complaint (the "Complaint"), on May 17, 2020 at approximately 9:00 p.m., Plaintiff Ocatvio Vega parked his car in the parking lot of the Premises located at 4444 University Parkway in San Bernardino, California.  Planitff Salinas and Plaintiff Aubrey Vega remained in the car whiole Ocatvio entered the Premises. Octavio purchased groceries at the Premises and walked toward the exit doors.  As Octavio was exiting, Defendant Hale called to him and showed him a picture of a man who appeared to look similar to Ocatvio.  Defendant Hale told Ocatvio to put his arms up because he was under arrest.  Octavio told Hale that he was not the man in the picutre but Hale instructed Octavio to remain on the Premises because he was placing Octavio under arrest.  Octavio noticed Hale possesssed a firearm so he became afraid and started to run away.  Hale ran after Octavio but Octavio made it to his car before Hale reached him.  As Octavio drove away with Plaintiffs Salinas and Aubrey in the car, Hale pulled his firearm and sprayed the car with gunshots.  Several shots hit the car that the Plaintiffs occupied and Plaintiffs were injured as a result.

The Complaint alleges causes of action:(1) negligent hiring, supervision, and retention, (2) permises liability, (3) battery, (4) intentional infliction of emotional distress.  Plaintiffs' prayer for relief includes general, and special damages, medical, professional and incidental expenses, loss of earnings, punitive damages, costs of suit, statutory damages, and interest. Other named defendants include 909 Security Management, Inc., 09 Security, American Guard Services, Inc., Seven Safe Services, Inc., Richard Dixon, Zero 9 Security Specialist, Zero 9 Multimedia Entertainment, Inc., and Zero 9 Records.

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

73

American Guard tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2019 to September 5, 2022. By letter dated June 14, 2022, Hiscox agreed to defend American Guard in the lawsuit under a full reservation of rights.

## Policy Limits

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2019, to September 5, 2020, Policy No. UDC-4265713-EO-19 . The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-19, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

## Professional Liability Policy Provisions and Coverage Analysis

The insuring agreement in the professional liability policy states in pertinent part:

A.  INSURING AGREEMENT

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Techonology Services** or Information Technology (IT) consultling services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liabilty policy on that basis.[2]

Coverage for the claims is also excluded. Exlusion K in the professional liability policy provides:

---

[1] Bolded terms have the same meanings as defined in the policies.

[2] The professional liability policy also requires that a **Claim** be first made and reported during the policy period. In this case, the lawsuit was filed in April 2021, and the lawsuit was not reported to Hiscox until November 2021. For that separate reason, there is no coverage for the **Claim** under the 2019 to 2020 professional liability policy.

Hiscox
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

74

### III. Exclusions

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

K. Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physcial injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

### **CGL Policy Provisions and Coverage Analysis**

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

Coverage Part A of the CGL policy contains the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

\* \* \*

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

The CGL policy contains the following Supplementary Payments provisions:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

  [¶¶]

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit",

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**    76

including actual loss of earnings up to $250 a day because of time off work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

**f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

\* \* \*

The CGL policy contains the following conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information; [and]

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

Hiscox
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

T +1 480 214 8946
F +1 678 731 9501
jeannine.magid@hiscox.com
www.hiscox.com    77

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.    Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

The CGL policy contains the following definitions, among others:

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**    78

**SECTION V – DEFINITIONS**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

    **a.** False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

* * *

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

79

The CGL policy contains an additional insured endorsement, Additional Insured – Automatic Status, which provides:

## ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

Additional Insured – Automatic Status, Form No. CGL E5421 CW (02/14).

### **CGL Coverage Analysis**

#### **A. Additional Insured Status**

The CGL policy covers "insureds". By endorsement, Section II – Who Is An Insured was modified to include as an additional insured any "organization(s) for whom [Seven Safe is] performing operations . . . when [Seven Safe] and such . . . organization(s) have agreed in writing in a contract or agreement that such . . . organization(s) be added as an additional insured." Additional Insured – Automatic Status Endorsement, Form No. CGL E5421 CW (02/14). There is a written contract between Seven Safe and American Guard requiring American Guard to be included as an additional insured on Seven Safe's CGL policy; and thus, the additional insured coverage potentially applies.

However, an organization is an additional insured under the CGL policy "only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by [Seven Safe's] acts or omissions or the acts or omissions of those acting on [its] behalf . . . [i]n the performance of [Seven Safe's] ongoing operations." Id. Thus, Hiscox's policy would insure American Guard only for its vicarious liability for damages caused by Seven Safe's acts or omissions. Hiscox's additional insured coverage does not cover American Guard's independent negligence. For that risk, American

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**    80

Guard's own insurance is primary, meaning its insurer, Lexington, has an independent duty to defend.

### B. Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Mr. Hale, Seven Safe, and American Guard are professional in nature. Mr. Hale is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. Mr. Hale's security guard services qualify as a professional service. Seven Safe supplied Mr. Hale as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralphs. In that contract, Seven Safe Services represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### C. Insuring Agreement Coverage Parts A and B

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The Complaint alleges potential "bodily injury". However, the Complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL policy, and thus, there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." Hiscox reserves all rights under the insuring agreement in Coverage Part B, including the

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

81

right to deny coverage, in whole or in part, on the ground that the lawsuit does not involve potential "personal and advertising injury."

### D. Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

### E. Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or Mr. Hale.

### F. Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the willful act of the insured as provided in Insurance Code section 533.

<u>**Mutual Obligations**</u>

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend American Guard under a reservation of rights. But the policy imposes obligations on American Guard as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

American Guard has elected to appoint Marc Feldman, Esq., of the firm Koletsky, Mancini, Feldman & Morrow, LLP to defend it in the lawsuit. Hiscox consents to that appointment. The Koletsky firm must keep Hiscox informed about developments in the case, provide analyses of liability and settlement values, and comply with Hiscox's litigation guidelines.

As noted above, Lexington has an independent duty to defend American Guard. Accordingly, Hiscox will share defense expenses with Lexington on a 50-50 basis, subject to all rights to reimbursement of, contribution for, or the reallocation of those expenses.

---

[4] In its prior reservations of rights, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**

82

Accordingly, going forward, the Koletsky firm should invoice both Hiscox and Lexington for 50 percent of the fees and costs.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against American Guard and Seven Safe – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

## General Reservation of Rights

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend American Guard in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:     1-800-927-4357 (calling from within California) or
>          1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184033072** on all future correspondence.

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**    83

The defense of American Guard is being handled under a separate claim, number **184040049.** Any correspondence with regard to defense of American Guard, should continue to go to Dayna Kufner at dayna.kufner@hiscox.com.

Sincerely,

Jeannine Magid
Complex Claims Specialist
General Liability Claims
jeannine.magid@hiscox.com


cc:     Apple Miranda, Worldwide Sourcing (amiranda@wwsginc.com)
        Mohamed Youssef, Worldwide Sourcing (mohamed@wwsginc.com)
        AJ Jolet, Worldwide Sourcing (ajolet@wwsginc.com)
        Marc Feldman, Esq. Koletsky (msf@kmfm.com)
        Brian Costa, Lexington (brian.costa@AIG.com) Claim# C130036171-0001-01
        Lester Finnell, Seven Safe (sevensafesv@aol.com)
        John Fu, Esq. (lawofficesofjohnfu@gmail.com)

**Hiscox**
5 Concourse Pky NE, Suite 2150
Atlanta, GA 30328

**T** +1 480 214 8946
**F** +1 678 731 9501
jeannine.magid@hiscox.com
**www.hiscox.com**          84

EXHIBIT 7

STEVEN B. BITTER
SBITTER@GRSM.COM
DIRECT FAX: (619) 595-5765



ATTORNEYS AT LAW
101 W. BROADWAY, SUITE 2000
SAN DIEGO, CA 92101
WWW.GRSM.COM

June 14, 2022

**VIA EMAIL**

John Fu, Esq.                          Mohamed A. Youssef, Esq.
Law Offices of John K. Fu             General Counsel
1505 N. San Fernando Blvd., A         American Guard Services, Inc. and associated
Burbank, CA 91501                     entities
Email: lawofficesofjohnfu@gmail.com   1125 W. 190th Street
                                       Gardenia, CA 90248
                                       Email: mohamed@wwsginc.com

| | | |
|---|---|---|
| Re: | Company: | Hiscox Insurance Company, Inc. |
| | Policy Nos.: | UDC-4265713-EO-19, UDC-4265713-CGL-19, UDC-4265713-EO-20 and UDC-4265713-CGL-20 |
| | Insured: | Seven Safe Services |
| | Purported AI: | American Guard Services, Inc. |
| | Claim No.: | 184033072 |
| | Date of Loss: | May 17, 2020 |
| | Lawsuit: | *Vega, et al. v. The Kroger Company dba Ralph's Supermarket* San Bernardino County Superior Court, Case No. CIVSB2029071 |

Dear Mr. Fu and Mr. Youssef:

Gordon Rees Scully Mansukhani, LLP is insurance coverage counsel for Hiscox Insurance Company Inc. ("Hiscox") in connection with the above–referenced lawsuit ("Lawsuit") which involves an May 17, 2020 incident at a Ralph's Grocery Store ("Store") located in San Bernardino, California ("Lawsuit" or "Claim"). Seven Safe Services ("Seven Safe") is the named insured under Hiscox policy numbers UDC-4265713-EO-19, UDC-4265713-CGL-19, UDC-4265713-EO-20 and UDC-4265713-CGL-20 (collectively as the "Policies"). Seven Safe has requested coverage for and on behalf of American Guard Services, Inc. ("AGS") in connection with the Lawsuit pursuant to a subcontract agreement between Seven Safe and AGS. The purpose of this correspondence is to provide you with Hiscox's coverage position and reservation of rights for the Lawsuit. We direct this correspondence to you based upon our understanding that you are counsel for Seven Safe and AGS, respectively.

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 2

The Lawsuit involves a shooting incident which occurred on May 17, 2020 at the Store. Plaintiffs in the Lawsuit contend that a security officer fired several rounds into their vehicle striking the occupants of the vehicle. Plaintiffs filed a lawsuit against The Kroger Company dba Ralph's Supermarket. AGS has been added as a party to the Lawsuit by way of a cross-complaint. AGS seeks defense coverage for the Lawsuit under the Policies. Seven Safe has not been named as a defendant.

Based upon the information presently available, Hiscox will agree to afford a defense to AGS against the Lawsuit, acknowledging its potential status as an additional insured under policy number UDC-4265713-CGL-19, only. Hiscox will be in touch with AGS shortly with the contact information for selected defense counsel.

Hiscox's defense against the Lawsuit is subject to a reservation of rights. There are significant coverage issues presented by the Claim, so Hiscox reserves its right to withdraw from the defense and seek reimbursement of any and all defense fees and costs incurred for uncovered claims, and to deny any duty to indemnify AGS in connection with the Lawsuit. Hiscox also reserves the right to file an action for declaratory relief to seek an adjudication regarding its rights and duties under the Policies.

Details regarding Hiscox's coverage position and reservation of rights follow below. Please note that this correspondence should be read in conjunction with the Policies and nothing stated herein alters the terms, conditions or exclusions in the Policies.

## I.   <u>BACKGROUND</u>

Plaintiffs in the Lawsuit are Octavio Vega Jr., Talina Salinis, and Aubrey Chrystal Vega, a minor, by and through her guardian ad litem Talina Salinis. The defendant referenced in the original and the first amended complaint filed on March 5, 2021 is the Kroger Company dba Ralph's Supermarket. AGS has been added as a party to the Lawsuit by way of a cross-complaint.

In the complaint, plaintiffs allege that on May 17, 2020 at around 9:00 p.m., Octavio Vega drove to a Ralph's supermarket located at 4624 N. Pershing Avenue in San Bernardino to buy groceries (Complaint ¶3 and ¶10.) With him in his car were his girlfriend, plaintiff Salinis, and their eight year old daughter, plaintiff Aubrey Vega. (*Id.*)

Vega alleges that upon arriving at the Store, he parked his car in the parking lot. While Salinis and Aubrey Vega remained in the car, Vega entered the Store, selected his groceries, checked out, paid for the groceries with cash, obtained a receipt, and walked towards the premises' exit doors. (Complaint ¶11.)

Plaintiffs allege that as Mr. Vega was exiting the Store, a security guard called to him and showed him a picture of a man. (Complaint ¶12.) The man appeared to look similar to Mr. Vega. (*Id.*) The security guard told Mr. Vega to put his arms up because he was under arrest. (*Id.*) Mr. Vega declared that he was not the man in the picture but the security guard instructed Vega to remain on the premises because he was placing him under arrest. (*Id.*)

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 3

Mr. Vega contends that he noticed that the security guard possessed a firearm, that he was afraid, and he started to run away. (Complaint ¶13.) The security guard chased Mr. Vega but he made it to his car before the security guard reached him. (*Id.*)

Mr. Vega alleges that as he drove away, with Salinis and Aubrey Vega in the car, the security guard pulled his firearm and "sprayed" the car with gunshots. (Complaint ¶14.) Several shots hit the car and all three plaintiffs were shot. (*Id.*)

Mr. Vega alleges that he was struck in his upper chest and his left shoulder by one or more bullets. (Complaint ¶14.) He suffered gunshot wounds and fractures to his humerus, scapula, and spine. (*Id.*) Mr. Vega was hospitalized due to his injuries and had to go undergo reconstructive surgery. (*Id.*) Plaintiff Salinis was grazed on her upper back by bullets and injured her back. (*Id.*) The bullet also grazed the right shoulder of plaintiff Aubrey Vega.

The Lawsuit includes causes of action for negligent hiring, supervision and retention, premises liability, battery, and intentional infliction of emotional distress. Plaintiffs' prayer for relief includes general and special damages, medical, professional and incidental expenses, loss of earnings, punitive damages, costs of suit, statutory damages and interest.

AGS was added as a cross-defendant in the Lawsuit in a cross-complaint filed by Ralph's Grocery Company dba Ralph's. The cross-complaint seeks implied indemnity, equitable indemnity, contribution, express indemnity, breach of contract and declaratory relief.

On May 28, 2021, AGS wrote to Seven Safe and advised it of the incident. AGS requested that Seven Safe acknowledge and accept AGS' tender for indemnity and defense should this matter escalate. On June 2, 2021, Seven Safe acknowledged AGS' tender.

AGS seeks coverage pursuant to a "Subcontractor Services Agreement" ("Agreement"). The Agreement describes AGS as the general contractor and Seven Safe as the subcontractor. It was executed by the parties on January 1, 2020. Exhibit A describes the "Scope Of Services" as follows:

> Subcontractor shall provide and furnish, at its own cost and expense, all labor, supplies, equipment, services, supervision, insurance, administration, and all other items necessary or required for the proper and complete performance and acceptance of the following portions of the work, the Services.

> Subcontractor will provide off duty security officers at various locations, including but not limited to the following service locations… .

The service locations are identified to include "Ralph's locations in Southern California" at rates ranging from $40-$45 per hour.

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 4

The Agreement includes an indemnification provision in Section 2.1.8 which provides:

> **Indemnity and Protection of the Project.**
>
> Subcontractor shall defend, indemnify and hold General Contractor, all Additional Insureds (as that term is herein defined), and agents and employees of any of them, harmless from and against any and all claims, damages, losses, liabilities and expenses, including without limitation attorneys' fees, arising out of or resulting from Subcontractor's direct performance of the Services or Subcontractor's direct failure to comply with the terms or provisions of the Agreement, to the extent, in whole or in part by any willful or negligent acts or omissions of Subcontractor or anyone for whose acts it may be solely liable. Subcontractor should take all necessary precautions to properly protect the Project and the Site and work of General Contractor or any other persons on the Site, from damages caused by the direct actions of Subcontractor. Subcontractor shall be liable for any loss of, or damage to, any such property or any injuries to any persons that are caused by the action or neglect of Subcontractor.

The Agreement further specifies in Section 2.5.6 as follows:

> **Limitation of General Contractor's Liability.**
>
> Notwithstanding any other provision of this Agreement to the contrary, the liability of General Contractor to Subcontractor under this Agreement (whether in contract or in tort) is limited solely to amounts owed for Services properly performed. It is intended by the parties to the this Agreement that General Contractor's obligations and Subcontractor's services in connection with the Project shall not subject General Contractor's individual shareholders, employees, officers or directors to any personal legal exposure for the risks associated with this Project and/or the Security Guard Services contract entered into by the General Contractor.

"Services" are defined to mean "the off duty police officer security guard services." "Project" is defined to mean "the off duty police officer security guard services to be provided at various locations… ." The term "Site" is defined to mean "the location of the Project and any areas therein or adjacent thereto where the Services… are to be performed and/or subcontractor is permitted to store or stage the Services and/or any materials, equipment or tools."

The Agreement includes an insurance provision which requires that the subcontractor "carry and maintain policies of insurance for… commercial general liability (including completed

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 5

operations) … with companies authorized to do business in the State… ."  It further provides that subcontractor shall submit copies of the policies to the general contractor prior to the commencement of services, that the policies contain a waiver of subrogation against the general contractor and owner, that the general contractor be named as an additional insured on the policies, and that the liability insurance be on an "occurrence" form covering the full period when the services are required under the Agreement.  The liability policies maintained by subcontractor shall name general contractor, project owner, the constituent partners of the general contractor, any owners associations having an interest in the property where the project is located, and their respective partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives, as their interest may appear, as additional named insureds.

Exhibit B titled "Required Insurance Coverage For Subcontractor" specifies the additional wording that is required under the Agreement and that the limits for commercial general liability insurance be $3 million per occurrence.

On September 1, 2021, Mr. Fu authored a letter to Richard Dixon of Zero 9 Security Specialists.  In this letter Mr. Fu contends that Seven Safe has a contractual relationship with Zero 9 under which Zero 9 agreed to defend any lawsuit arising out of Zero 9's security work, and that Seven Safe is tendering its defense to Zero 9.

First notice of the Claim was provided to Hiscox on November 19, 2021.  Since then, there has been no further communications indicating that  Seven Safe has been added as parties to the Lawsuit.

## II.    THE POLICY

Relevant to the Claim, Hiscox issued commercial general liability coverage to Seven Safe under policy numbers UDC-4265713-CGL-19 and UDC-4265713-CGL-20 (the "CGL Policies") and professional liability coverage under policy numbers UDC-4265713-EO-19 and UDC-426573-EO-20 (the "PL Policies") in force for annual policy periods from September 5, 2019 to September 5, 2021.  Commercial general liability limits are $3 million per occurrence and in the aggregate.  Professional liability limits are $1 million per claim and in the aggregate.  The terms, conditions and exclusions relevant to the commercial general liability coverage for the Claim under the Policies are set forth in Appendix A.  The terms, conditions and exclusions relevant to the professional liability coverage available under the Policies as relevant to the Claim are set forth in Appendix B.

## III.    COVERAGE POSITION AND RESERVATION OF RIGHTS[1]

Based upon the information available, Hiscox sets forth below the known or likely policy provisions that may limit or otherwise bar coverage for the Claim.  This list is not intended to be exhaustive and Hiscox reserves the right to amend, supplement or modify the basis for the

---

[1] In the event Seven Safe is added as a party to the Lawsuit, Hiscox will issue a subsequent coverage position letter addressing its potential obligations (if any) to Seven Safe.

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 6

company's coverage position in this matter at any time based upon new or additional information received by Hiscox regarding the Claim, and to rely upon other terms, conditions, exclusions and other provisions in the Policies to limit or deny coverage for the Claim. This coverage position letter should be read in conjunction with the Policies and nothing stated herein alters language, terms and/or conditions of the Policies.

A.    <u>**Commercial General Liability Coverage**</u>

Commercial general liability coverage is set forth on Commercial General Liability Coverage Form CG 00 01 12 07. Insuring agreement 1.(a) provides coverage for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" if the "bodily injury" or "property damage" occurs during the policy period and is caused by an "occurrence." Below we discuss whether the insuring agreement requirements are satisfied by the Claim.

As a threshold matter, coverage is only available for an insured. Seven Safe is a named insured and AGS is not. The CGL Policies include an additional insured endorsement, form CGL E5421 CW (02/14), which confers additional insured status on any person or organization for whom Seven Safe is performing operations when Seven Safe and such persons or organizations have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured on the policy. Such persons or organizations have additional insured status only with respect to liability for bodily injury, property damage or personal and advertising injury caused, in whole or in part, by Seven Safe's acts or omissions in the performance of its ongoing operations. Hiscox acknowledges the potential for additional insured status for AGS, but reserves its rights based upon the limitations in the additional insured endorsement in the CGL Policies.

There are no allegations of "property damage" in the Lawsuit. Property damage is defined to include physical injury to or loss of use of property. Plaintiffs make no such allegations in the complaint.

The CGL Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Plaintiffs allege that they sustained physical injury. Accordingly, the allegations in the Lawsuit may implicate the "bodily injury" coverage available under the CGL Policies.

The CGL Policies require that any bodily injury take place during the policy period. Here, only policy no. UDC-4265713-CGL-19 is potentially implicated by the Claim. That policy was in force on the date of the incident. Policy no. UDC-4265713-CGL-20 was not in force at the time of the incident and is therefore not implicated by the Claim.

The CGL Policies include a contractual liability exclusion which precludes coverage for "bodily injury" and "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. There is an exception for liability or damages that the insured would have in the absence of a contract or agreement and for liability assumed in a contract or agreement that is an "insured contract." Here, the Agreement between

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 7

AGS and Seven Safe appears to satisfy the "insured contract" exception to the breach of contract exclusion. Nevertheless, Hiscox reserves all rights based upon this exclusion.

Insuring agreement B.1.a provides coverage for those sums that the insured becomes legally obligated to pay as damages because of a "personal or advertising injury". There are no allegations in the Lawsuit that implicate the definition of "personal or advertising injury" in the CGL Policies.

Even assuming that the allegations in the Lawsuit potentially implicate the CGL Policies' "personal and advertising injury" coverage, such coverage is subject to exclusions that are relevant to the Lawsuit. For example, personal injury coverage under the CGL Policies is subject to an exclusion for contractual liability. Specifically, the contractual liability exclusion precludes coverage for personal advertising injury for which the insured assumed liability in a contract or agreement. There is an exception to this exclusion for liability or damages that the insured would have in the absence of the contract or agreement. Hiscox reserves its rights based upon the contractual liability exclusion.

Personal and advertising injury coverage is subject to a breach of contract exclusion which precludes coverage for personal and advertising injury arising out of breach of contract. Hiscox reserves its rights based upon the breach of contract exclusion.

The CGL Policies include a professional services exclusion by way of endorsement CG E5407 CW (03/10). Seven Safe and/or AGS were allegedly providing armed security guard services which are at issue in the Lawsuit. Such services are professional in nature. Hiscox reserves its rights based upon this professional services exclusion.

The plaintiffs also seek recovery of punitive damages. Hiscox denies any obligation to indemnify AGS for any award of punitive damages as such damages are uninsurable as a matter of law in California pursuant to California Insurance Code Section 533.

The conditions section of the CGL Policies include a representation section in which Seven Safe agreed that its statements and the declarations are accurate and complete, that those statements are based upon representations that Seven Safe made to Hiscox, and that Hiscox has issued the CGL Policies in reliance upon Seven Safe's representations. As explained below, significant questions exist regarding the accuracy of the information that Seven Safe provided to Hiscox in procuring the Policies, so Hiscox reserves its right to limit or deny coverage based upon Seven Safe's violation of the representations conditions in the CGL Policies.

B.    **Professional Liability Coverage**

The Policies afford professional liability coverage pursuant to Professional Liability – US Direct Errors and Omissions Form DPL P001 CW (05/13). The insuring agreement provides that Hiscox will pay "damages" on "your" behalf for any "claim" that falls within the insuring agreement and within all of the terms and conditions outlined in the PL Policies. Covered claims are for "Your Wrongful Acts" in providing or failure to provide "professional services."

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 8

Specifically, the insuring agreement provides that:

> We shall pay on Your behalf Damages and Claim Expenses in excess of the Deductible resulting from any covered Claim that is first made against You during the Policy Period and reported to Us pursuant to the terms of the Policy for Wrongful Acts committed on or after the Retroactive Date.

Pursuant to endorsement number 1, Technical Services/IT Consulting Services Endorsement (Software Copyright Infringement), "Professional Services" are defined to mean "technology services" or information technology consulting services performed for others for compensation. The Policy further defines "Technology Services" as:

> TS-A. **Technology Services** means the following:
>
> 1. application service provider (ASP) services;
> 2. data processing, analysis, and database design services;
> 3. IT Project Management services;
> 4. internet service provider (ISP) services;
> 5. internet hosting services;
> 6. network security design and consulting services;
> 7. software installation, customization, and support;
> 8. software programming and development;
> 9. systems/hardware/network installation, maintenance, and support;
> 10. systems/network advice, design, and integration;
> 11. technology products training;
> 12. value-added resale of hardware; and
> 13. website design.

"Wrongful Act" is defined as "any actual or alleged breach of duty, negligent act, error or omission or personal injury" committed by you in the performance of "your professional services."

Here, the "professional services" designated in the PL Policies are "technology services." The services that Seven Safe provided to AGS do not implicate the PL Policies' definition of professional services. Instead, Seven Safe was providing armed security guard services to AGS pursuant to the Agreement. Therefore, Hiscox denies professional liability coverage under the PL Policies because the Claim is not within the scope of the PL Policies' insuring agreement.

Professional liability coverage is only available for claims that are made and reported during the policy period. Here, the Claim was made and reported after the expiration of policy no. UDC-4265713-EO-19. Therefore, this policy is not potentially implicated by the Claim.

Even assuming that coverage is potentially implicated under the professional liability insurance coverage part, there are exclusions which may apply to preclude coverage and upon which Hiscox reserves its rights. These include exclusions for intentional acts or omissions (Exclusion III.A.), for a claim brought by or on behalf of one insured against another insured

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 9

(III.F.), for actual or alleged liability of others that Seven Safe assumes under any contract or agreement (III.J.), for claims based upon or arising out of any actual or alleged bodily injury or property damage (III.K.), and for actual or alleged breach of contract. (III.O.) The PL Policies also exclude coverage for punitive and exemplary damages in endorsement number 2. Furthermore, punitive damages are not insurable as a matter of law in California pursuant to Insurance Code Section 533. Hiscox denies coverage for any award of punitive damages.

The PL Policies include in Section V titled "Other Matters Affecting Coverage", a representation section which provides:

### H. REPRESENTATIONS

As a condition precedent of **Our** obligations under this Policy, **You** represent that:

1. the statements and representations made by **You** in the **Application** are true and are the basis of the Policy and are to be considered as incorporated into and constituting a part of this Policy;

2. the statements and representations made by **You** in the **Application** shall be deemed material to the acceptance of the risk assumed by **Us** under the Policy;

3. this Policy is issued in reliance upon the truth of the statements and representations made by **You** in the **Application**; and

4. in the event the **Application** contains misrepresentations which materially affect the acceptance of the risk assumed by **Us** under this Policy, this Policy shall be *void ab initio*. [original emphasis.]

…

Seven Safe warranted that it was a technology consulting service. It is not, or at least that is not what its purported liability (and that of AGS) is based upon in the Lawsuit. Furthermore, the Agreement under which AGS seeks indemnification coverage is not related to technology services. It is Hiscox's position that Seven Safe has breached its duties to Hiscox's as specified in the representations and warranty section of the PL Policies, so Hiscox reserves all rights with regard to the impact of this misrepresentation on coverage under the PL Policies.

### C.    General Reservations

In summary, it is Hiscox's position that there is no potential for professional liability coverage for the Claim under the Policies. Hiscox acknowledges the potential for commercial general liability coverage and AGS's status as an additional insured under the CGL Policy in force at the time of the incident, UDC-4265713-CGL-19. Therefore, Hiscox agrees to afford AGS with the defense against the Lawsuit under this policy subject to a reservation of rights as detailed herein.

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 10

AGS has duties to cooperate with its defense counsel and with Hiscox in all matters related to the Claim. This includes providing regular reporting on all significant developments in connection with the Lawsuit and settlement opportunities. Please instruct your defense counsel to cooperate with Hiscox in all matters and regularly and routinely report on the status of the Lawsuit.

Hiscox's reservation of rights includes the right to later deny any further defense obligations to or on behalf of AGS, withdraw from AGS's defense, and to seek reimbursement of any defense fees and costs incurred for non-covered claims. Hiscox also reserves the right to deny any obligation to indemnify AGS, which includes funding any settlement or judgment on its behalf. Hiscock understands that coverage may be available to Seven Safe and also potentially to AGS under contractual indemnification provisions and/or insurance policies issued to Zero 9, a subcontractor who apparently employed the armed guard providing security at the Store who was involved in the shooting of the plaintiffs. Zero 9 contracted with Seven Safe under the terms of which Zero 9 has contractual and indemnity obligations to or least on behalf of Seven Safe if not AGS. Seven Safe and AGS should take all reasonable steps available to them to tender and secure coverage from Zero 9 and from its insurer. Please copy us on all tender communications and responses thereto. Hiscox reserves all rights in contribution and subrogation from Zero 9 and its insurer.

Hiscox's discussion of some, but not all, of the terms, exclusions and conditions contained in the Policies does not mean that Hiscox is waiving any of the terms, exclusions and conditions in the Policies that might apply.  None of the acts of Hiscox's agents, attorneys or employees should be construed as a waiver or estoppel against Hiscox.

**If you do not agree with this decision, you may request to have the matter reviewed by the Department of Insurance.  The Department of Insurance can be contacted at: California Department of Insurance; Claims Service Bureau; 300 South Springs Street, 11th Floor; Los Angeles, CA 90013; Phone No. (800) 927-4357.**

Please contact me or Jeannine Magid if you have questions regarding Hiscox's coverage position.

Best regards,

GORDON REES SCULLY MANSUKHANI, LLP

Steven B. Bitter

John Fu, Esq.
Mohamed A. Youssef, Esq.
Re: *Vega, et al. v. The Kroger Company dba Ralph's Supermarket*
June 14, 2022
Page 11


cc:    Jeannine Magid
       jeannine.magid@hiscox.com

       Lester Finnell
       sevensafesv@aol.com

# APPENDIX A

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

…

## SECTION I — COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle an claim or "suit" that may result. But:

…

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

…

    **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

. . .

    **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** That the insured would have in the absence of the contract or agreement; or

        **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

A-1

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured be-comes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

…

**2. Exclusions**

This insurance does not apply to:

…

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

…

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

…

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

…

**SECTION V – DEFINITIONS**

…

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

…

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Other relevant term, conditions and exclusions added by endorsement include:

…

**EXCLUSION – PROFESSIONAL SERVICES**

**CGL E5407 CW (03/10)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions under Section I —COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** and **COVERAGE B —PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

…

## RIGHT AND DUTY TO SELECT DEFENSE COUNSEL

### CGL E5409 CW (03/10)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In regard to any covered "suit" seeking damages under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY or COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, our right and duty to defend shall include the right to select defense counsel.

…

## ADDITIONAL INSURED – AUTOMATIC STATUS

### CGL E5421 CW (02/14)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II — Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

   A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

## <u>APPENDIX B</u>

**I.  INSURING AGREEMENT, DEFENSE AND SETTLEMENT**

### A.  **INSURING AGREEMENT**

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the Policy for **Wrongful Acts** committed on or after the **Retroactive Date**.

**We** shall also pay on **Your** behalf all **Supplemental Payments** in connection with any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the Policy for **Wrongful Acts** committed on or after the **Retroactive Date**. No Deductible shall apply to **Supplemental Payments**.

### B.  **DEFENSE**

1.  **We** shall have the right and the duty to defend any covered **Claim**, even if such **Claim** is groundless, false or fraudulent.

2.  **We** shall have the right to appoint defense counsel upon being notified of such **Claim**.

3.  Notwithstanding paragraph 2., **We** shall have no obligation to pay **Claim Expenses** until **You** have satisfied the applicable Deductible.

4.  **Our** duty to defend shall terminate upon the exhaustion of the Limit of Liability as set forth in Item 3. of the Declarations.

### C.  **SETTLEMENT**

1.  **We** shall have the right to solicit and negotiate settlement of any **Claim**.

2.  **We** shall not, however, enter into a settlement without **Your** prior consent, which consent shall not be unreasonably withheld.

3.  If **You** shall refuse to consent to any settlement recommended by **Us**, **Our** liability for such **Claim** shall not exceed the amount for which such **Claim** could have been settled plus **Claim Expenses** incurred up to the date of such refusal.

…

**III. EXCLUSIONS**

This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:

…

J.  based upon or arising out of any actual or alleged liability of others that You assume under any contract or agreement unless such liability would have attached in the absence of such contract or agreement.

K.  based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

…

O.  based upon or arising out of any actual or alleged breach of contract or breach of any implied or express warranty or guarantee; provided, however, this Exclusion shall not apply to:

    1.  any obligation you have to perform your **Professional Services** with reasonable skill or care; or

    2.  any liability **You** would have had in absence of such contract, warranty or guarantee.

…

## V.  OTHER MATTERS AFFECTING COVERAGE

…

### H.  REPRESENTATIONS

As a condition precedent of **Our** obligations under this Policy, **You** represent that:

    1.  the statements and representations made by **You** in the **Application** are true and are the basis of the Policy and are to be considered as incorporated into and constituting a part of this Policy;

    2.  the statements and representations made by **You** in the **Application** shall be deemed material to the acceptance of the risk assumed by **Us** under the Policy;

    3.  this Policy is issued in reliance upon the truth of the statements and representations made by **You** in the **Application**; and

    4.  in the event the **Application** contains misrepresentations which materially affect the acceptance of the risk assumed by **Us** under this Policy, this Policy shall be *void ab initio*.

…

## VI. DEFINITIONS

A.  **Application** means the signed application for the Policy, whether submitted on-line, over the phone or on paper, including any attachments and other materials or statements submitted in conjunction therewith. If this Policy is a renewal or replacement of a previous policy or policies issued by **Us**, **Application** shall also include all signed applications and other materials that were submitted therewith and attached thereto.

B.  **Bodily Injury** means physical injury to or sickness, disease or death of a person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by a person.

C.  **Claim** means any written demand for **Damages** or for non-monetary relief.

D.  **Claim Expenses** means the following that are incurred by **Us** or by **You** with **Our** prior written consent:

1. all reasonable and necessary fees, costs and expenses (including the fees of attorneys and experts) incurred in the investigation, defense and appeal of a **Claim**; and

2. premiums on appeal bonds, attachment bonds or similar bond. Provided, however, **We** shall have no obligation to apply for or furnish any such bonds.

**Claim Expenses** shall not mean and **We** shall not be obligated to pay:

1. salaries, wages or expenses other than **Supplemental Payments**; or

2. the defense of any criminal investigation, criminal grand jury proceeding, or criminal action.

E. **Damages** means a monetary judgment or monetary award that **You** are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by **Us** with **Your** consent.

**Damages** shall not mean and **We** shall not be obligated to pay:

1. fines, penalties, taxes, sanctions levied against **You**;

2. any punitive or exemplary damages or that portion of any multiplied damages award which exceeds the damage award so multiplied, provided, however, that, if such damages are otherwise insurable under applicable law and regulation, **We** will pay an award of punitive or exemplary damages in excess of the Deductible and up to a maximum sum of $250,000. This limit shall be a part of and not in addition to the Limit of Liability set forth in Items 3. of the Declarations;

3. the return, reduction or restitution of **Your** fees, commissions, profits, or charges for goods provided or services rendered, including any over-charges or cost over-runs;

4. liquidated damages; or

5. **Your** cost of complying with injunctive relief.

…

L. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one of more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises;

4. slander, libel, defamation or disparagement of goods, products or services; or

5. oral or written publication of material in connection with **Your** advertising that violates a person's right of privacy.

M. **Policy Period** means the period of time set forth in Item 6. of the Declarations.

…

O. **Professional Services** means only those services specified in Endorsement to this Policy as performed by or on behalf of an **Organization** for others for a fee or other compensation.

P. **Property Damage** means physical loss of or physical damage to or destruction of any tangible property, including the loss of use thereof. For purposes of this definition, "tangible property" shall not include electronic data.

Q. **Retroactive Date** means the date set forth in Item 7. of the Declarations.

…

U. **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**.

…

## Endorsement 1

NAMED INSURED: SEVEN SAFE SERVICES

## E5036.2 Technology Services/IT Consulting Services Endorsement (Software Copyright Infringement)

In consideration of the premium charged, it is understood and agreed that the Policy is amended as follows:

1. In Clause VI. **DEFINITIONS**, paragraph O., "**Professional Services**," is amended to read as follows:

   o **Professional Services** means **Technology Services** or Information Technology (IT) consulting services performed for others for compensation.

2. Clause VI. **DEFINITIONS** is amended to include the following at the end thereof:

   TS-A. **Technology Services** means the following:

   1. application service provider (ASP) services;
   2. data processing, analysis, and database design services;
   3. IT Project Management services;
   4. internet service provider (ISP) services;
   5. internet hosting services;
   6. network security design and consulting services;
   7. software installation, customization, and support;
   8. software programming and development;
   9. systems/hardware/network installation, maintenance, and support;
   10. systems/network advice, design, and integration;
   11. technology products training;
   12. value-added resale of hardware; and
   13. website design.

   TS-B. **Software Copyright Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright of source code or other software code.

TS-C.   **Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, or slogan.

3.   In Clause VI **DEFINITIONS**, paragraph C., "**Claim**," is amended to include the following at the end thereof:

**Claim** will also mean **Software Copyright Infringement Claim** and **Infringement Claim**.

4.   In Clause III. **EXCLUSIONS**, exclusion M. is deleted in its entirety and replaced with the following:

M. based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan, or patent, or theft of trade secret; provided, however, this exclusion will not apply to **Software Copyright Infringement Claims** and **Infringement Claims**.

5.   Notwithstanding anything in the Policy to the contrary, all **Software Copyright Infringement Claims** and Infringement Claims will be subject to a combined sublimit of liability of $ 200,000, which will be part of, and not in addition to, any applicable Limit of Liability.

6.   Clause III. **EXCLUSIONS** is amended to include the following at the end thereof:

This Policy does not apply to and We will have no obligation to pay any Damages, Claim Expenses, or Supplemental Payments for any Claim:

**<u>Endorsement 2</u>**

NAMED INSURED:  SEVEN SAFE SERVICES

**<u>E5102.1 California Amendatory Endorsement</u>**

…

2.   Section VII. **DEFINITIONS**, Paragraph E **Damages**, is modified to the extent necessary to provide the following:

Punitive and exemplary damages shall not be insurable in cases where California law governs the **Claim**.

…

**<u>E5424.1 Blanket Additional Insured Endorsement (PL)</u>**

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed that the Professional Liability — US Direct Errors and Omissions Insurance policy is amended as follows:

1.   In Clause VI. **DEFINITIONS**, paragraph V., "'**You**' or '**Your**'," is amended to include the following at the end thereof:

**You** or **Your** shall also include any **Additional Insured** but only for the **Wrongful Acts** of those contemplated in paragraphs 1., 2. or 3. of the definition of "'**You**' or '**Your**'":

2.  The following definition is added to Clause VI. **DEFINITIONS**:

    Al-A.  **Additional Insured** means any person(s) or organization(s) with whom **You** have agreed in a written contract or agreement to add them as an additional insured to a policy providing the type of coverage afforded by this Policy, provided the contract or agreement:

    1.  is currently in effect or becomes effective during the Policy Period; and
    2.  was executed before the Professional Services from which the Claim arises were performed.

3.  In Clause III. **EXCLUSIONS**, paragraph F. is deleted in its entirety and replaced with the following:

    F.  brought by or on behalf of one **Insured** against another **Insured**; provided, however, this Exclusion will not apply to any Claim brought by an **Additional Insured** in any capacity other than that of an **Additional Insured**.

1267043/68244085v.1

EXHIBIT 8



June 20, 2023

**Via Email**

Worldwide Sourcing Group, Inc
1125 W 190th Street
Gardena CA 90248
Attn: AJ Jolet
Ajolet@wwsginc.com

**Tender Acceptance – Reservation of Rights**

      Re:    *Cause No. 22STCV39533; Justin Biggers V Ralph's Grocery Company, The Kroger Co and American Guard Services Inc; Los Angeles County CA Superior Court*

| | |
|---|---|
| Plaintiffs: | Justin Biggers |
| Your Client: | American Guard Services Inc. |
| Our Insured: | Seven Safe Services |
| Our Claim Number.: | 184040019 |
| Date of Loss: | January 5 2021 |

Dear Mr. Jolet:

This letter serves to acknowledge and respond to your request that Hiscox defend and/or indemnify American Guard Services Inc ("AGS") in this claim pursuant to contractual indemnity obligations. According to our review of the information and documents received to date Hiscox has determined that there is the potential for indemnification and defense available under the policy for AGS for the presently pending claims against it in this matter, pursuant to the terms and conditions of the policy. The reasons for our decision are discussed below.

**Our Understanding of the Matter**

The complaint alleges Kroger Co, and by way, Ralph's Grocery Store is the owner of the property located at 2600 S Vermont Ave, Los Angeles CA 90007. On or about January 5 2021, Justin Biggers was on the premises of the grocery store and alleges to have been battered and assaulted by security employed by or subcontracted through AGS. Damages being claimed are, past and future pain, medical expenses and loss of earnings.

As AGS's contact, you have requested that Hiscox, on behalf of Seven Safe Services ("SSS"), should indemnify, defend, hold harmless and name as an additional insured, AGS for this loss.

According to the subcontractor agreement between AGS (general contractor) and SSS (subcontractor):

**2.1.8 Indemnity and Protection of Projects**
Subcontractor shall defend, indemnify and hold general contractor, all additional insureds, and agents and employees of any of them, harmless from and against any and all claims, damages, losses, liabilities and expenses, including without limitation attorney's fee's, arising out of or resulting from subcontractors direct performance of the services or subcontractors direct failure to comply with the terms or provisions of the agreement to the extent in whole or in part by any willful or negligent act or omission of

subcontractor or anyone for whose acts it may be solely liable. Subcontractor shall take all necessary precautions to protect the project and the site and work of general contractor or any other persons on the site, from damages caused by the direct actions of subcontractor. Subcontractor shall be liable for any loss of, or damage to, any such property or any injury to any persons that are caused by the actions or neglect of subcontractor.

**5.2 Insurance limits: additional Insured**
All subcontractor's general liability policies shall name general contractor, project owner, owners, associations, partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives as a named insureds.

## The Hiscox Policy

We have considered this matter under the Seven Safe Services occurrence-based General Liability Policy UDC-4265713-CGL-20, with a policy period of September 5 2020 to September 5 2021. The Policy contains a $3,000,000 per-occurrence Limit/$3,000,000 Aggregate Limit of Liability with $5,000 in medical payments coverage.

The following exclusion is within the commercial general liability form **CG 00 01 12 07**

**SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY 2. Exclusions**
This insurance does not apply to:
**a. Expected Or Intended Injury** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Additionally, the main Commercial General Liability Form the policy includes forms or endorsements that provide for, exclude or amend coverage under the policy.

The policy is endorsed with the following additional insured endorsement (form CGL E5421 CW 02/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – AUTOMATIC STATUS**
This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

2

\*\*\*

The policy is endorsed with the following additional insured endorsement (form CGL E5407 CW 03/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION -  PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions** under **Section I –
COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B –
PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

**Professional Services**
"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Finally, Plaintiff seeks compensatory and **punitive damages**. However, Section V. defines **damages** means any monetary amount you are ordered to pay by a court, or by an arbitrator in an arbitration to which we have consented. However, damages does not include punitive, or exemplary damages.

As a matter of Law, punitive damages generally are not insurable in the state of California.


<u>Conclusion</u>

Per the agreement between AGS and SSS; Hiscox will provide a defense under a Reservation of Rights. Hiscox agrees to participate in the defense of AGS, pursuant to the terms and conditions of the CGL E5421 CW (02/14) additional insured endorsement. Indemnification will only be provided for damages caused, in whole or in part, by the acts or omissions of SSS. Additionally, Hiscox will provide a defense under a Reservation of Rights. Hiscox agrees to participate in the defense of AGS, pursuant to the terms and conditions of the CGL E5407 CW (03/10) Exclusion -  Professional Services endorsement.

Regarding the claim for contractual indemnity, please be advised that any duty owed by the Named Insured under the contract does not confer any direct rights upon your clients under the policy.  While the policy does provide the Named Insured with coverage for "Insured Contracts" subject to the Terms, Definitions and Conditions of the policy, this obligation is one owed to the Named Insured and not the contracting party.

In addition, any duty owed by our insured to your client for contractual indemnification may be limited by law and may not require indemnification for the Indemnified Party's own negligence or any liability allocated to any other participant in the injury causing event.  Other limitations under the law and the policy may apply as well to Hiscox's duty to indemnify the Named Insured for contractual indemnification claims.

Hiscox also wishes to point out that until such time as a determination is made by the court or agreement has been reached amongst the parties and Hiscox, that the contract you are relying on is valid, encompasses both a duty to defend and to indemnify, was in effect when this incident occurred and

3

encompasses the claim made in this matter, Hiscox rejects any obligation to provide indemnification to its named insured for any contractual liability alleged to have been incurred by the named insured.

The amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified and may exceed the Policy's limits of coverage.  Hiscox is not responsible for the payment of any claim or satisfaction of any rendered judgment sums which exceed the limit(s) of coverage available from the Policy.

Please be advised that given the preliminary nature of this matter, other provisions of the Policy may apply which are not set forth here. Nothing contained in this letter or in our communications should be construed as a waiver of any rights Hiscox may have under the Policy or the law, all of which are expressly reserved. In the event additional information becomes available, Hiscox continues to reserve the right to further supplement or amend this position in light of such information. We also acknowledge that all of your rights are equally reserved.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned at 312-239-6367.

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Kind regards,

*Melinda Escoubas*
Melinda Escoubas
Senior Complex Claims Specialist
Melinda.escoubas@hiscox.com
312-239-6367

4

EXHIBIT 9



January 24, 2024

**Via email only**

Seven Safe Services
9547 Sophia Ave
North Hills CA 91343
Attn: Lester Finnell
sevensafesv@aol.com

**Re:**    *Justin Biggers v Ralph's Grocery Company; The Kroger Co; John Doe, and Does 1-100*
Filed in Superior Court of California Los Angeles County 22STCV39533

|  |  |
|---|---|
| **Hiscox Insured:** | Seven Safe Services |
| **Claimant:** | Justin Biggers |
| **Policy No.:** | UDC-4265713- CGL-20 |
| **Policy Period:** | September 5,  2020 -  September 5, 2021 |
| **Date of Loss:** | January 5, 2021 |
| **Claim No.:** | 184040019 |

<u>**This is an Amended Reservation of Rights and Partial Disclaimer**</u>
<u>**Please Carefully Review**</u>

Dear Mr. Finnell:

We are writing concerning the defense of Seven Safe Services, Inc. ("Seven Safe") with respect to the lawsuit entitled *Justin Biggers v Ralph's Grocery Company; The Kroger Co; John Doe, and Does 1-100*, filed in Los Angeles Superior Court CA Case No. 22STCV39533. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim, and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend Seven Safe under the CGL policy under a full reservation of rights. The Complaint alleges potential "bodily injury" and "personal and advertising injury" under the insuring agreements in that policy. However, the CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against Seven Safe were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage for Seven Safe altogether and to seek reimbursement of defense or indemnity payments made on its behalf.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

114

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the complaint (the "Complaint"), on January 5, 2021, Plaintiff was at Ralph's Grocery Store located at 2600 S Vermont Ave. Los Angeles CA 90007. The Plaintiff alleges that he was injured as a result of an assault and battery. He claims intentional emotional distress and negligence.he is requesting general and special damages, physical and psychological damage as well as a sustained diability and punitve damages.

The Complaint alleges causes of action:(1) assault, (2) battery (3) intentional infliction of emotional distress (4) negligence, (5) negligent hiring, supervisio and retention. Other named defendants include American Guard Services, Ralph's Grocery Company and The Kroger Co.. Plaintiff's damages include compensatory and  punitive.

American Guard Services originally tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2020 to September 5, 2021. By letter dated June 20, 2023, Hiscox agreed to defend Both American Guard Services and  Seven Safe Services in the lawsuit under a full reservation of rights.

### Policy Limits

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2020, to September 5, 2021, Policy No. UDC-4265713-EO-19. The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-19, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

### Professional Liability Policy Provisions and Coverage Analysis

The insuring agreement in the professional liability policy states in pertinent part:

A.  INSURING AGREEMENT

**We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

---

[1] Bolded terms have the same meanings as defined in the policies.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

> **III. Exclusions**
>
> This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:
>
> K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

**CGL Policy Provisions and Coverage Analysis**

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.  Insuring Agreement**
>
> **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

        **(1)**  amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

Coverage Part A of the CGL policy contains the following relevant exclusions:

    **2.**  **Exclusions**

    This insurance does not apply to:

    **a.**  **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    **o.**  **Personal And Advertising Injury**

    "Bodily injury" arising out of "personal and advertising injury".

* * *

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY  LIABILITY**

    **1.**  **Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)**  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

      **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

The CGL policy contains the following Supplementary Payments provisions:

    **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

    **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

      **a.** All expenses we incur.

      [¶¶]

      **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

      **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

      **f.** Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

      **g.** All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    These payments will not reduce the limits of insurance.

* * *

The CGL policy contains the following conditions:

    **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

    **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

      **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information; [and]

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

    **(1)** This insurance is excess over:

        ¶¶

    **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

**c.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * *

The CGL policy contains the following definitions, among others:

**SECTION V – DEFINITIONS**

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.**  "Employee" includes a "leased worker" and a "temporary worker".[3]

**13.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

**14.**  "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

**a.**  False arrest, detention or imprisonment[.]

* * *

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

**2.  Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE  LIABILITY**,  and **COVERAGE  B – PERSONAL AND ADVERTISING INJURY LIABILITY**,  is amended to include the following exclusion:

This insurance does not apply to:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

**CGL Coverage Analysis**

    **A.  Insuring Agreement Coverage Part A**

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The complaint alleges potential "bodily injury". However, the complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL Policy, and thus there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

    **B.  Insuring Agreement Coverage Part B**

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

    **C.  Professional Services Exclusion**

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Seven Safe, and American Guard are professional in nature. The employee of Seven Safe is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. The Seven Safe employee's security guard services qualify as a professional service. Seven Safe supplied Their employee as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Ralph's Grocery Company and The Kroger Co. In that contract, Seven Safe represented that its "possesses experience

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

121

and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### D.  Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

### E.  Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or their employee.

### F.  Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the willful act of the insured as provided in Insurance Code section 533.

<u>**Mutual Obligations**</u>

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend Seven Safe under a reservation of rights. But the policy imposes obligations on Seven Safe as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

As you know, Hiscox has appointed Attorney Andrew Taylor, of the firm Acker & Whipple,  telephone 213-347-0240 ext 159, 811 Wilshire Boulevard suite 700, Los Angeles, CA 90017 to defend Seven Safe in the lawsuit. Please cooperate with Attorney Taylor in the defense of the case.

---

[4] In its prior position letters, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

**Advice of Counsel**

This letter addresses coverage limitations and exclusions in the Hiscox policies. In light of those issues, Seven Safe may want to consult with an attorney at its own expense to advise it about its rights under the Hiscox policies.

**Excess Disclaimer**

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against Seven Safe involving dates of loss within the policy period – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

**General Reservation of Rights**

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend Seven Safe in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

> Insurance Commissioner
> California Department of Insurance
> Customer Services Division
> 300 South Spring Street, South Tower
> Los Angeles, CA 90013
> Tel:    1-800-927-4357 (calling from within California) or
>           1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184040019** on all future correspondence.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

Sincerely,

*Melinda Escoubas*

Melinda Escoubas
Senior Complex Claims Specialist
General Liability Claims
Melinda.escoubas@hiscox.com
312-239-6367

cc: Acker & Whipple AndrewTaylor@AckerandWhipple.com; StephenAcker@AckerandWhipple.com
    Seven Safe Services sevensafesv@aol.com
    American Guard: ajolet@wwsginc.com; mohamed@wwsginc.com; amiranda@wwsginc.com

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

124

EXHIBIT 10



November 4 2022

<u>Via Email</u>

Worldwide Sourcing Group, Inc
1125 W 190th Street
Gardena CA 90248
Attn: AJ Jolet
Ajolet@wwsginc.com

<u>Tender Acceptance – Reservation of Rights</u>

Re:     *Cause No. BCV-22-102075; Manuel Mancilla Mendez V Super Center Concepts Inc DBA Superior Grocers and American Guard Services Inc; Kern County CA Superior Court*

| | |
|---|---|
| Plaintiffs: | Manuel Mancilla Mendez |
| Your Client: | American Guard Services Inc. |
| Our Insured: | Seven Safe Services |
| Our Claim Number.: | 184038645 |
| Date of Loss: | August 16 2020 |

Dear Mr. Jolet:

This letter serves to acknowledge and respond to your request that Hiscox defend and/or indemnify American Guard Services Inc ("AGS") in this claim pursuant to contractual indemnity obligations. According to our review of the information and documents received to date Hiscox has determined that there is the potential for indemnification and defense available under the policy for AGS for the presently pending claims against it in this matter, pursuant to the terms and conditions of the policy. The reasons for our decision are discussed below.

<u>Our Understanding of the Matter</u>

The complaint alleges Superior Grocers is the owner of the property located at 1115 Union Ave. in Bakerfield CA. On or about August 16 2020,  Manuel Mancilla Mendez  was on the premises of the grocery store and alleges to have been battered and assaulted by security employed by or subcontracted through AGS. Damages being claimed are, past and future pain, medical expenses and loss of earnings.

As AGS's contact, you have requested that Hiscox, on behalf of Seven Safe Services ("SSS"), should indemnify, defend, hold harmless and name as an additional insured, AGS for this loss.

According to the subcontractor agreement between AGS (general contractor)  and SSS (subcontractor):

**2.1.8 Indemnity and Protection of Projects**
Subcontractor shall defend, indemnify and hold general contractor, all additional insureds, and agents and employees of any of them, harmless from and against any and all claims, damages, losses, liabilities and expenses, including without limitation attorney's fee's, arising out of or resulting from subcontractors direct performance of the services or subcontractors direct failure to comply with the terms or provisions of the agreement to the extent in whole or in part by any willful or negligent act or omission of subcontractor or anyone for whose acts it may be solely liable. Subcontractor shall take all necessary

precautions  to protect the project and the site and work of general contractor or any other persons on the site, from damages caused by the direct actions of subcontractor. Subcontractor shall be liable for any loss of, or damage to, any such property or any  injury to any persons that are caused by the actions or neglect of subcontractor.

**5.2 Insurance limits: additional Insured**
All subcontractor's  general liability policies shall name general contractor, project owner, owners, associations, partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives  as a named insureds.


**The Hiscox Policy**

We have considered this matter under the Seven Safe Services occurrence-based General Liability Policy  UDC-4265713-CGL-19, with a policy period of February 19 2020 to September 5 2020. The Policy contains a $3,000,000 per-occurrence Limit/$3,000,000 Aggregate Limit of Liability with $5,000 in medical payments coverage.

The following exclusion is within the commercial general liability form **CG 00 01 12 07**

**SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**2. Exclusions**
> This insurance does not apply to:
> **a. Expected Or Intended Injury** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.


Additionally, the main Commercial General Liability Form the policy includes forms or endorsements that provide for, exclude or amend coverage under the policy.

The policy is endorsed with the following additional insured endorsement (form CGL E5421 CW 02/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – AUTOMATIC STATUS**
This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends  when your operations or lease agreement for that additional insured are completed.

\*\*\*

2

The policy is endorsed with the following additional insured endorsement (form CGL E5407 CW 03/10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION -  PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions** under **Section I –**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

**Professional Services**
"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.


<u>**Conclusion**</u>

Per the agreement between AGS and SSS; Hiscox will provide a defense under a Reservation of Rights. Hiscox agrees to participate in the defense of AGS, pursuant to the terms and conditions of the CGL E5421 CW (02/14) additional insured endorsement. Indemnification will only be provided for damages caused, in whole or in part, by the acts or omissions of SSS. Additionally, Hiscox will provide a defense under a Reservation of Rights. Hiscox agrees to participate in the defense of AGS, pursuant to the terms and conditions of the CGL E5407 CW (03/10) Exclusion -  Professional Services endorsement.

Regarding the claim for contractual indemnity, please be advised that any duty owed by the Named Insured under the contract does not confer any direct rights upon your clients under the policy.  While the policy does provide the Named Insured with coverage for "Insured Contracts" subject to the Terms, Definitions and Conditions of the policy, this obligation is one owed to the Named Insured and not the contracting party.

In addition, any duty owed by our insured to your client for contractual indemnification may be limited by law and may not require indemnification for the Indemnified Party's own negligence or any liability allocated to any other participant in the injury causing event.  Other limitations under the law and the policy may apply as well to Hiscox's duty to indemnify the Named Insured for contractual indemnification claims.

Hiscox also wishes to point out that until such time as a determination is made by the court or agreement has been reached amongst the parties and Hiscox, that the contract you are relying on is valid, encompasses both a duty to defend and to indemnify, was in effect when this incident occurred and encompasses the claim made in this matter, Hiscox rejects any obligation to provide indemnification to its named insured for any contractual liability alleged to have been incurred by the named insured.

The amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified and may exceed the Policy's limits of coverage.  Hiscox is not responsible for the payment of any claim or satisfaction of any rendered judgment sums which exceed the limit(s) of coverage available from the Policy.

3

Please be advised that given the preliminary nature of this matter, other provisions of the Policy may apply which are not set forth here. Nothing contained in this letter or in our communications should be construed as a waiver of any rights Hiscox may have under the Policy or the law, all of which are expressly reserved. In the event additional information becomes available, Hiscox continues to reserve the right to further supplement or amend this position in light of such information. We also acknowledge that all of your rights are equally reserved.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please contact the undersigned at 312-239-6367.

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Kind regards,

*Melinda Escoubas*
Melinda Escoubas
Senior Complex Claims Specialist
Melinda.escoubas@hiscox.com
312-239-6367

4

EXHIBIT 11



January 19, 2024

**Via email only**

Seven Safe Services
9547 Sophia Ave
North Hills CA 91343
Attn: Lester Finnell
sevensafesv@aol.com

Re:     *Manuel Mancilla Mendez v  American Guard Services Inc; Super Center Concepts Inc DBA Superior Grocers and Does 1-40*
          Filed in Kern County CA Case No. BCV-22-102075

|  |  |
|---|---|
| **Hiscox Insured:** | Seven Safe Services |
| **Claimant:** | Manuel Mancilla Mendez |
| **Policy No.:** | UDC-4265713- CGL-19 |
| **Policy Period:** | September 5,  2019 -  September 5, 2020 |
| **Date of Loss:** | August 16 2020 |
| **Claim No.:** | 184038645 |

<u>**This is an Amended Reservation of Rights and Partial Disclaimer**</u>
<u>**Please Carefully Review**</u>

Dear Mr. Finnell:

We are writing concerning the defense of Seven Safe Services, Inc. ("Seven Safe") with respect to the lawsuit entitled *Manuel Mancilla Mendez v  American Guard Services Inc; Super Center Concepts Inc DBA Superior Grocers and Does 1-40*, filed in Kern County CA Case No. BCV-22-102075. In summary only, Hiscox Insurance Company, Inc.'s ("Hiscox") position is as follows:

- Hiscox underwrote two policies issued to Seven Safe as the named insured: a professional liability policy, Policy No. UDC 4265713-EO-20, and a commercial general liability policy ("CGL"), Policy No. UDC 4265713-CGL-20.

- Hiscox denies coverage under the professional liability policy. The professional liability policy covers liability from **Wrongful Acts** related to the rendering or failure to render of **Technology Services**. That policy also has an exclusion for **Bodily Injury** liability. The claims in the lawsuit do not involve **Technology Services** and the **Bodily Injury** exclusion applies as well. The professional policy does not cover the claim, and thus Hiscox denies coverage under that policy.

- Hiscox agrees to defend Seven Safe under the CGL policy under a full reservation of rights. The Complaint alleges potential "bodily injury" and "personal and advertising injury" under the insuring agreements in that policy. However, the CGL policy bars coverage for "bodily injury", "property damage", or "personal and advertising injury" caused by the rendering or failure to render any professional service. All liability and damages alleged against Seven Safe were caused by the rendering or failure to render a professional service – namely, security guard services. Hiscox reserves all rights under the professional services exclusion, including the right

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

131

to deny coverage for Seven Safe altogether and to seek reimbursement of defense or indemnity payments made on its behalf.

We discuss Hiscox's position, including the reasoning behind it, in more detail below.

### Background of the Claim

This letter includes Hiscox's current understanding of this matter. Our understanding is based on the allegations and not on any assumptions that the allegations are valid or true.

According to the allegations in the complaint (the "Complaint"), on August 16, 2020, Plaintiff at the Superior Grocery Store located at 1115 Union Ave., Bakersfield CA 93307. The Plaintiff alleges  that the defendants negligenbtly operated, supervised, managed, maintained and controlled the premises and it's employees and patrons as to the cause the forseeable injuries and damages suffer. It is claimed the plaintiff  was assaulted and battered (twisting of the left arm) by a security officer , resulting in injuries and a fractures tio his upper body.

The Complaint alleges causes of action:(1) general negligence, (2) intentional tort, (3) premises liability. Other named defendants include American Guard Services, Superior Center Concepts, Inc and Superior Grocers. Plaintiff's damages include compensatory and  punitive.

American Guard Services originally tendered the defense of the lawsuit to Hiscox under the policies, which were in effect from September 5, 2019 to September 5, 2020. By letter dated November 4, 2022, Hiscox agreed to defend Both American Guard Services and  Seven Safe Services in the lawsuit under a full reservation of rights.

### Policy Limits

Hiscox issued a professional liability policy to Seven Safe for the policy period September 5, 2019, to September 5, 2020, Policy No. UDC-4265713-EO-19. The professional liability limits are $1,000,000 per each claim and in the aggregate.

Hiscox issued a CGL policy to Seven Safe under policy number UDC-4265713-CGL-19, which was in force during the same policy period. The CGL limits are $3,000,000 per "occurrence" and in the aggregate. The $3,000,000 aggregate limit is the most Hiscox will pay for the sum of all damages under Coverage Part A and Coverage Part B, regardless of the number of insureds, claims made, or "suits" brought, or persons or organizations making claims or bringing "suits".

### Professional Liability Policy Provisions and Coverage Analysis

The insuring agreement in the professional liability policy states in pertinent part:

    A.  INSURING AGREEMENT

        **We** shall pay on **Your** behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the **Policy** for **Wrongful Acts** committed on or after the **Retroactive Date**.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

132

PL Policy, Form No. DPL P001 CW (05/13), Insuring Agreement, Defense and Settlement, Sec. I.A.[1]

A **Wrongful Act** means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**." Id., Definitions, Sec. VI.U. **Professional Services** is defined in Endorsement 1 to mean "**Technology Services** or Information Technology (IT) consulting services performed for others for compensation." PL Policy, End. 1, Form No. DPL E5036 CW (08/15).

The allegations in the Complaint do not involve wrongdoing related to **Technology Services** or Information Technology. Thus, the professional liability insuring agreement does not apply. Hiscox denies coverage under the professional liability policy on that basis.[2]

Coverage for the claims is also excluded. Exclusion K in the professional liability policy provides:

>  **III.  Exclusions**
>
>  This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:
>
>  K.  Based upon or arising out of any actual or alleged **Bodily Injury** or **Property Damage**.

**Bodily Injury** means "physical injury to or sickness, disease or death of any person, or mental injury, mental anguish, emotional distress, pain or suffering, or shock sustained by any person." PL Policy, Definitions, Sec. VI.B.

Plaintiff's causes of action are all based upon or arise out of actual or alleged **Bodily Injury**. On that separate basis, there is no coverage for the lawsuit under the professional liability policy.

## CGL Policy Provisions and Coverage Analysis

The CGL policy contains two coverage parts: Coverage Part A and Coverage Part B. The insuring agreement for Coverage Part A states in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

>  **1.  Insuring Agreement**
>
>  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at

---

[1] Bolded terms have the same meanings as defined in the policies.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance[.]

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[.]

CGL Policy, Form **CG 00 01 12 07**, Sec. I.

* * *

Coverage Part A of the CGL policy contains the following relevant exclusions:

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

* * *

The insuring agreement for Coverage Part B provides in relevant part:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY  LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance[.]

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

134

The CGL policy contains the following Supplementary Payments provisions:

### SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   [¶¶]

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against any insured.

   f. Pre judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

   * * *

The CGL policy contains the following conditions:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information; [and]

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

¶¶

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

\* \* \*

The CGL policy contains the following definitions, among others:

### SECTION V – DEFINITIONS

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5.  "Employee" includes a "leased worker" and a "temporary worker".[3]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of more than one of the following offenses:

   a.  False arrest, detention or imprisonment[.]

\* \* \*

By endorsement, the CGL policy contains a Professional Services exclusion, which applies to both Coverage Part A and Coverage Part B. That exclusion states:

2.  **Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

   This insurance does not apply to:

   **Professional Services**

   "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

   This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property

---

[3] As modified by the Definition of Employee Endorsement, Form No. CGL E5401 CW (03/10).

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

Exclusion – Professional Services, Form No. CGL E5407 CW (03/10).

**CGL Coverage Analysis**

### A. Insuring Agreement Coverage Part A

The insuring agreement for Coverage Part A insures damages because of "bodily injury" caused by an "occurrence" during the policy period. An "occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions". The complaint alleges potential "bodily injury". However, the complaint also alleges non-accidental conduct, such as assault and other intentional conduct. Such allegations do not constitute an "occurrence" as defined by the CGL Policy, and thus there would be no coverage for that conduct or any resulting injury. Hiscox reserves the right to deny coverage, in whole or in part, on the ground that the alleged damages were not caused by an "occurrence".

### B. Insuring Agreement Coverage Part B

The insuring agreement for Coverage Part B insures damages from "personal and advertising injury", which is defined in part as "false arrest, detention or imprisonment." The allegations in the complaint appear to allege potential "personal and advertising injury". Nonetheless, Hiscox reserves all rights under the insuring agreement in Coverage Part B.

### C. Professional Services Exclusion

The CGL policy contains a professional services exclusion, which bars coverage for "bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service." Form No. CGL E5407 CW (03/10). The exclusion applies "even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage', or the offense which caused the 'personal and advertising injury', involved the rendering or failure to render any professional service." Id.

The CGL policy does not define "professional services". When that term is not defined in a policy, California courts have judicially construed the term to mean those services "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."

Under that definition, all services provided by Seven Safe, and American Guard are professional in nature. The employee of Seven Safe is a licensed guard, with a permit to carry a baton and an exposed firearm. By law, he is required to complete initial and continuing training courses in various topics, including the power to arrest. The Seven Safe employee's security guard services qualify as a professional service. Seven Safe supplied Their employee as a guard pursuant to a subcontract with American Guard, which in turn contracted to provide security guard services to Superior Grocery Center. In that contract, Seven Safe represented that its "possesses experience and knowledge in providing professional services of the same type and nature as the Services required by its Agreement" and that it would provide "properly skilled and trained personnel as necessary to perform the Services."

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

Hiscox reserves all rights under the professional services exclusion, including the right to deny coverage and withdraw from the defense on the ground that all alleged damages were caused by the rendering or failure to render professional services.

### D.  Other Limitations and Exclusions

The policy contains other limitations and exclusions that might apply, including the Personal and Advertising Injury exclusions for Coverage Part A. Hiscox reserves all rights under that and under other applicable exclusions.[4]

### E.  Supplementary Payments

The Complaint seeks attorney's fees and expenses. We note that, under the Supplementary Payments provisions, the CGL policy would not cover any attorney's fees or expenses awarded against Seven Safe or their employee.

### F.  Public Policy

Certain damages and conduct are uninsurable as a matter of public policy, including liability for punitive or exemplary damages or any loss caused by the willful act of the insured as provided in Insurance Code section 533.

### Mutual Obligations

Under the CGL policy, Hiscox has the "right and duty" to defend the insured against any "suit" seeking potentially covered damages. See **Section I Coverages – Coverage A Bodily Injury and Property Damage Liability**, ¶ 1.a.; **Coverage B Personal and Advertising Injury Liability**, ¶ 1.a. But Hiscox has no duty to defend any "suit" seeking damages to which the CGL policy does not apply. Hiscox may, at its discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.

Hiscox has agreed to defend Seven Safe under a reservation of rights. But the policy imposes obligations on Seven Safe as well. The policy requires that insureds cooperate fully with Hiscox in the investigation or settlement of the claim or defense of any "suit". **See Section IV – Commercial General Liability Conditions**, ¶ 2.c. An insured may not, except at that insured's own cost, "voluntarily make a payment, assume any obligation or incur any expense" without Hiscox's consent. Id. ¶ 2.d. Under the CGL policy, insureds also must obtain Hiscox's prior consent before admitting any liability, consenting to any judgment, agreeing to any settlement, or making any settlement offer with regard to the claim.

As you know, Hiscox has appointed Attorney Andrew Taylor, of the firm Acker & Whipple,  telephone 213-347-0240 ext 159, 811 Wilshire Boulevard suite 700, Los Angeles, CA 90017 to defend Seven Safe in the lawsuit. Please cooperate with Attorney Taylor in the defense of the case.

### Advice of Counsel

---

[4] In its prior position letters, Hiscox reserved rights under the Expected or Intended Injury Exclusion in Coverage Part A and the Knowing Violation of Rights of Another and Criminal Acts Exclusions in Coverage Part B. Hiscox no longer is reserving rights under those exclusions.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

This letter addresses coverage limitations and exclusions in the Hiscox policies. In light of those issues, Seven Safe may want to consult with an attorney at its own expense to advise it about its rights under the Hiscox policies.

## Excess Disclaimer

Finally, we point out that the amount sued or claimed, or the amount of any settlement or final judgment, is presently unknown or unspecified. As such, the amount may exceed the applicable limit of liability. There are other lawsuits alleged against Seven Safe involving dates of loss within the policy period – any judgments or settlements paid in those lawsuits would erode the available aggregate limits under the CGL policy. Hiscox is not responsible for the payment of any claim or satisfaction of any judgment that exceeds the limit(s) of coverage available under the CGL policy.

## General Reservation of Rights

While we have endeavored to identify all pertinent issues, nothing in this letter is intended to limit Hiscox's rights under the policies in any way. Hiscox expects to continue to investigate the insurance claim and tender, including monitoring events that may affect coverage. Hiscox reserves all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the policies, at law or in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by Hiscox, should be construed as a waiver of any of Hiscox's rights.

Hiscox reserves the right to deny coverage and withdraw from the defense and to seek a judicial declaration that it has no duty to defend Seven Safe in the lawsuit. Hiscox also reserves the right to seek reimbursement of any defense or indemnity payments on the ground that there is no potential for coverage. To the extent there is any potential for coverage, Hiscox reserves the right to seek reimbursement of defense expenses allocable to claims for which there never was a potential for coverage. Hiscox also reserves the right to file a declaratory relief action regarding its obligations under Hiscox's policies.

In the event any persons or entities believe that any part of the insurance claim has been wrongfully denied, they may be entitled to have this matter reviewed by the California Department of Insurance at the following address:

Insurance Commissioner
California Department of Insurance
Customer Services Division
300 South Spring Street, South Tower
Los Angeles, CA 90013
Tel:    1-800-927-4357 (calling from within California) or
        1-213-897-8921 (calling from outside California)

We remain available to discuss the matters set forth in this letter, and to answer any questions you may have. If you know or become aware of any facts or are aware of any legal authorities that would bear upon Hiscox's coverage analysis in this matter, we would be pleased to receive and consider them.

If you would like to discuss any aspect of this letter, please do not hesitate to contact me. In order to help expedite our handling of your inquiry, please include our claim number **184038645** on all future correspondence.

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

Sincerely,

*Melinda Escoubas*

Melinda Escoubas
Senior Complex Claims Specialist
General Liability Claims
Melinda.escoubas@hiscox.com
312-239-6367

cc: Acker & Whipple AndrewTaylor@AckerandWhipple.com; StephenAcker@AckerandWhipple.com
Seven Safe Services sevensafesv@aol.com
American Guard: ajolet@wwsginc.com; mohamed@wwsginc.com; amiranda@wwsginc.com

**Hiscox**
30 N LaSalle St suite 1760
Chicago IL 60602

**T** +1 312-239-6367
**Melinda.escoubas@hiscox.com**
**www.hiscox.com**

EXHIBIT 12

| **From:** | Hiscox Claims <hiscoxclaims@hiscox.com> |
|---|---|
| **Sent on:** | Thursday, August 4, 2022 10:05:19 PM |
| **To:** | CCS Claim Notices <claim.notices@hiscox.com> |
| **Subject:** | FW: (EXT) Hiscox new claims submission : Grant v American Guard Services, Inc. (UDC - 426-5713- CGL - 20) |
| **Attachments:** | Grant Summons and Complaint received through Incorp 012622.pdf (4.33 MB), Seven Safe with AGS Year 20 to 21 Commercial GL AGS is AI.pdf (124.93 KB), Seven Safe Subcontractor Agreement - 2020.pdf (1.03 MB) |
| **Categories:** | Biance |

---

**From:** Apple Miranda <amiranda@wwsginc.com>
**Sent:** Thursday, August 4, 2022 10:03:04 PM (UTC+00:00) Dublin, Edinburgh, Lisbon, London
**To:** Hiscox Claims <hiscoxclaims@hiscox.com>
**Cc:** Mohamed Youssef <mohamed@wwsginc.com>; AJ Jolet <ajolet@wwsginc.com>
**Subject:** (EXT) Hiscox new claims submission : Grant v American Guard Services, Inc. (UDC - 426-5713- CGL - 20)

To the Claims Department:

We are your additional insured, American Guard Services, Inc. under the policy issued to Seven Safe Services, Inc. We would like to forward to you a new claim made against our company by an individual named, Miyoshi Grant.

Our internal investigation shows that the guard involved in the incident was an off-duty officer from Seven Safe Services, Inc. The date of the incident is 12/22/20.

Attached are the following:
1. Complaint;
2. Certificate of Insurance with number UDC - 4265713-CGL-20;
3. Subcontractor Agreement between Seven Safe Services, Inc. and American Guard Services, Inc.

Thank you.


Sincerely,


*Apple Miranda*
Paralegal

Worldwide Sourcing Group, Inc.
and Affiliated Entities
1125 W. 190th Street
Gardena, CA 90248
Main Office: (310) 645-6200
Direct Line: (424)213-4005
www.wwsginc.com
www.americanguardservices.com

143

file://H:/im10/im10/USH128.1178322 - SEVEN SAFE SERVICES (DJ ACTION)/Grant 0002 - FW (EXT) Hiscox new claims submission Grant v Americ... 1/2

Confidentiality Notice: The information contained in this electronic communication and any accompanying attachment(s) is intended only for the use of the intended recipient and may be privileged (including, but not limited to the attorney-client privilege) and/or confidential. If the recipient of the is communication is not the intended recipient, unauthorized use, disclosure, and copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.


Other Notices: This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communications is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. Thank you.

144

file:///H:/im10/im10/USH128.1178322 - SEVEN SAFE SERVICES (DJ ACTION)/Grant 0002 - FW (EXT) Hiscox new claims submission Grant v Americ...    2/2

EXHIBIT 13

| | |
|---|---|
| **From:** | Chris Leapley <chris.leapley@hiscox.com> |
| **Sent on:** | 15 November 2021 15:10:43 |
| **To:** | Hiscox USA Direct Claims <reportaclaim@hiscox.com> |
| **CC:** | Stephen Webb <stephen.webb@hiscox.com>; Chris Leapley <chris.leapley@hiscox.com> |
| **Subject:** | New Claims Seven Safe Services (Claim 184032137) |
| **Attachments:** | 052821 - John Doe- Octavio Vega Jr. Tender lettert to Seven Safe.pdf (1.08 MB), Second Tender from Kroger Zhadius Penn.pdf (5.65 MB) |

| | |
|---|---|
| **Categories:** | akeem |

Good morning,

The insured in this matter forwarded me two more complaints that they need to respond to. These are different claims than the one we already responded to, being claim 184032137. Are you able to create these claims or forward them on to who can?
The claimant in one is Octavio Vega Jr with a DOL of 07/17/2020
The Claimant in the second is Gwendolyn D Penn, with a DOL of 02/12/2021
I am cc'ing my manager Stephen Webb on this, as I believe the easiest thing will be to assign these to me as I already have dealt with this insured and these coverage determinations are likely the same as the prior claim.
Let me know if you have any questions or concerns.

Thanks!

Chris
**Christopher D. Leapley, Esq.**
<span style="color:red">Senior Claims Examiner</span>
Hiscox Insurance Company, Inc.
**T** 678.327.2122
**F** 678 731 9501
**Connect with Hiscox online**
**Web** www.hiscox.com
**Twitter** @HiscoxSmallBiz



EXHIBIT 14

**From:** Hiscox Claims
**Sent:** Tuesday, April 18, 2023 1:27 PM
**To:** CCS Claim Notices
**Subject:** FW: (EXT) New claims submitted to Hiscox : Justin Biggers v Ralphs
**Attachments:** Seven Safe  with AGS Year 20 to 21 Commercial GL AGS is AI.pdf; Seven Safe Subcontractor Agreement - 2020.pdf; Biggers Cross Complaint 040523.pdf

**Categories:** Biance

---

**From:** Apple Miranda <amiranda@wwsginc.com>
**Sent:** Tuesday, April 18, 2023 9:25:47 PM (UTC+00:00) Dublin, Edinburgh, Lisbon, London
**To:** Hiscox Claims <hiscoxclaims@hiscox.com>
**Cc:** Legal <legal@wwsginc.com>; AJ Jolet <ajolet@wwsginc.com>
**Subject:** (EXT) New claims submitted to Hiscox : Justin Biggers v Ralphs

To the Claims Department:

We are your insured, American Guard Services, Inc., under a policy issued to Seven Safe Services. We are forwarding to you a new claim filed against our company by Ralphs involving a guard employed by Seven Safe Services.
Attached is the copy of the Cross- Complaint we received on 04/05/23. Also attached is the copy of the Certificate of Liability Insurance and the copy of our Subcontractor Agreement with Seven Safe Services.
Sincerely,

*Apple Miranda*
Paralegal
Worldwide Sourcing Group, Inc.
and Affiliated Entities
1125 W. 190th Street
Gardena, CA 90248
Main Office: (310) 645-6200
Direct Line: (424) 213-4005
www.wwsginc.com
www.americanguardservices.com

EXHIBIT 15

| **From:** | Hiscox Claims <hiscoxclaims@hiscox.com> |
|---|---|
| **Sent on:** | 19 October 2022 21:38:37 |
| **To:** | CCS Claim Notices <claim.notices@hiscox.com> |
| **Subject:** | UDC4265713---FW: (EXT) New claim tendered to Seven Safe's insurance Hiscox: Manuel Mendez v. AGS |
| **Attachments:** | Mendez Complaint Via Incorp 101422.PDF (964.81 KB), Seven Safe Subcontractor Agreement - 2020.pdf (1.03 MB) |

| **Categories:** | akeem |

---

**From:** Apple Miranda <amiranda@wwsginc.com>
**Sent:** Wednesday, October 19, 2022 9:37:24 PM (UTC+00:00) Dublin, Edinburgh, Lisbon, London
**To:** Hiscox Claims <hiscoxclaims@hiscox.com>
**Cc:** Mohamed Youssef <mohamed@wwsginc.com>; AJ Jolet <ajolet@wwsginc.com>
**Subject:** (EXT) New claim tendered to Seven Safe's insurance Hiscox: Manuel Mendez v. AGS

To the Claims Department:

We are your additional insured, American Guard Services, Inc. under the policy issued to Seven Safe Services, Inc.

We would like to forward to you a new claim made against our company by an individual named, Manuel Mancilla Mendez. Our internal investigation shows that the guard involved in the incident was an off-duty officer from Seven Safe Services, Inc. The date of incident is 08/16/20.

Attached is a copy of the complaint received through our registered service agent of process on 10/14/22. Also attached is the copy of the Subcontractor Agreement between Seven Safe Services and American Guard Services.

Thank you.

Sincerely,


*Apple Miranda*
Paralegal

Worldwide Sourcing Group, Inc.
and Affiliated Entities
1125 W. 190th Street
Gardena, CA 90248
Main Office: (310) 645-6200
Direct Line: (424)213-4005
www.wwsginc.com
www.americanguardservices.com

Confidentiality Notice: The information contained in this electronic communication and any accompanying

151

attachment(s) is intended only for the use of the intended recipient and may be privileged (including, but not limited to the attorney-client privilege) and/or confidential. If the recipient of the is communication is not the intended recipient, unauthorized use, disclosure, and copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.


Other Notices: This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communications is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. Thank you.

EXHIBIT 16

## SUBCONTRACTOR SERVICES AGREEMENT

This Subcontractor Services Agreement (referred to herein as the "**Agreement**" and consisting of this document and all Exhibits attached hereto and/or incorporated herein by reference) is made and entered into as of ____January 1_____, 2020, by and between:

**The General Contractor (hereinafter called "General Contractor"):**

American Guard Services, Inc.
1125 W. 190th Street
Gardena, CA 90248
Ph: (310) 645-6200
    Contact: Adolfo Avendano
    Phone: (424) 213-4100
    Email: aavendano@americanguardservices.com

Vets Securing America, Inc.
1125 W. 190th Street
Gardena, CA 90248
Ph: (310) 645-6200
    Contact: Adolfo Avendano
    Phone: (424) 213-4100
    Email: aavendano@americanguardservices.com

**And the Subcontractor (hereinafter called "Subcontractor"):**

Seven Safe Services
~~2060 W. 66th Street~~      9547 Sophia Ave
~~Los Angeles, CA 90047~~ North Hills, CA 91343
Ph: 310-946-3909 / 818-970-7757
    Contact:  Lester Finnell/Dave Taylor
    Ph: 310-946-3909
    Email: dtaylor3909649@gmail.com / sevensafesv@aol.com

# 1 IMPORTANT DEFINITIONS

**1.1 "Project"**—The term "Project" shall mean the off duty police officer security guard services to be provided at various locations, including but not limited to Food 4 Less locations in Southern California ("F4L SCA"), Food Co locations in Northern California ("FC NCA"), and Ralph's locations in Southern California ("Ralphs SCA").

**1.2 "Services"**—The term "Services" shall mean the off duty police officer security guard services provided by the Subcontractor at various locations, including but not limited to the Food 4 Less locations in Southern California ("F4L SCA"), Food Co locations in Northern California ("FC NCA"), and Ralph's locations in Southern California ("Ralphs SCA"), also known as the Project.

**1.3 "Scope of Services"**—Subcontractor shall provide and furnish (and as used in this Agreement, the term "Services" shall mean) all of the work, labor, supervision, services, materials, permits and equipment that are required by or reasonably inferable from the description provided in **Exhibit A.**

**1.4 "Site"**—The term "Site" shall mean the location of the Project and any areas therein or adjacent thereto where the Services (as that term is herein defined) are to be performed and/or Subcontractor is permitted to store or stage the Services and/or any materials, equipment or tools. All terms and phrases defined in this Agreement shall have the respective meanings as are specified herein. All words that have well known technical or security industry meanings are used in this Agreement in accordance with such recognized meanings, unless defined differently herein or the context clearly indicates otherwise.

**1.5 "Security Services Contract"**—The phrase "Security Services Contract" shall refer to the agreement that the General Contractor has entered into, or will hereafter enter into, with the various clients, including but not limited to the owners of F4L SCA, FC NCA, and Ralphs SCA to perform security guard services.

**1.6 "Account"**—The term "Account" shall mean the culmination and accounting of hours of off duty police officer security guard services provided by Subcontractor to General Contractor at various locations, including but not limited to Food 4 Less locations in Southern California ("F4L SCA"), Food Co locations in Northern California ("FC NCA"), and Ralph's locations in Southern California ("Ralphs SCA") in accordance with various contract documents and specifications.

**1.7 "Change Order"**—A Change Order shall be based upon agreement between General Contractor and Subcontractor ("Change Order").

**1.8 "Change Directive"**—The term "Change Directive" shall mean a directive issued by General Contractor that alters performance of work to be provided by the Subcontractor and may or may not be agreed to by Subcontractor.

**1.9 "Modification"**—The term "Modification" shall refer to (1) a written amendment or addendum to the Agreement signed by both parties and incorporated into the Agreement; or (2) a Change Order or a Change Directive.

**1.10 "Additional Insureds"**—The phrase "Additional Insureds" shall mean the General Contractor, Project owner, the constituent partners of General Contractor, any owners associations having an interest in the property where the Project is located, and their respective partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives, as their interests may appear, as additional named insureds.

# 2 ADMINISTRATION

### 2.1 General

**2.1.1 Precedence of Documents**—The Contract Documents (as that term is hereinafter defined) consist of, in order of precedence should any documents conflict: (1) this Agreement; (2) exhibits and conditions of the Agreement (general, supplementary, and other conditions); and (3) any other Modifications (as that term is herein defined) issued in connection with the Services for the Project. The Contract Documents form the Agreement and may be collectively referred to herein as the "Contract Documents." All Contract Documents and Exhibits to this Agreement are fully incorporated into this Agreement by reference and are as fully a part of this Agreement as if repeated in their entirety in this Agreement. A "Modification" is (1) a written amendment or addendum to the Agreement signed by both parties and incorporated into the Agreement; or (2) a Change Order or a Change Directive (as those terms are hereinafter defined).

**2.1.2 Pre-Services Investigation Completed.** Subcontractor acknowledges and agrees that Subcontractor has investigated the Project in order to be sufficiently apprised of the Project and its requirements prior to execution of this Agreement.

**2.1.3 Compliance with Laws and Regulations.** All Services performed hereunder by Subcontractor shall comply in every respect with the current and applicable versions (as of the date when the Services are performed) of all laws, codes, ordinances and regulations of duly constituted authorities in force in the locality in which the Services are performed (including, but not limited to, all safety and health regulations applicable to the Services [including the Federal Occupational Safety and Health Act, as amended, if applicable], and if any licenses, permits, inspections, tests, or bonds are required in connection therewith, the same shall be furnished by Subcontractor at Subcontractor's sole cost and expense.

**2.1.4 Minimum Safety Requirements.** Subcontractor shall take reasonable safety precautions with respect to the performance of this Agreement, and shall comply with safety measures, including any Project-specific safety manual, initiated by General Contractor in accordance with the requirements of General Contractor's contract with Account.

2.1.4.1   Subcontractor shall report to the General Contractor any injury to any employee or agent of Subcontractor, which occurred at the Project, within five (5) days after the date of the injury.

2.1.4.2   Subcontractor represents and warrants to General Contractor that it has provided safety training to Subcontractor's employees.

2.1.4.3   If personal protective equipment is required on the Project, Subcontractor shall provide the necessary personal protective equipment to all of its personnel on the Project.

2.1.4.4   Subcontractor shall conduct and provide written Jobsite Safety Analyses ("JSAs") for all of its service activities.

**2.1.5   Confidential and Proprietary Information.**  Subcontractor will take reasonable measures to prevent disclosure of any confidential or proprietary information supplied by General Contractor to any third person.

**2.1.6   Compliance with Policies.**  Subcontractor shall require all persons performing Services on the Project to comply with any and all policies and rules established by General Contractor relating to behavior at the Site, safety, quality, work hours, parking, access to the Site, noise, smoking, hygiene, food services, restricted areas, elevator use, and, as applicable, guest privacy and confidentiality.

**2.1.7   Right to Charge Back.**  General Contractor shall have the right to charge back against Subcontractor, and to deduct from any payments due Subcontractor pursuant to this Agreement, all amounts incurred by General Contractor as a result of any failure by Subcontractor to comply with the terms of this Agreement. Prior to any charge back by General Contractor, General Contractor shall provide Subcontractor written notice of any intent to charge back. General Contractor, once Subcontractor has been provided written notice, shall also permit Subcontractor reasonable time to cure or remedy reasons or grounds for General Contractor's intent to charge back. Should Subcontractor fail to rectify General Contractor's reasons for charge back within a reasonable amount of time, General Contractor may charge back against Subcontractor.

**2.1.8   Indemnity and Protection of the Project.**  Subcontractor shall defend, indemnify and hold General Contractor, all Additional Insureds (as that term is herein defined), and agents and employees of any of them, harmless from and against any and all claims, damages, losses, liabilities and expenses, including without limitation attorneys' fees, arising out of or resulting from Subcontractor's direct performance of the Services or Subcontractor's direct failure to comply with the terms or provisions of the Agreement, to the extent in whole or in part by any willful or negligent acts or omissions of Subcontractor or anyone for whose acts it may be solely liable.  Subcontractor shall take all necessary precautions to properly protect the Project and the Site and work of General Contractor or any other persons on the Site, from damages caused by the direct actions of Subcontractor.  Subcontractor shall be liable for any loss of, or damage to, any such property or any injuries to any persons that are caused by the action or neglect of Subcontractor.

## 2.2 SUSPENSION, DEFAULT AND TERMINATION

**2.2.1   Suspension.** General Contractor may suspend this Agreement and all Services by Subcontractor, with or without cause, upon seven (7) days written notice to Subcontractor.

**2.2.2   Notice of Default.**  In the event that Subcontractor fails to perform the Services in accordance with the requirements of this Agreement, General Contractor shall submit a notice letter to Subcontractor, setting forth the reasons for noncompliance.  Thereafter, Subcontractor shall have twenty-four (24) hours to cure its noncompliance and/or implement a plan for curing the noncompliance, and such cure efforts and/or curative plan must be to the reasonable satisfaction of General Contractor.  In the event that Subcontractor's cure efforts do not meet the satisfaction of General Contractor, General Contractor shall have the right, in addition to any other rights or remedies, to immediately hire another person or entity (or to use General Contractor's personnel) to perform or complete Subcontractor's Services, and in such event Subcontractor shall be liable to General Contractor for the reasonable cost incurred by General Contractor in order to procure the performance and completion of such Services and all other damages incurred by General Contractor as a consequence of such failure.

**2.2.3    Termination Without Cause.** General Contractor may terminate this Agreement without cause, upon three (3) days' written notice to Subcontractor. In the event General Contractor terminates this Agreement without cause, Subcontractor shall be entitled to compensation, pursuant to the provisions of and subject to the limitations set forth in this Agreement, only for the Services properly performed by Subcontractor and accepted by General Contractor, up to and including the date of termination measured by calculating that portion of the Contract Sum due to Subcontractor pursuant to this Agreement based on the serviced rendered by Subcontractor, overall and in each category of the Services, as applicable, as of the date of termination. Except as so stated, General Contractor will not be responsible to reimburse Subcontractor for any unearned fees, or for penalties or damages for canceling such any commitments, and no compensation shall be allowed to Subcontractor for anticipated or lost profit, unperformed services or intangibles.

**2.2.4    Termination With Cause.** General Contractor may terminate this Agreement based on written notice with cause because of the negligence, errors, omissions or breach of Agreement of Subcontractor. A termination by General Contractor for cause will specify the cause involved and will be effective three (3) days after receipt of General Contractor's notice of intent to terminate. In the event General Contractor terminates this Agreement for cause, Subcontractor shall not be entitled to any further compensation and shall be liable to General Contractor for (and General Contractor may deduct from any payments otherwise due to Subcontractor hereunder) all costs and damages incurred by General Contractor as a result of the termination and/or Subcontractor's acts, omissions, fault, negligence, errors or breach of Agreement (including attorneys' fees and court costs and the costs of completing Subcontractor's Services as required by this Agreement). A termination by General Contractor for cause which is later determined to be wrongful shall be considered a termination without cause pursuant to this Section above. No termination by General Contractor under this Section (whether with or without cause) shall constitute a waiver or release of any claims by General Contractor relating to events, circumstances or breaches arising prior to such termination, nor shall such termination affect any of the other rights or remedies of General Contractor granted by this Agreement or by law, or relieve Subcontractor from any consequences or liabilities arising from Subcontractor's acts, omissions or deficiencies in connection with the Services or this Agreement.

**2.2.5    No General Contractor Default Without Notice.** General Contractor shall not be in default under this Agreement unless first notified, in writing, by Subcontractor, which writing shall specifically set forth, in detail, the conditions of such default and General Contractor shall have thirty (30) days to cure such default. Subcontractor may terminate this Agreement only for (i) non-payment of amounts due under this Agreement for sixty (60) days or longer, after written notice has been received by General Contractor, and/or (ii) failure of General Contractor to cure any default as set forth in the notice by Subcontractor to General Contractor. Subcontractor hereby waives and releases any and all claims against General Contractor for punitive, and/or exemplary, and/or consequential damages arising out of or relating to this Agreement, including without limitation, any punitive, and/or exemplary, and/or consequential damages due to the termination of this Agreement by General Contractor.

## 2.3 COMPLIANCE

**2.3.1    Prevailing Minimum Wage.** Subcontractor shall comply with any prevailing minimum wage rates and reporting requirements, if any.

**2.3.2    Organization of Subcontractor.** Subcontractor is a corporation duly organized, validly existing, and in good standing with the laws of the State of California and has full corporate power and authority to perform the Services. Subcontractor has full corporate power and authority to execute and deliver this Agreement and other agreements contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.

**2.3.3    Representations and Warranties of Subcontractor.** Subcontractor is under no pending, or to the best of its knowledge threatened, investigation by any federal, state, or local agency, department, or authority. Subcontractor's Business License(s) in the jurisdictions in which Subcontractor is to perform Services has not ever and is not suspended or revoked.

*///*

## 2.4 PROPRIETARY INFORMATION

**2.4.1    Protection of Proprietary Information.**    Subcontractor represents to General Contractor that Subcontractor has and employs policies and procedures to protect proprietary information and to prevent the unauthorized publication and disclosure of proprietary information. Subcontractor agrees that General Contractor's proprietary information shall be subject to such policies and procedures. Subcontractor agrees, upon completion of the Services, to return to General Contractor or destroy all documents containing proprietary information. Further, Subcontractor acknowledges and agrees that all public relations matters arising out of or in connection with the Project shall be the responsibility of and be handled by General Contractor.  Subcontractor shall not permit any of its employees to publicize, email, distribute, or otherwise post photographs of the Services or the Site, or any other Proprietary Information, on the internet, on social media sites, or in any other public or private forum.

## 2.5 MISCELLANEOUS

**2.5.1    Independent Contractor.**    Subcontractor shall be an independent contractor and shall have the responsibility for and control over the details and means of performing the Services. Nothing in this Agreement shall be deemed to constitute Subcontractor or any of Subcontractor's employees or agents to be the agent, representative or employee of General Contractor and/or Account. General Contractor shall not be responsible for Subcontractor's performance standards or training of its personnel. Subcontractor shall provide and furnish, at its own cost and expense, all labor, supplies, equipment, services, supervision, insurance, administration, and all other items necessary or required for the proper and complete performance and acceptance of the following portions of the work, the Services. Subcontractor shall pay, punctually and in full, all payroll taxes and other costs based on payroll, including social security and unemployment and disability benefits insurance required to be paid. Subcontractor shall also pay all federal, state, and local taxes in connection with the performance of the Services, and any other Services that Subcontractor may perform for General Contractor pursuant to this Agreement.

**2.5.2    Notices.**    Any notice required to be given hereunder shall be given in writing to the parties at the respective addresses herein above indicated and shall be deemed to have been given (i) when delivered by hand; (ii) when sent by first class registered or certified mail, postage prepaid, return receipt requested; or (iii) when sent by a nationally recognized overnight courier with written proof of delivery.

**2.5.3    Entire Agreement.**    The Agreement represents the entire and integrated Agreement between the parties hereto and supersedes all requests for proposals or bids and any responses thereto and all prior negotiations, representations or agreements, either written or oral, all of which are hereby rendered null and void and of no effect.  No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which enforcement of such modification, waiver, amendment, discharge or change is or may be sought.

**2.5.4    Recordkeeping.**    Subcontractor agrees to keep adequate records and books of account as necessary to accurately reflect the charges incurred and/or billed pursuant to this Agreement and as required to allow General Contractor to verify the validity, correctness and legitimacy of all amounts charged and/or paid pursuant to this Agreement, and to confirm Subcontractor's compliance with the requirements of this Section. General Contractor shall have the right to audit the books and records of Subcontractor for the purposes of confirming Subcontractor's compliance with these requirements. All charges by Subcontractor hereunder shall be subject to audit by General Contractor and/or its designee. Subcontractor will retain, for at least five (5) years after the completion of Services, all records substantiating, in detail, Subcontractor's charges, Subcontractor's costs, and all direct labor hours incurred in the performance of Services under this Agreement. Subcontractor will also make available such other records as Company may require in order to reasonably certify that the various items charged hereunder are proper and correct.

**2.5.5    Survival.**    In case any one or more provisions set forth in the Contract Documents or the application thereof to any person or circumstances shall for any reason be held invalid, illegal or unenforceable in any respect, any such invalidity, illegality, or unenforceability shall not affect any other provision of the Contract Documents or the application of such provisions to other persons or circumstances, and the Contract Documents shall be enforced to the greatest extent permitted by law.

**2.5.6  Limitation of General Contractor's liability.** Notwithstanding any other provision of this Agreement to the contrary, the liability of General Contractor to Subcontractor under this Agreement (whether in contract or in tort) is limited solely to amounts owed for Services properly performed. It is intended by the parties to this Agreement that General Contractor's obligations and Subcontractor's Services in connection with the Project shall not subject General Contractor's individual shareholders, employees, officers or directors to any personal legal exposure for the risks associated with this Project and/or the Security Guard Services contract entered into by the General Contractor.

**2.5.7  Governing Law.** This Agreement shall be governed and construed in accordance with the laws of the State of California. In any action brought by either party arising out of or relating to the Project, this Agreement or the breach thereof, reasonable attorneys' fees shall be awarded to the prevailing party, measured by the extent to which such party in fact prevails in the action.

**2.5.8  Transfer and Assignment.** Subcontractor shall not assign, transfer or subcontract any portion of this Agreement without the prior written consent of General Contractor. General Contractor shall have the right to freely assign and/or transfer General Contractor's interest in this Agreement. Upon assumption of this Agreement by such person or entity, General Contractor shall have no further liability under this Agreement.

**2.5.9  No Third-Party Beneficiaries.** There shall be no third-party beneficiaries of this Agreement. The Contract Documents are not intended, and shall not be deemed or construed, to confer any rights, powers or privileges on any person, firm, partnership, corporation or other entity not a party hereto except as may be expressly provided herein to the contrary.

**2.5.10  Headings.** The headings of the sections contained in this Agreement are for convenience of reference only and do not form a part hereof and in no way modify, interrupt, or construe the meaning of this Agreement.

**2.5.11  No Strict Construction.** The language used in this Agreement will be deemed to be the language chosen by the parties hereto to express their mutual intent, and no rule of strict construction will be applied against any party hereto.

**2.5.12  Reliance.** All covenants, warranties, and representations made herein by Subcontractor shall be deemed to be material and relied upon by General Contractor, notwithstanding any investigation by or knowledge of such other party.

**2.5.13  Execution.** This Agreement may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery by electronic transmission in portable document format (PDF) of an executed counterpart of this Agreement is as effective as delivery of an originally executed counterpart of this Agreement.

# 3 PAYMENT

**3.1  Invoices and Billing.** Every seven (7) days, beginning _____, Subcontractor shall submit invoices for payment as required by the General Contractor for the Project. Subcontractor shall submit all invoices to Rosie Plazola by hand.

**3.2  Period Covered.** The period covered by each invoice for payment shall be one calendar week. General Contractor shall issue payment on a respective invoice on a net 15 basis.

**3.3  Untimely Invoice.** If an invoice is received by General Contractor after the periodic time period specified in Paragraph 3.1 date fixed above, Subcontractor runs a risk of receiving untimely payment(s).

**3.4  No Payment for Unauthorized Services; Final Payment.** Subcontractor's requests for payment may not include requests for payment of amounts relating to alleged changes in the Services that have not been authorized by a Change Order or Change Directive signed by General Contractor. Notwithstanding anything to the contrary herein, General Contractor may withhold from, or set off against, any payment due to Subcontractor pursuant to this Agreement, any amounts incurred by General Contractor as a result of

Subcontractor's breach of this Agreement or otherwise due to General Contractor from Subcontractor, provided that to the extent such amounts are paid by Subcontractor to General Contractor, the payments withheld or set off based on such amounts shall be made in response to the next submitted (and approved) request for payment.

# 4 CONTRACT SUM

## 4.1 GENERAL

**4.1.1** **Contract Sum.** Except as may be adjusted pursuant to the execution of a written Change Order or Change Directive by General Contractor, and in consideration of Subcontractor's performance of this Agreement, and at the times and subject to the terms and conditions hereinafter set forth, General Contractor shall pay Subcontractor consistent with, and dependent on, the rates defined in **Exhibit A** being met.

**4.1.2** **No Reimbursement for Increases.** By executing this Agreement, Subcontractor acknowledges and agrees that it has fully investigated market prices and available labor in the market. In this regard, all material and/or labor price increases or potential Contract Sum increases shall be anticipated by Subcontractor. Subcontractor shall not be reimbursed for expected or unexpected labor or material increases for the duration of the Project after execution of the Subcontract.

**4.1.3** **Expenses.** All costs and expenses incurred by Subcontractor in providing the Services shall be the responsibility of Subcontractor, unless approved, in writing, in advance, by General Contractor.

**4.1.4** **No Change Except Through Change Order or Change Directive.** Subcontractor shall not make any change in the Services on the Project, and Subcontractor shall not be entitled to any increase or any additional compensation of any kind as a result of any change in the Services, except and only to the extent such change has been authorized in advance and in writing by General Contractor.

# 5 INSURANCE

**5.1 Insurance Policies.** Subcontractor, at Subcontractor's sole cost and expense, shall carry and maintain policies of insurance for workers' compensation, commercial general liability (including completed operations), public liability, equipment loss or damage (including theft), and property damage with companies authorized to do business in the State(s) or Province(s) where the Services will be performed and possessing a minimum A.M. Best rating / Financial Strength of **A / VII**. Prior to commencing the Services, Subcontractor shall furnish to General Contractor copies of such insurance policies in the limits outlined in **Exhibit B** attached hereto.

**5.2 Insurance Limits; Additional Insureds.** Subcontractor shall submit copies of the policies of all such insurance and certificates of insurance in duplicate to General Contractor prior to the commencement of Services. All policies shall contain a waiver of subrogation against General Contractor and Owner. General Contractor shall waive subrogation against Subcontractor to the extent General Contractor's policies of insurance permit. All general liability policies and the required certificates relating thereto shall name General Contractor as additional insured and all policies shall provide that the insurance carrier will give General Contractor thirty (30) days' prior written notice of the expiration or any cancellation or change in coverage of such policies. All such policies of liability insurance shall be on an "occurrence" form covering the full period when all Services required under this Agreement is to be performed. The liability policies maintained by Subcontractor shall name General Contractor, Project owner, the constituent partners of General Contractor, any owners associations having an interest in the property where the Project is located, and their respective partners, directors, officers, shareholders, employees, affiliates, subsidiaries, agents and representatives, as their interests may appear, as additional named insureds ("Additional Insureds"), and shall contain a provision that coverage afforded under the policies will not be cancelled nor failed to be renewed without at least thirty (30) days' prior written notice given to General Contractor.

///

# 6 SCOPE OF SERVICES

## 6.1 GENERAL

**6.1.1** **Protect the Project.** Subcontractor shall take all necessary precautions to protect the work of other subcontractors from damage caused by Subcontractor's operations under this Agreement and shall carry insurance to protect the Project, the equipment and personnel, including, but not limited to, the insurance required by General Contractor as set forth on __Exhibit B__ attached hereto and incorporated herein as if set forth herein.

**6.1.2** **Communication.** All communication between Subcontractor and Account shall be via General Contractor. Subcontractor shall furnish General Contractor with period progress reports as required and requested, at the sole discretion of General Contractor, including status of Services.

## 6.2 PERFORMANCE OF THE SERVICES

**6.2.1** **Good and Workmanlike Manner.** Subcontractor represents that it possesses experience and knowledge in providing professional services of the same type and nature as the Services required by this Agreement. The Services provided by Subcontractor shall be performed in a manner consistent with standards of skill, care, and diligence applicable to a subcontractor of comparable experience and knowledge in similar circumstances. Subcontractor agrees that (i) all Services will be performed in a good, professional, and workmanlike manner, (ii) Subcontractor will perform each portion of all of the Services provided for hereunder in accordance with the scheduling requirements of General Contractor, and (iii) Services will be performed in conformance with the requirements of this Agreement. Subcontractor shall correct any damage to the Project caused by Subcontractor's personnel at Subcontractor's own expense and without cost to General Contractor and without interruption to Project owner's occupancy or use of the Project.

**6.2.2** **Performance.** Subcontractor shall, at all times: (1) supply adequate equipment, and identification; (2) employ properly skilled and trained personnel as may be necessary to perform the Services as outlined in __Exhibit A__; (3) maintain all licensing and bonding for it and its employees; (4) timely pay for all equipment and labor furnished or used by Subcontractor in the Services; (5) timely pay all workers each week; and (6) in all aspects complete fully, timely and properly the Services in accordance with this Agreement. Any additional services performed by Subcontractor without the prior written permission of Company will be deemed part of the basic services set forth on __Exhibit A__, and Subcontractor will not be entitled to any additional compensation for such additional services.

**6.2.3** **Personnel; Prepared to Work.** Subcontractor's personnel will arrive at the Site prepared to conduct Subcontractor's Services, and the personnel will have been apprised by Subcontractor of their tasks prior to arrival. Subcontractor's personnel will be prepared with the uniform and equipment needed to perform the Services.

**6.2.4** **Subcontractor's Obligations.** Subcontractor covenants and agrees that:

> 6.2.4.1 All personnel under the Subcontractor's supervision utilized in this Agreement in the performance of Services shall be carefully screened, interviewed, reference checked, fingerprinted, and shall be qualified to act in accordance with all applicable federal, state, and local laws, rules, and regulations. Subcontractor shall select Off Duty Police Officer Security Officers with due diligence standard in the security guard industry and perform a background check of each Off Duty Police Officer Security Officer before extending an offer of employment. The background check will include contacting previous employers, a reference check, and a nationwide criminal records check. Off Duty Police Officer Security Officers must undergo periodic random drug testing and shall be qualified to act in accordance with all applicable federal, state, and local laws, rules, and regulations;

> 6.2.4.2 Subcontractor shall supply competent supervisory personnel and the equipment set forth in __Exhibit A__ for the performance of all Services;

6.2.4.3  Subcontractor warrants that all employees and 1099 workers of Subcontractor shall use protective equipment while performing Services;

6.2.4.4  Subcontractor shall maintain a log or record at each location Subcontractor provides Services and shall promptly record therein any incidents and unusual occurrences. Subcontractor shall maintain all books and records, including employee files, log books, and incident reports, for a period of five (5) years after the termination of this Agreement and shall provide to General Contractor upon request, full access to and copies of all such books, records, and files during regular business hours;

6.2.4.5  Subcontractor shall abide by all rules, regulations, and post orders which are applicable to General Contractor's operations;

6.2.4.6  Subcontractor shall comply with all laws, ordinances, codes, rules, and regulations relating to the performance of the Services. Subcontractor shall obtain, at Subcontractor's own cost and expense, all necessary permits or licenses required for the performance of the Services;

6.2.4.7  During the term of this Agreement and for a period of two (2) years commencing on the expiration or termination of this Agreement for any reason whatsoever, Subcontractor shall not directly or indirectly approach, solicit, or accept business from or otherwise do business as it pertains to Account to whom Subcontractor renders Services hereunder;

6.2.4.8  With respect to its personnel and all payroll taxes levied against payroll by federal, state, and local taxing authorities, Subcontractor shall not encumber or assign any monies due hereunder to any third party without General Contractor's prior written approval; and

6.2.4.9  Subcontractor shall not seek any monies or payment directly from the Account.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

AMERICAN GUARD SERVICES, INC.

GENERAL CONTRACTOR:

By: _____

Name:  Adolfo Avendano

Title:  Executive Vice President

Date:  01/01/2020

VETS SECURING AMERICAN, INC.

GENERAL CONTRACTOR:

By: _____

Name:  Gerald Gregory

Title:  Vice President

Date:  01/01/2020

SEVEN SAFE SERVICES

SUBCONTRACTOR

By:  LESTER BONNELL

Name: _____

Title:  OWNER

Date:  1 / 1 / 2020

SEVEN SAFE SERVICES

SUBCONTRACTOR

By: _____

Name: _____

Title:  OPERATION Manager

Date:  1 / 1 / 2020

# EXHIBIT A – SCOPE OF SERVICES

Subcontractor shall provide and furnish, at its own cost and expense, all labor, supplies, equipment, services, supervision, insurance, administration, and all other items necessary or required for the proper and complete performance and acceptance of the following portions of the work, the Services.

Subcontractor will provide off duty police officer security officers at various locations, including but not limited to the following service locations during the following times pursuant to the attached Post Orders:

**Service Locations:**

1. Food 4 Less locations in Southern California ("F4L SCA");

2. Food Co locations in Northern California ("FC NCA"); and

3. Ralph's locations in Southern California ("Ralphs SCA").

**Service Hours:**

1. Various hours

**Service Rates:**

1. Food 4 Less locations in Southern California ("F4L SCA"): $~~40.00~~ $45.00 per hour;

2. Food Co locations in Northern California ("FC NCA"): $~~53.00~~ $55.00 per hour; and

3. Ralph's locations in Southern California ("Ralphs SCA"): $~~40.00~~ $45.00 per hour.

# EXHIBIT B – REQUIRED INSURANCE COVERAGE FOR SUBCONTRACTOR

American Guard Services, Inc. and/or their affiliates and subsidiaries and Vets Securing America, Inc. and/or their affiliates and subsidiaries may require higher insurance coverage limits and/or different coverages for certain product and service providers.

| Underwritten by insurance companies with an A.M. Best rating / Financial Strength of **A / VII** or higher |
| --- |

| Must be shown as an additional wording on Certificates:<br><br>- "American Guard Services, Inc. and AGS' Affiliates and Subsidiaries are Additional Insureds"<br>- "Vets Securing America, Inc. and VSA's Affilitates and Subsidiaries are Additional Insureds"<br>- "Primary and Non-Contributory" (except Workers' Compensation<br>- Waiver for Subrogation in favor of American Guard Services, Inc.<br>- Waiver for Subrogation in favor of Vets Securing America, Inc. | Certificate Holder Address:<br><br>American Guard Services, Inc. and AGS' Affiliates and Subsidiaries<br>1125 W. 190th Street<br>Gardena, CA 90248<br><br>Vets Securing America, Inc. and VSA's Affiliates and Subsidiaries<br>1125 W. 190th Street<br>Gardena, CA 90248 |
| --- | --- |

| Must be shown as additional wording on Certificate: All insurance policies excluding workers' compensation shall be "primary and non-contributory". |
| --- |

**General Liability**

| | |
| --- | --- |
| Commerical General Liability | Yes |
| Occurance Basis | Yes |
| Security Guard Professional Coverage | Yes |
| Additional Insured – Vendors | Yes |
| Each Occurance | $3,000,000 |

The following coverages are required if services are provided by vendor on the Project premises or as otherwise required by the Account.

**Auto Liability**

| | |
| --- | --- |
| Any Auto | Yes |
| Combined Single Limit – Bodily Injury and Property Damage | $2,000,000 |

*Note: As it concerns Auto Liability, a combination of "All Owned Autos, Hired Autos, and Non-Owned Autos" OR "Scheduled Autos, Hired Autos, and Non-Owned Autos" is acceptable.*

**Workers' Compensation**

| Statutory Limits | Yes |
|---|---|

*Note: Waiver of subrogation in favor of American Guard Services, Inc. and Vets Securing America, Inc. must be shown on the certificate.*

**Employer's Liability**

| Each Accident | $1,000,000 |
|---|---|
| Disease Policy Limit | $1,000,000 |
| Disease Each Employee | $1,000,000 |

*Note: a) Required coverage limits can be achieved through a combination of your each occurance limit of Primary and Umbrella or Excess Liability Insurance; b) In certain instances, "Claims Made" policies may be acceptable, consult with American Guard Services, Inc.'s and Vets Securing America, Inc.'s Certificate Administrator to validate exceptions.*

# POST ORDERS

EXHIBIT 17

# AMENDMENT TO MASTER SERVICES AGREEMENT

This Amendment to the Master Services Agreement ("Amendment") is between Ralphs Grocery Company, an Ohio Corporation ("Ralphs"), and American Guard Service ("AGS").  This Amendment is effective as of the Effective Date (defined below) and states the terms and conditions on which AGS, as an independent contractor, has agreed to perform.

### 1.    DEFINITIONS

"Effective Date" means, with reference to this Amendment, the date that the Master Services Agreement is agreed to by the parties.

### 2.    PERFORMANCE OF SERVICES

In addition to the obligations AGS has agreed to in the Master Services Agreement, AGS will make two payments of twenty six thousand dollars ($26,000.00) to Ralphs in 2017 and 2018.  The first payment of twenty six thousand dollars ($26,000.00) will be on or before January 10, 2017.  The second payment of twenty six thousand dollars ($26,000.00) will be made on or before January 10, 2018.

Payments should be sent to the following:

Ralphs Grocery Company
Controller
1100 W. Artesia Blvd.
Compton, CA 90220

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

American Guard Services

By: _____

Title: Vice President

Date: 6/8/16


The Kroger Co.

By: _____

Title:  Vice President – Indirect Sourcing

Date:  6/11/2016

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\Amendment to Master Services Agreement (3).doc    1

168

# MASTER SERVICES AGREEMENT

This Master Services Agreement ("Agreement") is between The Kroger Co., an Ohio corporation, on behalf of its subsidiaries and affiliates ("Kroger"), and American Guard Services, a California corporation ("Vendor"). This Agreement is effective as of the Effective Date (defined below) and states the terms and conditions on which Vendor, as an independent contractor, will provide services to Kroger.

## 1. DEFINITIONS

Unless elsewhere defined in this Agreement, capitalized words and terms used in this Agreement have the meanings set forth below in this Section 1.

1. "Vendor Personnel" means an officer, director, partner, employee, or agent, but not an independent contractor, of Vendor.

2. "Effective Date" means, with reference to this Agreement, the date on which the last of both parties have signed this Agreement.

3. "Services" means all services performed by Vendor under this Agreement.

4. "Kroger location" means all Kroger locations at which Vendor will perform the Services under this Agreement.

## 2. PERFORMANCE OF SERVICES

Vendor will diligently, efficiently and in a highly professional manner provide all materials and labor to perform the Services described in Exhibit A and Exhibit E.

## 3. VENDOR PERSONNEL

3.1    No Independent Contractors.  The Services provided by Vendor will be performed only by employees of Vendor.  No independent contractors will be assigned to perform the Services without the prior written approval of Kroger.

3.2    Supervision.  Vendor is solely responsible for the actions of Vendor Personnel and for the supervision, daily direction and control, payment of salary (including withholding of income taxes and social security), worker's compensation, disability and the like for Vendor Personnel.  Nothing in this Agreement will be construed as granting to any Vendor Personnel any rights under any employee benefit plans offered by Kroger or by any company affiliated with Kroger.

3.3 <u>Immigration Laws</u>. Vendor represents and warrants to Kroger that all Vendor Personnel performing work in the United States under this Agreement are legally eligible for employment in the U.S.A. under the United States Immigration Laws. Vendor will require and review, prior to each non-U.S. citizen employee's assignment, documentation establishing such eligibility for all Vendor Personnel who perform Services under this Agreement.

## 4. COMPENSATION

4.1 <u>Fees</u>. Kroger will pay to Vendor the applicable fees, subject to any limitations on total fees specified in Exhibit C. Payment of the applicable fees is payment in full for Vendor's provision of the Services.

4.2 <u>Invoice and Payment</u>. Vendor will invoice Kroger on a monthly basis by submitting to Kroger a complete invoice and Kroger will pay properly invoiced amounts within forty-five (45) days after receipt of the invoice.

4.3 <u>Books and Records</u>. Vendor will maintain complete and accurate accounting records, in a form in accordance with generally accepted accounting practices, consistently applied, to substantiate Vendor's charges and performance of its obligations hereunder and will provide Kroger and its employees access to such records during normal business hours and the right to make copies. Such records will include payroll records, job cards, attendance cards and job summaries, and Vendor will retain such records for the period of three years from the date of the invoice.

## 5. CONFIDENTIALITY

5.1 <u>Nondisclosure</u>. During the term of this Agreement and at all times thereafter, Vendor will not disclose Confidential Information (defined below) to third parties or use Confidential Information for any purpose whatsoever except for the purpose of performing Services on behalf of Kroger under this Agreement. "Confidential Information" is information however delivered, disclosed or discovered during the term of this Agreement, that Vendor has, or in the exercise of ordinary prudence should have, reason to believe is confidential or that Kroger designates as confidential, including, but not limited to, information relating to Kroger's prospective and existing customer lists, operations, facilities, computer systems, computer terminals, programs, systems design, communications networks, finances, product development plans, business processes, and business directions or marketing plans. In addition, Vendor agrees that the terms, conditions and subject matter of this Agreement are Confidential Information. Confidential Information does not include

2

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

170

information that has ceased to be confidential by reason of any of the following:

(i)     Vendor already had such information in its possession prior to being retained by Kroger, and such information was acquired without restriction through sources other than Kroger;

(ii)    The information has become generally available to the public other than through disclosure by Vendor; or

(iii)   The information is disclosed by Vendor pursuant to the prior written permission of Kroger.

5.2     <u>Cooperation</u>.  Vendor warrants that it has entered into a nondisclosure agreement with each of its employees, including, but not limited to, the Vendor Personnel who will have or may have access to Confidential Information and that such agreement contains adequate provisions for the protection of Confidential Information.  Vendor will fully assist Kroger in all matters relating to the protection from unauthorized disclosure of Confidential Information (e.g., reminding Vendor Personnel of their nondisclosure obligations during employment and at exit interviews, notifying Kroger immediately upon the discovery of any Vendor Personnel's alleged breach of his/her obligations, and providing all reasonable assistance to Kroger in any proceeding brought by Kroger to prevent disclosure or further disclosure of Confidential Information).

5.3     <u>Vendor Information</u>.  In providing Services under this Agreement, Vendor understands that Kroger does not desire to receive from Vendor any information that may be considered confidential and/or proprietary to Vendor and/or to any third party.  Unless otherwise specified in a separate agreement, Vendor represents and warrants that any information disclosed by Vendor to Kroger is not confidential and/or proprietary to Vendor and/or to any third party, and that Kroger will be free to use and disclose the information without limitation.

## 6. VENDOR'S REPRESENTATIONS AND WARRANTIES

6.1     Vendor represents and warrants to Kroger that

(i)  all Services rendered under this Agreement will be performed in a highly professional manner and will comply with the standards and service levels set forth in Exhibit A and Exhibit E;

3

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

171

(ii) all Services rendered under this Agreement and all actions of Vendor related to this Agreement will comply with all laws, ordinances, codes, rules and regulations, both domestic and foreign;

(iii) all Services rendered under this Agreement and all actions of Vendor related to this Agreement will comply with all standards and policies of Kroger; and

(iv) Vendor is under no obligation or restriction nor will it assume any obligation or restriction that would in any way interfere or be inconsistent with, or present a conflict of interest concerning, the Services to be furnished by Vendor under this Agreement.

## 7. INDEMNIFICATION AND INSURANCE

7.1     <u>Indemnification</u>.  Vendor will indemnify and hold Kroger harmless from and against all suits, proceedings at law or in equity, claims, liabilities, costs, payments and expenses (including reasonable attorneys' fees) asserted against Kroger or incurred by Kroger, arising out of or in connection with (i) Vendor's breach of this Agreement, (ii) any claim for damages to property or injuries to persons caused by or resulting from the willful or negligent acts or omissions of Vendor Personnel, or (iii) any claim by any third party regarding or caused by the Services.

Vendor will notify Kroger immediately in the event either injuries to Vendor Personnel, injuries to a third party, or damage to Kroger property that arises out of the performance of the Services.

The scope of this defense and indemnity provision shall include claims by and on behalf of Kroger, employees, agents, representatives, guests, customers, licensees and invitees of Kroger, other vendors, employees, agents, representatives, licensees and invitees of other vendors, any local, state or federal government entity and all third parties who are injured or damages by or as a result of Vendor's services, Vendor's employees, guests, subcontractors, agents or representatives, or by vehicles or equipment utilized by or related to Vendor's services subject to this Agreement.  Vendor's duty to defend and indemnify Kroger shall not be compromised, modified or reduced by any partial negligence or fault (active or passive), of Kroger's employees, agents, representatives, invitees, guests, customers, licensees, vendors or subcontractors or any other person, entity or party.  Such duties are not dependent upon a final determination by any arbitrator, judge or trier of fact, but arise immediately upon the receipt of notice from Kroger, or any authorized representative. Vendor's duty to defend and indemnify Kroger shall not include claims arising out of the sole negligence or willful misconduct of Kroger.

4

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

172

7.2    <u>Insurance</u>.  Vendor will maintain at all times while providing the Services to Kroger, at Vendor's own cost and expense, insurance coverage of the types and in such amounts as described in Exhibit B with a company that has an A.M. Best rating of "A-" or better.  Vendor may comply with the required "*per occurrence*" limit through a combination of Primary and Excess Liability insurance policies.  The insurance must be primary and not excess or contributing with any insurance or self-insurance maintained by Kroger. Vendor will deliver to Kroger, prior to performing Services, a Certificate of Insurance including "The Kroger Co. and Kroger's Affiliates and Subsidiaries" as additional insureds.  Such additional insured status may be given by either an additional insured endorsement or blanket additional insured coverage built into the Vendor's General Liability policy form.  The Certificate of Insurance must identify all self-insured retentions and/or deductibles to the current ISO general liability policy.  Vendor must provide a minimum of ten (10) calendar days advance written notice should said insurance be cancelled (voluntarily or otherwise) or expire.  In the event of cancellation or expiration of said insurance during the period of time insurance coverage is required under this Agreement, Vendor must provide proof of replacement insurance a minimum of ten (10) days in advance of the effective date of such cancellation or expiration.  Failure to provide such proof of insurance will result in payments being withheld by Kroger until such time as such proof of replacement insurance is received.   If payment to Vendor is delayed by Vendor's failure to furnish Kroger with acceptable proof of insurance, Vendor acknowledges that no discount terms previously negotiated with Kroger will be lost, revoked, denied, or reduced, and Kroger will continue to enjoy such negotiated discounts to such extent as if payment were made with the time period necessary to obtain them.

7.3    <u>Vendor Personnel Claims</u>.    As to any claim made against Kroger, Vendor expressly waives any insulation from liability or immunity from suit with respect to injuries to Vendor's employees,    including Vendor Personnel, that may be extended to Vendor as a result of any payments made by Vendor to such Vendor Personnel or under any applicable worker's compensation statute or similar law or judicial decision.   It is further agreed and affirmed that Vendor will hold harmless Kroger from and against any claims made by any Vendor Personnel, while at any Kroger location (the term "Kroger location" not being limited to any store, manufacturing plant or distribution center, but encompassing Kroger and all of its affiliates and subsidiaries and their facilities), unless such claim was the result of the sole negligence and/or willful misconduct of Kroger. Further, Kroger will be held harmless from any worker's compensation liens incurred from Vendor's insurance carrier, third party administrator or self-administered, self-insured claims program(s).  Vendor acknowledges that this provision is a reasonable request from Kroger and being agreed

5

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016
173

to by Vendor in order to give Vendor Personnel access to Kroger locations.

## 8. TERM AND TERMINATION

8.1 <u>Term</u>. This Agreement will remain in effect for an initial term of 12 months after the Effective Date and will automatically renew for consecutive 12 month renewal terms. Either Party may terminate this Agreement during the initial term or any renewal term upon 30 days prior written notice to the other.

8.2 <u>Termination With Cause</u>. Notwithstanding anything to the contrary above, Kroger may terminate this Agreement immediately upon no less than twenty-four (24) hours written notice in the event (a) Vendor or Vendor Personnel have participated in fraud or criminal misconduct relating to the provision of the Services, or (b) if Vendor or any of its officers, directors, or key employees is convicted of or pleads guilty or *nolo contendere* to a charge of any felony, or any law, the violation of which will adversely affect the Kroger location, any Confidential Information of Kroger, or the reputation of Kroger.

8.3 <u>Survival</u>. Notwithstanding any termination of this Agreement, the sections of this Agreement captioned, "Confidentiality", "Vendor's Representations and Warranties", "Indemnification and Insurance" and "Limitation of Liabilities" will survive termination and remain in full force and effect.

## 9. LIMITATION OF LIABILITIES

IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT, PROVIDED, HOWEVER, THAT THIS LIMITATION OF LIABILITY DOES NOT APPLY TO ANY LIABILITIES OF VENDOR TO KROGER UNDER THE SECTIONS OF THIS AGREEMENT CAPTIONED, "CONFIDENTIALITY," "VENDOR'S REPRESENTATIONS AND WARRANTIES," AND "INDEMNIFICATION AND INSURANCE".

## 10. TAXES

Vendor will have sole responsibility for payment of all federal, state and local taxes or contributions imposed or required under unemployment insurance, social security and income tax laws and for filing all required tax forms with respect to any amounts paid by Kroger to Vendor hereunder and any amounts paid by Vendor to its employees, including Vendor Personnel. Vendor will indemnify and hold Kroger harmless against any claim or liability (including penalties) resulting from failure of

DocuSign Envelope ID: 5F882565-19D2-4A59-8786-6E22E4E4B559

Vendor to pay such taxes or contributions, or failure of Vendor to file any such tax forms.

## 11. NOTICES

Any notices required or permitted by this Agreement will be in writing and addressed to the Party to receive such notice at its corresponding address, as follows:

To Vendor:                                    To Kroger:

_____          _____

Attn: _____          Attn: _____

_____          _____

_____          _____

With a copy to:

The Kroger Co.
Attn: Law Department
1014 Vine Street
Cincinnati, Ohio 45202

Notices will be deemed given on the date deposited in the mail, if mailed. Either party may change its address set forth above by notifying the other party of its new address in writing.

## 12. APPLICABLE LAW AND ARBITRATION

12.1    Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of Ohio as applicable to agreements made and wholly performed within that state regardless of the place, time, or sequence of its execution.  The parties agree that the laws of the State of Ohio will apply despite any choice of law statute, rule, or precedent that would apply the law of any other jurisdiction.

12.2    Arbitration.  Any controversy or claim arising out of or relating to this Agreement, other than any controversy or claim relating to either party's confidentiality obligations which are excepted from this arbitration provision, will be settled by binding arbitration conducted before a single arbitrator who is knowledgeable in the field of law, business or technology that is the subject of this Agreement.  The site of any such arbitration will be Cincinnati, Ohio, U.S.A.  The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American

7

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

175

Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party will bear its own costs and expenses, including fees and expenses of counsel, associated with the arbitration.

## 13. CODE OF CONDUCT AND LEGAL COMPLIANCE

Vendor warrants that the Services will be performed in compliance with (i) all applicable requirements of the Fair Labor Standards Act, as amended, including Sections 6, 7 and 12 thereof, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof; (ii) the Occupational Safety and Health Act; (iii) Title VII of the Civil Rights Act of 1964, as amended; (iv) the Immigration Reform and Control Act; (v) related state laws; and (vi) the workers' compensation laws. Vendor represents and warrants that Vendor and its contractors are not engaged in and will not engage in any labor practice in violation of the laws or regulations of the country of performance of the services, including those involving unsanitary and/or unsafe labor conditions. If Kroger determines that Vendor or its contractors have failed to comply with the foregoing, Kroger will be entitled to immediately terminate this Agreement without liability.

The following Code of Conduct is an integral part of this Agreement, the terms of which must be followed by Vendor and its contractors:

a. Child, indentured, involuntary, or prison labor must not be used or supported.

b. Workers may not be exposed to unreasonably hazardous, unsafe, or unhealthy conditions.

c. Workers may not be unlawfully discriminated against on the basis of race, color, religion, gender, national origin, age, disability or sexual orientation.

d. The workplace must be free from harassment, which includes sexually coercive, threatening, abusive, or exploitive conduct or behavior or harassment because of one's race, color, religion, gender, national origin, age, disability or sexual orientation.

e. Workers at all time must be treated fairly, with dignity and respect.

f. Wages paid to workers must meet or exceed legal and industry standards. Vendor may petition Kroger Corporate Loss Prevention for increased compensation (on a direct penny-pass-through cost basis) for statutory federal, state, or local government mandated increases. Petitions must be clearly documented to justify any rate increase. All

8

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

176

DocuSign Envelope ID: 9F682F55D19D2E4A5DC8786E5E22E4E4B559

petitions must be submitted in writing, with at least 30 days' notice.  Any rate increases/adjustments MUST be pre-approved by Kroger Corporate Loss Prevention.

g.  Vendor may not engage in any conduct likely, intending, or appearing to improperly influence any Kroger representatives in the performance of their job responsibilities.  Bribes, cash payments, and business gifts and entertainment of more than token value expressly are prohibited.  Vendor must refrain from engaging in any conduct that may appear improper or may result in a conflict of interest when viewed from Kroger's point of view.

h.  Vendor and its contractors must maintain written records evidencing compliance with the provisions of this Code of Conduct and must make those records available to Kroger upon request.

## 14. BUSINESS CONTINUITY PROGRAM MANAGEMENT

Vendor will maintain a comprehensive Business Continuity Program sponsored and supported by executive management that includes Business Continuity Plans to recover critical business functions; Disaster Recovery Plans to recover technology; and a Crisis Management Plan for the overall management of events that may significantly affect Vendor's ability provide services.  Vendor will test each of these plans on an annual basis and provide to Kroger a summary of test results upon request.  Vendor will provide annually to Kroger an executive attestation to the validity of Vendor's business continuity program.  In circumstances where Vendor experiences a disruption in the Vendor's ability to provide Services to Kroger, Vendor will notify the designated Kroger contact immediately.  Vendor will comply with all other requirements set forth in Exhibit D.

## 15. MISCELLANEOUS

15.1   <u>Assignment</u>.  This Agreement will be binding upon, and will inure to the benefit of the parties and their respective successors and assigns.  The obligations under this Agreement may not be assigned, delegated or subcontracted by either party without the prior written consent of the other party, except that Kroger may assign this Agreement to any successor-in-interest to all or substantially all of its business, or to any individual or entity who acquires that portion of the assets of Kroger that relate to this Agreement.

15.2   <u>Independent Contractor</u>.  Vendor and Kroger are and will always remain independent contractors.

15.3   <u>Integrated Agreement</u>.   This Agreement constitutes the complete integrated agreement between the parties concerning the subject matter

9

hereof.    All  prior  agreements,  understandings,  negotiations,  or representations, whether oral or in writing, relating to the subject matter of this Agreement are superseded and canceled in their entirety.

15.4    Amendments.  This Agreement may not be amended or supplemented, nor any of the provisions hereof waived, except by an agreement in writing signed by a duly authorized officer of Vendor and Kroger dated after the Effective Date.

15.5    Force Majeure. Kroger excuses Vendor from nonperformance caused by acts of God, unforeseeable occurences or other force majeure events such as governmental or administrative prohibitions, acts of public enemy, riot, accidents, delivery interruptions, or other causes beyond Vendor's control, but Vendor agrees it is not excused by unexpected difficulty or commercial impracticality of any degree.  Kroger reserves the right to terminate this Agreement and shall have no obligation to pay for Services not rendered in the event that Kroger's business or operations are discontinued in whole or part by reason of fire, flood, earthquake, war, civil disorder or any other act or event beyond Kroger's reasonable control.

15.6    Waiver.   The failure of either party to give notice of nonperformance, breach, or termination, or to otherwise enforce any rights hereunder, will not constitute a waiver of any terms or conditions of this Agreement.

15.7    Headings.  Titles or captions contained in this Agreement are inserted only for convenient reference, and in no way define or limit the scope or intent of this Agreement or any provision hereof.

15.8    Severability.  If any provision of this Agreement is adjudged to be invalid, void, or unenforceable, the parties agree that the remaining provisions of this Agreement will not be affected thereby, that the provision in question may be replaced by the lawful provision that most nearly embodies the original intention of the parties, and that this Agreement will in any event otherwise remain valid and enforceable.

15.9    Publicity.  Each party will inform and obtain the approval of the other party prior to making any public announcement, through press releases or otherwise, concerning this Agreement or any activities under this Agreement.

15.10   Use of the Singular and the Plural.  Where the context so requires, the singular will include the plural and the plural the singular.

15.11   Supplier Diversity.    Kroger is committed to providing meaningful opportunities for minority-owned businesses ("MBE" – minority-owned business enterprises) and women-owned companies ("WBE" – women-

10

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

178

Vendor to pay such taxes or contributions, or failure of Vendor to file any such tax forms.

## 11. NOTICES

Any notices required or permitted by this Agreement will be in writing and addressed to the Party to receive such notice at its corresponding address, as follows:

To Vendor:                                    To Kroger:

American Guard Services              _____
Attn: Adolfo Avendano                 Attn: _____
1299 East Artesia Blvd                 _____
Carson, CA 90746                        _____

With a copy to:

The Kroger Co.
Attn: Law Department
1014 Vine Street
Cincinnati, Ohio 45202

Notices will be deemed given on the date deposited in the mail, if mailed. Either party may change its address set forth above by notifying the other party of its new address in writing.

## 12. APPLICABLE LAW AND ARBITRATION

12.1    Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of Ohio as applicable to agreements made and wholly performed within that state regardless of the place, time, or sequence of its execution.  The parties agree that the laws of the State of Ohio will apply despite any choice of law statute, rule, or precedent that would apply the law of any other jurisdiction.

12.2    Arbitration.  Any controversy or claim arising out of or relating to this Agreement, other than any controversy or claim relating to either party's confidentiality obligations which are excepted from this arbitration provision, will be settled by binding arbitration conducted before a single arbitrator who is knowledgeable in the field of law, business or technology that is the subject of this Agreement.  The site of any such arbitration will be Cincinnati, Ohio, U.S.A.  The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American

owned business enterprises) to be our business partners. Kroger carries out this commitment in many ways, including on-going efforts to identify and track expenditures with MBEs and WBEs. Vendor will supply to Kroger upon Kroger's request MBE and WBE information about Vendor's organization and entities with whom Vendor does business.

15.12 <u>Records and Audit</u>. Vendor will, at all times during the Term of this Master Agreement, and for a period of two (2) years after termination, keep accurate books and records at its place of business with regard to invoices submitted to, and payments received from, Kroger. Kroger, or its duly authorized representative, will have the right, during the Term and for two (2) years after termination, to audit such books and records, not more than once each calendar year. Any such audit will be permitted upon at least thirty (30) days' prior written request to Vendor. If the audit reveals an underpayment by Kroger, Kroger will pay the amount due within a reasonable time. If an audit reveals an overpayment by Kroger, the Vendor, no later than thirty (30) days following the discovery of the overpayment, will pay Kroger the amount overpaid, plus interest, at a rate equal to the prime rate published in the Wall Street Journal, plus 200 basis points, per annum.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

THE KROGER CO.

By: _____

Title: Vice President – Indirect Sourcing

Date: 6/11/2016

VENDOR: American Guard Services

By: _____

Title: Vice President

Date: 6/8/16

Federal Tax I.D. Number: 95-4654353

11

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

180

# EXHIBIT A

# SERVICES

1) Vendor agrees to furnish Services to Kroger at the Kroger locations designated in writing by Kroger.  Kroger may terminate Services at any Kroger location upon giving written notice of cancellation to Vendor and no additional fees will be paid to Vendor as of the cancellation date.

2) Kroger agrees to provide Vendor with the necessary access to Kroger locations and will cooperate with Vendor to allow provision of the Services in an effective manner.

3) Vendor shall provide such number of uniformed guards as may from time to time be required by Kroger, and understands and agrees that the number of guard posts, their location, guards and the hours and nature of guard's duties may vary from time to time to meet Kroger's requirements.

4) Kroger may request Vendor to remove any guard from Kroger's premises any time it desires and for any reason whatsoever.

5) Vendor's sole duties are to help Kroger deter criminal activity, including theft, by providing guards and security personnel that shall remain alert and observant at all times.  Vendor's guards and security personnel shall not be required to engage in any physical touching of any persons as part of their duties and shall report life threatening situations to law enforcement and all other criminal activity to store management.  Vendor's personnel will offer reasonable assistance to Kroger employees but only to prevent injury to that employee.

6) As agreed to by the parties and with reasonable notice from Kroger, Vendor shall provide operational data to Kroger, in sufficient detail to enable Kroger to analyze Vendor's performance.

7) Vendor will provide Services with sufficient hours of coverage to accommodate Kroger's needs.  Vendor will provide reasonable and timely response to Kroger's reasonable special needs.

8) Vendor will adhere to the philosophy of continual process improvement and will meet with Kroger to discuss reasonable measurable performance indicators to improve service and reduce cost.

12

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

181



## EXHIBIT B
## Security Guard Services -  Insurance Requirements

**The Kroger Co. and/or Kroger's affiliates and subsidiaries may require higher insurance coverage limits and/or different coverages for certain product and service providers.**

| Underwritten by insurance companies rated A- or higher by A.M. Best |
| --- |

| Must be shown as additional wording on Certificates: <br> > "The Kroger Co. and Kroger's Affiliates and Subsidiaries are Additional Insureds" <br> > "Primary and Non-Contributory" (except Workers' Compensation) <br> > Waiver of Subrogation in favor of The Kroger Co. | Certificate Holder Name and Address: <br> **The Kroger Co. and Kroger's affiliates and subsidiaries** <br> **C/o Ebix BPO** <br> **PO Box 12010-12** <br> **Hemet, CA 92546-8010** |
| --- | --- |

| Must be shown as additional wording on Certificate:  All insurance policies excluding workers compensation shall be "primary & non-contributory" |
| --- |

**General Liability**

| Commercial General Liability | Yes |
| --- | --- |
| Occurrence Basis | Yes |
| Security Guard Professional Coverage | Yes |
| Additional Insured – Vendors | Yes |
| Each Occurrence | 3,000,000 |

The following coverages are required if services are provided by vendor on The Kroger Co. premises, or as otherwise required by The Kroger Co.:

**Auto Liability**

| Any Auto | Yes |
| --- | --- |
| Combined Single Limit – <br> Bodily Injury & Property Damage | 2,000,000 |

*Note: As it concerns Auto Liability, a combination of "All Owned Autos, Hired Autos & Non-Owned Autos" OR "Scheduled Autos, Hired Autos & Non-Owned Autos" is acceptable*

**Workers Compensation**

| Statutory Limits | Yes |
| --- | --- |

**Employers Liability**

| Each Accident | 1,000,000 |
| --- | --- |
| Disease    Policy Limit | 1,000,000 |
| Disease    Each Employee | 1,000,000 |

*Note:  a) Required coverage limits can be achieved through a combination of your each occurrence limit of Primary & Umbrella  or Excess  Liability Insurance;  b) In certain instances, "Claims Made" policies may be acceptable, consult with the Ebix BPO Kroger Certificate Administrator to validate exceptions.*

**ONLY FAX your Compliant Certificate to Kroger's Certificate Administrator – Ebix BPO @ 1-888-720-3834.**

For Questions, please contact:

| Contact Name: | Contact Title / Company: | Contact Phone: | Contact e-Mail: |
| --- | --- | --- | --- |
| Jim Aalberg | VP Corporate Insurance – Kroger | 1-503-797-5300 | jim.aalberg@kroger.com |
| Ed Bird | Insurance Analyst – Kroger | 1-503-797-3318 | edward.bird@kroger.com |
| Jan Stage | Kroger Certificate Administrator – Ebix BPO | 1-619-407-7348 | Jan.stage@ebix.com |

13

DocuSign Envelope ID: 5F882565D19D2C4A50C8786C5E22E454B559

## EXHIBIT C (ATTACHMENT)

## FEE SCHEDULE (SEE ATTACHMED)

| Service | Hourly Rate | Hourly Holiday/OT Rate |
|---|---|---|
| Unarmed Security Officer | | |
| Shift Supervisor | | |
| | | |

### Maximum of _____ hours per week

Each invoice will include a detailed list of Services completed, including the date and location of the Services.  Vendor will support its invoicing with detailed Service reports by Kroger location.  Invoices shall be submitted ONLY as one consolidated invoice. Services will be invoiced and paid as provided in the Agreement.

Kroger reserves the right to reduce payment for any Services that are not performed in accordance with this Agreement.

DocuSign Envelope ID: BF882565D19D2E4A50C8786C5E22E4F4B559

## EXHIBIT D

## CONTRACT REQUIREMENTS FOR CRITICAL VENDORS

Vendor has been identified by Kroger as a supplier of critical services, products, or technology.  As such, Vendor agrees to:

1. Have a comprehensive business continuity program that cover all critical areas of the company
2. Have documented plans that include the identification of recovery teams, recovery tasks and resource needs for:
   a. The recovery of business functions - Business Continuity Plans (BCP);
   b. The recovery of technology - Disaster Recovery plans (DR)
   c. Crisis Management (CM) for coordination of recovery
   d. Pandemic Plans for loss of people at a 30-40% loss level
3. Test BCP, DR and CM plans at least annually
4. Provide Kroger the Recovery Time Objective (RTO) and Recovery Time Capability (RTC) for all systems required to provide the service associated with the contract
5. Provide upon request the most recent summary of test results that validate RTC for all systems required to provide the services associated with the contract
6. Notify Kroger if Vendor experiences a disruption impacting the Vendor's ability to provide the associated service to Kroger and to implement Vendor's appropriate BCP, DR, CM or Pandemic plan
7. Provide Kroger annually an executive attestation to the validity of its BCP
8. Provide Kroger with a right to audit documents that show scope and content of the above

**Recovery Time Capability** is defined as the amount of time a system or service was actually recovered as a result of a test.  Alternately, this may be the amount of time the Vendor commits to the recovery based on its BCP/DR capabilities.

**Recovery Time Objective** is defined in hours as the amount of time a business function or process can be unavailable before severe financial, shareholder, image, regulatory, or contractual impacts become unacceptable to Vendor as a whole.

## EXHIBIT E



## UNIFORMED SECURITY OFFICER

## POST ORDERS

The three primary purposes for your assignment as a Uniformed Security Officer is to: (1) improve the overall customer shopping experience by exhibiting world class customer service in behaviors and attitude; (2) Provide a visual deterrent to criminal activity; (3) Help make the store a safe environment for customers and associates.

Uniformed Security Officer Core Responsibilities:

- To reduce the likelihood of criminal activity and to promote safe store conditions, officers will randomly walk the interior of the store as a visual deterrent.

- Interactions with customers and associates should be conducted in a positive and professional manner.

- Officers should assist customers as requested, including notifying a store associate or manager in the event that a customer needs assistance in locating product.

- Officers are not to apprehend, detain, or question the ownership of merchandise in regard to a suspected shoplifter. Their role is to engage the would-be shoplifter with customer service consistent with our Shoplifting Awareness Policy.   Any incident should be reported to Store Loss Prevention and/or Store Management and documented. Officers are required to report any Reasonable Cause Only incidents to Store Loss Prevention and/or Store Management and the Officer's supervisor immediately after the incident occurs. Officers should never pursue a suspect or use physical force to detain them.  Physical force may only be used for self-defense or the defense of a third party that is in imminent danger.

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1
SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

185

DocuSign Envelope ID: BE882565-19D2-4A52-8786-5E22E4E4B559

- At the discretion of the Division Loss Prevention Manager, Officers may be asked to respond to, and document, an activation of an Electronic Article Surveillance (EAS) alarm for the purpose of providing superior customer service.  Officers are not authorized to detain individuals as a result of an EAS alarm activation.

- Officers are expected to complete incident reports and statements in a timely, professional and thorough manner.  Officers should keep one report copy for their records and provide a copy of their report to Store Management.

## BEGINNING OF THE SHIFT:

- Follow your Security Company protocol check-in procedures.

- Immediately check in with a member of store management or his/her designate to apprise them of your presence and to ascertain any current or pending situations that warrant your attention. Similarly, any required breaks during your shift should be communicated to a member of Store Management or his/her designate.

- If you are relieving another officer, make certain that you are aware of any pending or current situations that may warrant your attention; otherwise, review reports of previous shift.

## INTERIOR DUTIES

- **Primary Duty**: Officers should make occasional rounds through store strictly as deterrence to shoplifting or other types of criminal activity.  Officers will use positive engagement and customer service to deter criminal activity.

   *(NOTE:* While officers should always be ready to assist Store Management with shoplifting incidents or hostile suspects, upon their request they should not assume the duties of a store detective, <u>nor should officers ever initiate the detention or apprehension of a suspected criminal.   Your primary responsibility is to observe, detect, deter and report criminal activity.</u>

- As with exterior tours, special care should be taken to avoid establishing predictable times or routes while making interior tours.

- **Safety**: Officers will remain alert to potential hazards to associates and/or customers such as spills or other "trip or slip" hazards, immediately bringing these to any department head's attention. In the event of the discovery of such hazard as a spill within the normal flow of customer traffic, the officer should stand by (in the absence of a store associate) until such hazard has been

17

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

186

DocuSign Envelope ID: 5E882565-19D2-4A59-8786-6E22E4E4B559

eliminated, in order to caution customers of said hazard. If officer can easily eliminate hazard, immediate steps should be taken to do so. (i.e., removing debris, item of merchandise, etc. from floors and walkways.)

- **Accidents:** Officers will remain alert to accidents or loss prevention related incidents involving customers or associates, taking immediate steps to bring these to the attention of Store Management. Additionally, in the event of a medical emergency, officers will render comfort and care to the victim of any injured person to the extent and to the degree determined to be appropriate for the situation. With the exception of obvious life/death situations, an ambulance will be summoned only upon the request of the injured party or his/her adult parent/guardian. These incidents must be documented in detail.

- **Disorderly Conduct:** Officers will remain alert to the presence of intoxicated or otherwise suspicious persons, bringing these to the attention of store management, unless the presence of such person(s) represents an immediate hazard, under which circumstances the officer will take the appropriate action then immediately notify store management.

- **Customer/Associate Disputes:** Whether between two associates, an associate and a customer or two customers, Officers should report the situation to store management immediately for assistance. Physical force may only be used for self-defense or the defense of a third party that is in imminent danger.

- **Robbery Prevention:** When applicable, Officers may be relocated to the Front End during cash pulls to act as a visual deterrent to robbery. Officers are prohibited from entering the Accounting Room or Book Keeping Office or handling store funds at any time.

- **Fires:** If the Officer observes a fire in the store, the Officer is expected to notify Store Management immediately. If the Officer believes the fire can be contained safely, the Officer is permitted to utilize the store's fire extinguisher to put out the fire. PUTTING OUT THE FIRE IS NOT A REQUIRMENT. Only attempt to extinguish the fire if it can be done safely. If the fire cannot be safely extinguished, the Officer should then assist the Store Manager in evacuating the store.

- **Lost Child:** Officers must be familiar with the "Code Adam" missing child policy and be prepared to assist Store Management in the event that a lost child incident occurs.

18

C:\Users\aavendano.WWSG\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\76MU8AZK\1 SEND_SERVICES-Security (Master_MSA) 01-05-16.docLAST REVISED 01-05-2016

187

DocuSign Envelope ID: BF882565-19D2-4A59-8786-6E22E454B559

## EXTERIOR DUTIES

- **PRIMARY DUTY**:  If applicable per lease agreements, Officers should make regular tours of parking lot and building perimeter, giving special care to avoid predictable patterns of time and routes.

- Officers should monitor for excessive carts in parking lot.  Notify Store Management if there is an issue.

- Officers should remain alert to any incidents and/or accidents involving store associates or customers and immediately bring these to the attention of Store Management. All such incidents should be documented.

  - Upon being informed by a customer that he/she is or may have been the victim of criminal activity, Officers are to <u>immediately</u> inform Store Management.

  - Officers are not to contact law enforcement, or emergency personnel, prior to the direction of the Store Management unless there is imminent danger to a customer, associate or the facility.

  - Additionally, Officers are to exhibit a genuine attitude of concern and compassion for any victim(s) of accidents or criminal activity. Upon observing a violent crime in progress, officers should take reasonable and prudent steps to prevent imminent bodily injury, to the extent that doing so will not severely jeopardize their personal safety or that of customers and associates.

    - Uniformed security officers are not to assume the duties of traffic enforcement officers; but should notify Store Management of the existence of any serious traffic condition or hazard. Under no circumstances is an officer empowered with the authority to have a vehicle towed from store premises.

## GENERAL RULES OF CONDUCT

- Particular care will always be taken to present a professional appearance and attitude at all times while on store premises. This is to include, but not be limited to:

  - Avoid the appearance of loitering.

  - Avoid eating, drinking or use of tobacco products while in public view.

DocuSign Envelope ID: BF882E55-19D2-4A5C-8786-6E22E4E4B559

- Always maintain your personal appearance and uniform according to your company guidelines.

- Always be polite and courteous; however, avoid extended idle conversation with customers or associates.

- Avoid the appearance of fraternization.

- Avoid leaning against walls or other structures. Avoid walking with hands in pockets, sitting on benches or in parked vehicles, handicapped carts, etc.

- Officers should not assume the role or take on job responsibilities of a store associate; i.e., sacking groceries, retrieving shopping carts, passing out ads, etc.; however, should not hesitate to remedy a situation that poses an immediate hazard to a customer or employee.

- Officers will not utilize cell phones except in accordance with their duties.

- Sitting in a parked vehicle while on duty protecting an OPEN store is prohibited.

- Breaks may be taken in the associate break area or restaurant area of the store.

- All schedule changes must be approved through your supervisor and Store Management.

- Physical force may only be used for self-defense or the defense of a third party that is in imminent danger.

- No Officer is to possess handcuffs or a firearm, on store premises without the express written authorization of the Division Loss Prevention Manager.  In the event Officers have been authorized to carry this equipment on store premises, it is the responsibility of the security provider to ensure that the Officers have been adequately trained and meet the appropriate government regulatory standards for the use of this equipment.

- Officers are expected to abide by the Store Associate Purchase Policy when they are working. These guidelines include paying for all merchandise before it is consumed or removed from the store, only making purchases while on break or off the clock, and keeping a receipt attached to all purchases.

## PUBLIC RELATIONS

- Officers are encouraged to both greet customers and thank them for their patronage, as appropriate.  Avoid fraternizing.

- Officers should readily avail themselves to customers and employees for personal escort to parked vehicles or otherwise provide appropriate assistance.

- Media inquiries are to be politely directed to Store Management. The phrase "NO COMMENT' should be avoided. Refer any inquiries to Store Management.

- Officers are to direct any inquiries by attorneys and/or private investigators to store management or the Division Loss Prevention Management. Said inquiries should be immediately reported to store management.

- Officers will be required to attend all hearings or proceedings when contacted. Hearings and proceedings may consist of criminal, civil, contractual, and employment matters.  All documentation and evidence necessary for hearings and proceedings will be in the Officer's possession at the hearing or proceedings. Appropriate business attire or uniform is required.

- After all hearings and proceedings it will be Officers' responsibility to notify the Store Manager and District Loss Prevention Manager of the case disposition. If store property was held for the hearing or proceedings the Officer will be responsible for returning the property back to the store.

## ENDING OF THE SHIFT

- All appropriate reports or statements must be completed prior to leaving post.

- Officers being relieved by other Officers should not leave the post prior to properly briefing relief Officers regarding significant events of the preceding shift or of current or impending situations requiring the oncoming Officer's attention.

- Officers whose schedules do not provide for a relieving shift should notify Store Management that the current shift has ended prior to leaving the post.

- Established "end of shift" procedures should be followed prior to leaving post.